# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BRIAN MOREAU,**

     **Plaintiff,**

**vs.**                  **Case No. 8:22-cv-01295-TPB-CPT**

**FELD MOTOR SPORTS, INC.;
THE MEDIC RIG, LLC;
AMERICAN MOTORCYCLE
ASSOCIATION d/b/a AMERICAN
MOTORCYCLIST ASSOCIATION;
JOHN A. BODNAR, M.D.;
JAMES KENNEDYE, M.D.;
AMY METIVA; and SCOTT COMBS,**

     **Defendants.**

_____/

## DEFENDANT AMERICAN MOTORCYCLIST ASSOCIATION'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant American Motorcycle Association d/b/a American Motorcyclist Association (the "AMA") moves on the following grounds to dismiss Count VIII of the Third Amended Complaint (the "Complaint" or "Compl.") filed by Plaintiff BRIAN MOREAU ("Plaintiff").

## RELIEF REQUESTED AND BASIS FOR REQUEST

On March 19, 2024, this Court granted Plaintiff's Motion for Leave to Amend [Doc. No. 167] and directed Plaintiff to amend his Complaint and to redact portions of that pleading identified by Feld Entertainment, Inc. ("FEI") and Feld Motor Sports,

Inc. ("FMS") [Doc. No. 170]. Plaintiff then filed his redacted Third Amended Complaint, which added AMA as a defendant [Doc. No. 180].[1]

Plaintiff, a professional motorcycle rider, brings a claim against AMA arising from his participation in the free practice session of the 2020 Monster Energy AMA Supercross motorcycle race in Tampa, Florida (the "2020 Supercross"), as well as claims against FMS, the promotor of the race, The Medic Rig d/b/a Alpinestars Mobile Medical Unit ("Medic Rig"), which provided medical services for the race, and Dr. John A. Bodnar, M.D., the Chief Medical Officer ("CMO") for the race. The allegations Plaintiff asserts against FMS are repeated almost verbatim now against AMA, but with less specificity. *Compare* Count I and Count VIII.

During a 2020 Supercross practice session, Plaintiff crashed headfirst over his motorcycle and into the center of the racetrack. Compl. ¶30. Although a nearby flagger waived a yellow flag, indicating a hazard on the track and that riders were to proceed with extreme caution, Plaintiff asserts that no red flag stopping the free practice session was thrown. *Id.* at ¶31. Immediately following the crash, Plaintiff alleges he experienced trouble feeling his legs and communicated his symptoms to two Medic Rig crewmembers who arrived to assist him. *Id.* at ¶33. The crewmembers allegedly did not stabilize him, and instead lifted him from the track by his underarms, sitting him upright in the medical transport cart and removing his helmet. *Id.* at ¶¶34-38.

---

[1] The Complaint incorporates numerous contractual agreements and other documents by reference, including the AMA Supercross, an FIM World Championship 2020 Rulebook (the "Rulebook") and the FIM Medical Code 2019 (the "Code"). *See* Compl. ¶¶16, 136. Correct copies of the Rulebook and the Code are attached hereto as **Exhibits 1** and **2** respectively.

Plaintiff does not allege that he reported his symptoms to anyone other than the two Medic Rig crewmembers and does not allege that those crewmembers reported his symptoms to AMA, or that they or the CMO asked AMA to red flag the session.

As against AMA, Plaintiff alleges only a single count for *vicarious* liability based on the purported negligence of unspecified AMA's "employees, agents, and/or contractors, including race staff and officials," in failing to throw a red flag. *Id.* at Count VIII. But Plaintiff's negligence claim is barred by the express waivers of liability that Plaintiff executed to enable his participation in the 2020 Supercross. The Complaint also fails to adequately plead the elements of negligence as to AMA's purported agents and does not specify the relevant agents or establish an apparent agency relationship with AMA. Finally, the Complaint does not allege any direct conduct by AMA as principal, much less the kind of egregious conduct necessary to establish vicarious liability for punitive damages. AMA thus requests dismissal of Count VIII.

## SUPPORTING MEMORANDUM OF LAW

### A. Motion to Dismiss Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this pleading standard, "does not require 'detailed factual allegations,'…it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555)). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss."

*Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

**B.    Plaintiff Waived Liability Against AMA for Negligence.**

**(1)    The Court May Consider Documents Not Attached to the Complaint on a Motion to Dismiss.**

Plaintiff's claim against AMA arose from his participation in the 2020 Supercross, which was conducted according to various "rules, regulations, policies, procedures, and codes…." Compl. ¶¶7, 14. Plaintiff expressly references several of these regulatory documents in the Complaint, including the Rulebook, the Sanctioning Agreement between AMA and FMS, the Code, and the Master Services Agreement between The Medic Rig and FMS. *See e.g.* Compl. ¶¶10, 11, 16, 18. Because Plaintiff alluded to the foregoing documents in the Complaint, they are deemed to be incorporated by reference and can be considered by the Court in ruling on this motion to dismiss even though they are not attached to the Complaint. *See, e.g., Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005) ("if the document contents are alleged in a complaint and no party questions those contents, a court may consider such a document when deciding upon a motion to dismiss.").

The Court also can consider other documents not expressly referenced in the Complaint because these documents are central to Plaintiff's claims and are otherwise undisputed. *See Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F. 3d 1337, 1340 at n.3

(11th Cir. 2005) (court properly considered contract not mentioned in or attached to complaint because contract was central to plaintiff's claims and undisputed).[2] The additional extra-Complaint documents that the Court can consider here include two contractual agreements executed by Plaintiff:  1) the AMA Racing Credential Terms and Conditions (the "Contract"), a contractual agreement that incorporates by express reference the Rulebook that was referred to by Plaintiff in the Complaint, and 2) the Minor's Assumption of Risk Acknowledgement that governs "all AMA events, activities and/or locations" for "all 2020 dates" (the "Assumption of Risk") that permitted him to obtain the license/credential to participate in AMA sanctioned events, including the 2020 Supercross (the "Credential").  Because the foregoing documents not only cross-reference other agreements that Plaintiff expressly relies on in his Complaint, but also establish the rights and duties of AMA with respect to the 2020 Supercross and Plaintiff's participation therein, they are central to Plaintiff's claim and thus can be considered by the Court on this motion to dismiss.

**(2)     The Contract, Rulebook, and Assumption of Risk Govern Plaintiff's Participation in the 2020 Supercross.**

Plaintiff's participation in AMA sanctioned events, including the 2020 Supercross, was enabled by his execution of the Contract.  A correct copy of the

---

[2] *See also Gann v. Trabue*, Civil Action No. 2:20-cv-90-RWS, 2020 WL 12309336 at *3 (N.D. Ga. July 27, 2020) ("Even when not referenced in the complaint, contracts are considered central to the plaintiff's claims when they provide additional details about the claims at issue, and therefore may be considered by the court" on a motion to dismiss.") (citing *Maxcess, Inc.*, 433 F. 3d 1337). Furthermore, on a motion to dismiss, the court may properly consider a document attached to the motion, without converting the motion to a motion for summary judgment where the document is central to the plaintiff's claim and the authenticity of the document is not challenged. *Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002).

Contract is attached hereto as **Exhibit 3**. The Contract is an agreement that binds participants in the AMA Supercross series, including Plaintiff, to a set of authorizing rules and procedures. By executing the Contract, Plaintiff acknowledged and agreed "that my license is subject to the Rulebook." **Ex. 3**, §8. The Rulebook sets forth the official competition rules of the Supercross series and governs all of the Supercross events. Compl. ¶ 11; *see also* **Ex. 1**. By participating in the 2020 Supercross, Plaintiff agreed to be bound by the Rulebook. "Every…rider…participating in or in any way connected with a Monster Energy AMA Supercross, an FIM World Championship race event, will be considered participants and therefore bound by the Monster Energy AMA Supercross, an FIM World Championship rulebook." *Id.* at §4.1.

On the same day he executed the Contract, Plaintiff signed the Assumption of Risk, which governs "all AMA events, activities and/or locations" for "all 2020 dates." A correct copy of the Assumption of Risk is attached as **Exhibit 4**. By executing the Assumption of Risk, Plaintiff represented that: "I am assuming all of the risks if I get hurt during the EVENT(S)," "there are risks and dangers associated with participation in the EVENT(S) and admission within the RESTRICTED AREA that could cause severe bodily injury, disability and death," and "these risks and dangers may be caused by my own actions or inactions, the actions or inactions of others participating in the EVENT(S), the rules of the EVENT(S), the condition and layout of the premises and equipment, or the negligence of others, including those persons responsible for conducting the EVENT(S)." *Id.* at ¶¶1-3.

Plaintiff executed the Contract and Assumption of Risk in consideration of being issued his Credential, which the Rulebook requires for riders to participate in an AMA sanctioned event, including the 2020 Supercross. If Plaintiff had refused to execute the Contract and the Assumption of Risk, he would not have been permitted to participate in the 2020 Supercross. *See* **Ex. 1**, §3.1(a) ("All riders participating in any on-track practice, qualifying or racing must have a valid AMA and/or FIM World Championship Motocross license of the appropriate classification.").

### (3) The Contractual Waiver of Liability and Assumption of Risk Are Enforceable to Bar Plaintiff's Negligence Claim Against AMA.

Under Florida law, where "an exhibit facially negates the cause of action asserted, the document attached as an exhibit controls and must be considered in determining a motion to dismiss." *Fladell v. Palm Beach Cnty. Canvassing Bd.*, 772 So. 2d 1240 (Fla. 2000) (cited with approval by *CFBP, LLC v. Wells Fargo Bank*, No. 8:09-cv-2322-T-33AEP, 2010 WL 2136535, at *2 (M.D. Fla. May 26, 2010)); *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F. 2d 97, 100 (5th Cir. 1974) (where exhibit "reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F. 2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

Significantly, as part of the Contract, Plaintiff executed the following waiver:

> I acknowledge that **motorcycle racing is a dangerous activity, the risks of which cannot be completely eliminated**. I acknowledge that by participating in any AMA sanctioned event, I am assuming the risk of property damage and serious injury up to and including death. I

acknowledge that I will have the opportunity to inspect and review any and all courses upon which AMA sanctioned events shall be conducted, and **I waive any and all claims for personal property damage, injury, or death against AMA or any of their respective directors, officers, employees, or agents.**

**Ex. 3**, ¶6 (emphasis added). Furthermore, by executing the Contract, Plaintiff "represent[ed] that I am not contractually or otherwise prohibited from entering into any and all of the agreements set forth in Paragraph 1 through 8 hereof." *Id.* at ¶8. Additionally, as set forth above, Plaintiff expressly assumed "all of the risks if I get hurt" during events, including the 2020 Supercross including "**risks and dangers…caused by…the negligence of others, including those persons responsible for conducting the EVENT(S).**" **Ex. 4** (emphasis added).

Exculpatory clauses are generally valid and enforceable when clear and unequivocal. Under Florida law, it is well-established that exculpatory clauses are enforceable to bar claims for negligence against the parties responsible for conducting high-risk sporting events, such as motor vehicle races. In *Theis v. J&J Racing Promotions*, 571 So. 2d 92, 94 (Fla. 2d DCA 1990), a professional race car driver who had previously signed a release and waiver of liability agreement was killed while participating in a sprint car race. The court found that the release was enforceable to bar a claim even for gross negligence brought by his estate against the parties responsible for promoting and conducting the race. Noting that the reference to "negligence" in the release was not limited, the court ruled that it "must be construed as intended to encompass all forms of negligence, simple or gross." *Id.* (holding cited

with approval in *Straw v. Aquatic Adventures Management Group, Inc.*, No. 5:11-cv-102/RS-CJK, 2011 WL 5008359 at *2 (S.D. Fla. Oct. 21, 2011)).[3]

Furthermore, in the motor vehicle racing context, courts have found that receiving negligent medical care – which is alleged to have occurred here – is a reasonably foreseeable risk of participation that can be waived by the participant. In *Maness v. Santa Fe Park Enterprises, Inc.*, 298 Ill. App. 3d 1014 (Ill. App. Ct. 1998), as a precondition to participating in an auto race, a professional stock car race driver executed multiple releases containing "broad exculpatory language that clearly release[d] defendants from *all liability* for personal injury or death resulting from their negligence." *Id.* at 1019 (emphasis original). During the race, the driver crashed his vehicle after suffering an ultimately fatal heart attack. *Id.* at 1017. His widow brought an action for negligence against the track owner and race organizer, alleging that "defendants negligently failed to immediately stop the race and dispatch medical personnel," and that the danger of receiving improper medical assistance was not the type of risk covered by the releases. *Id.* The trial court granted the defendants' *motion to dismiss* with prejudice, and the appellate court affirmed, finding that negligent

---

[3] The Florida Supreme Court has held that even if an exculpatory clause does not specifically reference "negligence" or "negligent acts," it is enforceable to bar negligence claims "where the language unambiguously demonstrates a clear and understandable intention to be relieved from liability so that an ordinary and knowledgeable person will know what he or she is contracting away." *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 271 (Fla. 2015); *see also Borden v. Phillips*, 752 So. 2d 69, 73 (Fla. 1st DCA 2000) (where term "negligence" as used in release was not limited, court should construe "as intending to encompass all forms of negligence, simple or gross, with only intentional torts being excluded from the exculpatory clause.").

medical care was a foreseeable risk of the driver's participation in the race, and that the driver's pre-race releases were enforceable to bar his widow's negligence claim. *Id.*[4]

Likewise, Plaintiff here expressly waived any and all claims against AMA and assumed all of the risks and dangers of being injured as a result of his participation in the 2020 Supercross, including even risks and dangers caused by the negligence of others. The waivers of liability in the Contract and Assumption of Risk are clear and unambiguous and demonstrate a clear and unequivocal intention to relieve AMA from any and all liability arising from Plaintiff's participation in the 2020 Supercross. As noted, in the Assumption of Risk Plaintiff even expressly assumed all "risks and dangers…caused by…the *negligence of others*…." **Ex. 4**, ¶3 (emphasis added). Because the contractual waivers as contained in both the Contract and Assumption of Risk are enforceable and facially negate the cause of action asserted against AMA, these documents control and bar the claim against AMA as a matter of law.

---

[4] Such motor vehicle racing releases are common and routinely enforced. Otherwise, there would be the risk of a lawsuit almost every time a wreck occurred with resulting injury. *See, e.g., Brotherton v. Victory Sports, Inc.*, Civil No. 11-129-GFVT, at *1 (E.D. Ky. March 26, 2013) (noting that "[m]otorcycle races are one of those exceptions [to the general rule of negligence]. They are deemed both valuable and dangerous enough that race organizers have been permitted to contract out of a negligence standard of care." "The law of contractual releases in the motorsports context…[is] long-standing precedent [which] maintains that releases barring claims for negligence signed by individuals involved in motorsports should be honored."); *Dunn v. Paducah Intern. Raceway*, <u>599 F. Supp. 612, 614</u> (W.D. Ky. 1984) ("excepting racing and similar sporting competitions from the general rule against exculpatory agreements *promotes* the public's interest in observing and following sporting competitions…since without a release it is doubtful that anyone would be willing to sponsor such events.") (emphasis original).

**(4)     Plaintiff Ratified the Contract and Assumption of Risk After Reaching Majority Age by Participating in the 2020 Supercross.**

Plaintiff executed both the Contract and the Assumption of Risk on November 22, 2019, approximately two months before his eighteenth birthday on January 29, 2020. *See* **Ex. 3** and **4**.[5] Although Plaintiff was a minor at the time he executed the Contract and the Assumption of Risk, Florida law makes clear that contracts entered into by minors are voidable, not void. *Lee v. Thompson*, 124 Fla. 494, 498 (Fla. 1936); *Off the Wall & Gameroom LLC v. Gabbai*, 301 So. 3d 281 (Fla. 4th DCA 2020) (holding that where a minor fraudulently induced a party to enter a contract with him, the minor could not subsequently avoid enforcement of the contract).

"[T]he contracts of an infant are voidable or de facto, that is to say, subject to the possibility of disaffirmance… when the infant attains his majority and ratifies a contract made in infancy its infirmity is removed and it will be treated as valid from inception and the optional right to disaffirmation abandoned. Ratification does not require a new consideration to make it binding." *Lee*, 124 Fla. at 499. Ratification "may be accomplished by exercising the option not to avoid the contract. The quondam infant…may also ratify by conduct which shows a clear intent to do so or such as will work a fraud on the opposing party if not treated as a ratification." *Id.*

---

[5] The Contract and Assumption of Risk should be interpreted as a single contract. *See SFR Services, LLC v. Indian Harbor Ins. Co.*, 529 F. Supp. 3d 1285, 1297 (M.D. Fla. 2021) ("Under the 'contemporaneous instrument rule,' 'two or more documents executed by the same parties, at or near the same time, concerning the same transaction or subject matter are generally construed together as a single contract.'") (quoting *Wilson v. Terwillinger*, 140 So. 3d 1122, 1124 (Fla. 5th DCA 2014)).

Here, Plaintiff executed the Contract and the Assumption of Risk two months before reaching the age of majority for the express purpose of obtaining the Credential to participate in AMA sanctioned events, including the 2020 Supercross. Plaintiff knowingly utilized the Credential issued by AMA pursuant to the Contract and the Assumption of Risk to enable his participation in the 2020 Supercross, which constituted an affirmative act manifesting his intent to assent to the contracts. *See Putnal v. Walker*, 61 Fla. 720, 723 (Fla. 1911) (a former minor can only disaffirm a contract entered into as a minor "when there are no circumstances and no affirmative acts of his making it inequitable for him to remain inactive after attaining his majority"). Furthermore, "where the infant, upon his arrival at majority, or at the time he seeks disaffirmance, still has the consideration received, or any part thereof, he must, upon his disaffirmance, return it, for the law will not allow him to repudiate his contract and at the same time retain its fruits as his own." *Id.* at 725.

The Contract here states on its face that the issuance of Plaintiff's Credential was the consideration Plaintiff received in exchange for entering into the Contract. **Ex. 3**. Plaintiff's actions in retaining and continuing to utilize the Credential after reaching the age of majority to enable his participation in the 2020 Supercross clearly manifested his intent to continue to be bound by the terms of the Contract. AMA obviously relied upon Plaintiff's execution of the Contract and the Assumption of Risk by permitting Plaintiff to use his Credential to participate in the 2020 Supercross. Because both the Contract and Assumption of Risk facially negate the claims asserted by Plaintiff in this action, and because Plaintiff ratified both agreements after reaching

majority age through his actions, the releases contained therein control and mandate dismissal of Plaintiff's Count VIII claim against AMA.

## B. Plaintiff Fails to Adequately Allege the Duty and Causation Elements of a Claim for Negligence.

To state a claim for negligence under Florida law, "a plaintiff must plead facts to plausibly show: (1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of that injury." *Honig v. Kornfeld*, 339 F. Supp.3d 1323, 1339 (S.D. Fla. 2018) (citations omitted). Because Plaintiff's claim against AMA is for *vicarious* liability, Plaintiff must establish each element of negligence with respect to AMA's purported *agents*, rather than AMA as principal. *See Flaherty v. Royal Caribbean Cruises, Ltd.*, 172 F. Supp. 3d 1348, 1352 (S.D. Fla. 2016) (to hold principal liable for negligence of agent, plaintiff "must sufficiently allege the elements of agency in addition to the elements of the underlying negligent act of the agent for which the plaintiff seeks to hold the principal liable.").

### (1) The Complaint Seeks to Impose on AMA Duties That Were Contractually Disclaimed or Delegated to Another.

Plaintiff alleges that AMA incurred a duty to "organize, operate, control, conduct, manage, officiate, staff, and supervise the 2020 Tampa Supercross" and thereby protect riders from unreasonable risks of harm and to do so "in accordance with its own and the FIM's rules, regulations, policies, procedures, and codes" including the Rulebook and the Code. Compl. ¶¶135-136. The gist of Plaintiff's claim against AMA, albeit expressed in mere conclusory terms, is that unspecified AMA

"employees, agents, and/or contractors, including race staff and officials," breached a duty to "red flag" a practice session when appropriate. *Id.* at ¶¶138-139.

The problem is that the Rulebook specifically disclaims any such duty:

> RULES DIRECTED OR RELATED TO SAFETY ARE PROMULGATED TO MAKE ALL PERSONS CONCERNED WITH SAFETY, BUT **THE AMA** AND THE FIM **NEITHER WARRANTS SAFETY IF THE RULES ARE FOLLOWED NOR COMPLIANCE WITH AND ENFORCEMENT OF RULES.**
>
> MOREOVER, EACH PARTICIPANT IN COMPETITION HAS THE RESPONSIBILITY TO ASSESS THE SAFETY ASPECTS OF FACILITIES AND CONDITIONS AND MUST ASSUME THE RISK OF COMPETITION.

**Ex. 1**, p. 2 (capitalization original, emphasis added). A similar disclaimer also appears in Appendix A of the Rulebook. *Id.* at §A1(b) ("Rules directed or related to safety are promulgated to make all persons concerned with safety, **but AMA or the FIM neither do warrant safety if the rules are followed nor compliance with and enforcement of rules. Each participant in competition has the responsibility to assess the safety aspects of facilities and conditions and must assume the risk of competition.**") (emphasis added).

In addition to imposing duties on AMA that are contractually disclaimed, Plaintiff also seeks improperly to reassign to unidentified AMA "employees, agents, and/or contractors, including race staff and officials," duties that are instead explicitly delegated by the Rulebook and the Code to the CMO. Compl. ¶137. Plaintiff claims that AMA's employees, agents, and/ or contractors were required:

- to be stationed in an elevated 'Race Control' booth to monitor the on-track activity;

- to be in close proximity to and liaise with other race staff and officials, including the Chief Medical Officer;

- to be in direct communication with the medical team on the ground (the Alpinestars crewmembers);

- to provide immediate updates from trackside medical personnel to other staff and officials regarding the condition of any injured rider to facilitate the most appropriate medical response to their condition;

- to ensure the immediate deployment of appropriate medical resources to injured riders; and

- to recommend to other race staff and officials that a practice session or race be 'red flagged' in the interest of rider safety if, among other reasons, there was danger to a rider or officials attending to an injured rider if other riders continued to circulate the racetrack, or there was a suspected spinal or other serious injury that would require prolonged medical treatment.

*Compare* Compl. ¶49 and ¶137.

But the Rulebook and the Code expressly impose **on the CMO** the duty to notify AMA of any rider injury or medical condition that might justify or necessitate the throwing of a red flag. Specifically, the Rulebook provides that the **CMO** "shall be responsible for all of the medical aspects of the event, including…**giv[ing] information and recommendations to Race Direction on injured riders and all aspects of the event which may have potential medical consequences**." **Ex. 1**, §B5(5) (emphasis added). Similarly, the Code provides that "**management of an injured rider is under the control of the CMO**" and while "interruption or cessation of racing or practice session can only be authorized by the Race Director" "[i]t is the **responsibility of the CMO…to advise the Race Director of incidences where access to a fallen rider(s) necessitates this**."). **Ex. 2**, §09.8.3(b).

Although AMA possessed the authority to throw a red flag, AMA was thus dependent (and contractually reliant) on the CMO and his staff for "information and

recommendations" regarding medical circumstances that would warrant such action. *But the Complaint conspicuously fails to allege that the CMO or its staff ever made such a recommendation to AMA or otherwise provided AMA with information concerning the on-track medical condition of Plaintiff that reasonably should have prompted AMA to take such action.* Ultimately, Plaintiff's theory of liability against AMA would require AMA to throw not only a yellow caution flag – which clearly was flown as evidenced by the photographs included in the Complaint – but also a race-stopping red flag every time a rider falls from his bike. Compl. ¶36, p. 12. The Rulebook and the Code – which establish the race procedures and standards of care that all involved contractually agreed to abide and be bound by – simply do not impose such a duty on AMA.

Plaintiff also has not alleged that the CMO was acting as AMA's agent, such as would impose vicarious liability on AMA for the actions or non-actions of the CMO or his staff. Indeed, Plaintiff instead alleges that "the Chief Medical Officer for the Supercross Championship and the Medical Director of The Medic Rig (d/b/a Alpinestars Mobile Medical Unit)," was "[a]t all relevant times, **the actual or apparent agent[] and/or employee[] of FMS**, and [was] **acting within the scope of [his] agency and employment relationship with FMS**, and/or [was] performing services which he or she was employed to perform by FMS in connection with the 2020 Tampa Supercross." *Id.* at ¶52 (emphasis added). Because Plaintiff does not allege that the CMO was acting as an agent of AMA, AMA cannot be deemed to be vicariously liable for the conduct of the CMO or his staff, to the extent they failed to communicate

information or recommendations to AMA that would have prompted AMA to throw a red flag and stop the practice session.

> **(2)** **The Complaint Fails to Sufficiently Allege that AMA's Purported Agents Caused Plaintiff's Injuries.**

In addition to failing to plead facts that would establish a duty owed by AMA's purported agents, the Complaint fails to sufficiently allege that the breach of any duty by AMA's purported agents *caused* Plaintiff's injuries. Plaintiff alleges in mere conclusory fashion that AMA's "employees, agents, and/or contractors, including race staff and officials" failed to "red flag" or stop the practice session when they "knew or should have known" that failure to do so *"would likely subject Plaintiff to heightened risks of serious injury* beyond those inherent in the sport, such as an inadequate, substandard, haphazard, reckless, and grossly negligent on-track assistance from the Alpinstars crewmembers." Compl. ¶150 (emphasis added). But note that Plaintiff does not plead that failure to stop the session *actually caused* his injury, but rather that it exposed him to "heightened risks" of injury. And Plaintiff does not even purport to allege that failing to red flag the session prevented the Medic Rig crew or the CMO from administering appropriate medical care. This is a particularly important omission where, as here, the CMO is charged with providing AMA with "information and recommendations…on injured riders and all aspects of the event which may have potential medical consequences." **Ex. 1**, §B5(5). We are left

to just *assume* that red flagging the event would have in some vague way "safeguard[ed] against the foreseeable risk of further harm and injury to Plaintiff." Compl. ¶35.[6]

Because Plaintiff has failed to sufficiently allege the duty and causation elements of negligence, and because his claim for vicarious liability against AMA is necessarily premised on establishing direct negligence liability on the part of AMA's alleged agents, his claim against AMA must be dismissed. *See Flaherty*, 172 F. Supp. 3d at 1352.

## C.    Plaintiff Fails to Adequately Plead an Agency Relationship.

Even if Plaintiff had sufficiently pled the elements of a negligence claim implicating AMA's agents, Plaintiff has failed to adequately plead an underlying agency relationship involving AMA. As noted, Plaintiff has sued AMA solely for vicarious liability based on an agency theory. To adequately allege vicarious liability based on agency, the complaint must "sufficiently allege the elements of agency in addition to the elements of the underlying negligent act of the agent for which the plaintiff seeks to hold the principal liable." *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1149 (S.D. Fla. 2016). To establish an agency relationship, Plaintiff must allege "(1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions

---

6 Plaintiff certainly does not allege, because he cannot, that the CMO provided any such recommendation to AMA's purported agents. Rather, Plaintiff merely alleges that he reported his potential spinal injury to the two Alpinestars crewmembers who approached him following his crash, and that they proceeded to remove him from the racetrack. Compl. ¶¶32-36.

of the agent." *Hogan v. Provident Life and Acc. Ins. Co.*, [665 F. Supp. 2d 1273, 1284](#) (M.D. Fla. 2009) (citation omitted).

### (1) Plaintiff Fails to Specifically Identify Any AMA Agent.

Plaintiff's allegations of purported agency between AMA and its various unspecified "employees, agents, and/or contractors" are hopelessly vague and confusing. It is unclear whether Plaintiff is alleging that AMA is an agent of FMS, or rather that FMS is an agent of AMA, or that FMS's agents are agents of AMA, or that they are agents of one another. But one thing that is clear is that the CMO and his staff, who again were charged with providing AMA with information and recommendations on injured riders, are only alleged to be agents of FMS, and not AMA. Compl. ¶¶54-56.[7] The Complaint does not even generically identify AMA's purported agents by title or position, but rather only by the vaguest conclusory category – "employees, agents, and/or contractors." Moreover, because AMA's so-called agents are not identified with any precision, it is impossible to ascertain whether Plaintiff's allegations implicate the conduct of AMA's *principals* versus *agents*, such as would impermissibly intermingle claims for direct and vicarious liability. *See e.g., Weiland*, [792 F. 3d at 1321-23](#).[8]

---

[7] It appears that when adding AMA to the Complaint, Plaintiff merely cut and pasted the previous agency allegations asserted against FMS. *Compare* Compl. ¶¶49 to 137, 50 to 138, 52 to 142, 53 to 143, 54 to 144, 55 to 145, 56 to 146, 59(a)-(c) to 149(a)-(c), and 60 to 150. As a result, Plaintiff is now alleging that both FMS's agent and/or employees, as well as AMA's "employees, agents, and/or contractors," incurred a duty to throw the "red flag." *Compare* Compl. ¶¶50, 52 to ¶¶138-39.

[8] Accordingly, the Complaint is a "fatally defective" shotgun pleading which must be dismissed under well-established Eleventh Circuit precedent. *See e.g. B.L.E. v. Georgia*, [335 Fed. App'x 962, 963](#) (11th Cir. 2009).

Although Plaintiff repeatedly alleges that "AMA had numerous employees, agents, and/or contractors, including race staff and officials," Plaintiff fails to plead the identity of any of these "numerous" individuals. Compl. ¶¶140-42. Indeed, the Complaint does not identify a single specific person who AMA allegedly "engaged, selected, authorized, appointed, and/or employed, in whole or in part, to organize, operate, control, conduct, manage, officiate, staff, and supervise the 2020 Tampa Supercross...." *Id.*[9] AMA is left merely to speculate as to who that might be.

AMA is well aware that this Court has already denied a motion to dismiss filed by FMS that argued Plaintiff's allegations concerning agency were insufficiently vague [Doc. No. 115]. But the point now is that Plaintiff has significantly compounded that ambiguity by implicating the actions of still more "agents" and "principals" without elucidating who they are or who was acting on behalf of whom. As a result, AMA cannot even decipher whose conduct it is defending here. *See Roberson v. Crawford*, 638 F. Supp. 3d 1354, 1358 (M.D. Fla. 2022) ("while specific facts are not necessary, the

---

[9] In this regard, contrast the specificity of the agency allegations made against FMS with the specificity of those allegations against AMA. The Complaint specifically identifies as among FMS's "employees, agents, and/or contractors," a "Race Director, a Clerk of Course, a Flag Marshall, Flaggers/Corner Workers, a Chief Medical Officer, the Medical Director, and crewmembers of the Alpinestars Mobile Medical Unit." Compl. ¶48. But the agency allegations against AMA are conspicuous for their lack of such identification detail, referring generically just to AMA's "employees, agents, and/or contractors." *Id.* at ¶¶137-39. AMA deserves to know at least whose conduct it is defending in this action.

complaint should give the defendant fair notice of what the claim is and the grounds upon which it rests.").[10] This is a substantial defect that the Court should address.

### (2) The Complaint Fails to Plead Apparent Agency.

Plaintiff also fails to establish an apparent agency relationship among the "numerous" unidentified "employees, agents, and/or contractors." To plead apparent agency, it is necessary to allege "first, a representation by the principal to the plaintiff, which, second, causes the plaintiff to reasonably believe the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance on the appearance of agency." *Wolf v. Celebrity Cruises, Inc.*, 683 Fed. App'x 786, 797 (11th Cir. 2017). The principal must represent that the agent is authorized to act on its behalf. *Id.*

Here, Plaintiff's only relevant allegation is that AMA "represented to the riders…that its employees, agents, and/or contractors, including race staff and officials, would conduct the event in accordance with the applicable rules…to protect the riders from risks of harm beyond those inherent in the sport." Compl. ¶146. Even if Plaintiff had justifiably and reasonably relied upon such a representation (which he

---

[10] As an illustration of the confusion caused, Plaintiff alleges that FMS "controlled" its purported agents by providing them with "headsets," among other equipment. Compl. ¶55. But these are the identical allegations that Plaintiff now makes to establish an agency relationship between AMA and its agents. *Id.* at ¶¶143, 145 ("AMA controlled … race staff and officials by, among other things, providing them with headsets…"). Whereas the two crewmembers of Alpinestars Mobile Medical Unit who are accused of "roughly lift[ing] Plaintiff up off the ground by his armpits and drag[ging] him of the racetrack like a ragdoll with his legs dangling from his torso" are obviously wearing headsets, as evidenced by the photos in the Complaint (¶36), they clearly are not wearing *two different sets of headsets*. *See e.g. Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1357 (S.D. Fla. 2016) (conclusory allegations regarding control which merely "parrot…the elements of an actual agency relationship" are insufficient to establish actual agency).

could not, given the Rulebook's express disclaimers and the acknowledgements and waivers of liability in the Contract and Assumption of Risk), that reliance would still be insufficient to establish apparent agency. The reason is that such a representation deals only with expectations of safety; *it does not even purport to suggest that certain individuals were authorized to act on behalf of AMA*. Because Plaintiff does not allege a fundamental prerequisite of "apparent" agency – that AMA held out to riders that particular persons were authorized to act for AMA's benefit and thereby bind AMA – Plaintiff has failed to plausibly allege an apparent agency relationship between AMA and various unidentified "employees, agents, and/or contractors."

## D. Plaintiff Fails to Allege Entitlement to Punitive Damages.

Where a plaintiff fails to satisfy the pleading requirements for punitive damages, the court may properly deny the plaintiff's request for punitive damages on a motion to dismiss. *Springboard Media v. Augusta Hitech Soft Solutions, LLC*, 2022 WL 4598777 at *3 (S.D. Fla. 2022) ("In evaluating for the permissibility of punitive damages, Florida courts do not require a fact intensive investigation into the merits. Instead, they entertain the punitive damages issue by way of a motion to dismiss or a motion to strike, not a summary judgment motion.").

As a preliminary matter, because Plaintiff has failed to sufficiently allege the requisite elements to state a claim for negligence or establish an actual or apparent agency relationship between AMA and its unspecified alleged agents, Plaintiff's claim for punitive damages must be dismissed. *Foley v. Orange County, Fla.*, No. 6:12-cv-269-Orl-37KRS, 2012 WL 6021459 at *7 (M.D. Fla. Dec. 4, 2012) ("Punitive damages are

a form of relief, not a freestanding cause of action. Such a claim for damages must be linked to a substantive claim for relief.").

However, even if Plaintiff had properly pled a claim for vicarious liability against AMA, the Complaint still fails to allege the requisite culpability on the part of AMA to sustain an award of punitive damages. Section 768.72, *Florida Statutes,* establishes a heightened standard of proof for imposing punitive damages against an employer or principal based on vicarious liability. *Ranger Construction Industries, Inc. v. Allied World National Assurance Co.*, CASE NO. 17-81226-CIV-MARRA/ MATTHEWMAN, 2019 WL 13090449 at *6, (S.D. Fla. Dec. 23, 2019). To impose vicarious liability for punitive damages on an employer or principal, a plaintiff must demonstrate by clear and convincing evidence not only that the *agent* was personally guilty of intentional misconduct or gross negligence, but also that the *employer or principal* engaged in wrongdoing sufficient to impose liability against the underlying tortfeasor. §768.72(2), *Florida Statutes*; *Ranger*, 2019 WL 13090449 at *7. Section 768.72(3) thus permits the imposition of punitive damages against an employer or principal for the conduct of its employee or agent only where:

> (a) The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;
>
> (b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or
>
> (c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

Plaintiff has not alleged either sufficiently egregious misconduct by an AMA agent or fault on the part of AMA as principal that would support a punitive claim.[11] Regarding AMA's purported agents, Plaintiff does not claim that they were instructed to red flag the practice session and failed or refused to do so, or that they ever received from Plaintiff or anyone else a report of a potential spinal cord injury. Compl. ¶¶33, 149(c). Rather, the Complaint merely alleges that, following Plaintiff's crash, a yellow flag was immediately waved. *Id.* at ¶31. The Rulebook states that a yellow flag "indicates a serious hazard on or near the track" and requires all participants to "proceed with extreme caution." **Ex. 1**, §4.16(b). Moreover, regarding AMA as principal, the Complaint does not even purport to establish any fault against AMA itself. For instance, there is no allegation that AMA "actively and knowingly participated in" its purported agents' alleged conduct, or that AMA "knowingly condoned, ratified, or consented to" its agents' conduct. And there is certainly no allegation of facts (versus mere conclusory assertions) that AMA as principal engaged in conduct that would rise to the level of gross negligence.[12] Because the Complaint

---

[11] AMA is aware that this Court previously rejected FMS' argument to dismiss Plaintiff's claim for punitive damages in the Second Amended Complaint. However, Plaintiff asserted allegations of *direct liability* against FMS there. *But there are no direct claims asserted against AMA here, and such allegations are necessary to satisfy Section 768.72(3).* As a result, Plaintiff's allegations are wholly insufficient to establish a basis for the imposition of punitive damages against AMA.

[12] Plaintiff's punitive damages allegation against AMA consists merely of a conclusory assertion that "the acts and omissions of the AMA's *employees, agents, and/or contractors*, including race staff and officials, were not only egregiously unreasonable and substandard, but were so reckless or wanting in care that they constituted a conscious disregard or indifference to the life, safety, or rights of Plaintiff, and demonstrated a reckless disregard for the consequences so as to affect the life or health of Plaintiff." Compl. ¶ 151 (emphasis added). The important point here is that the foregoing allegations do not even purport to address any conduct *on the part of AMA as principal*, but rather only on the part of AMA's agents or employees.

does not establish the requisite intentional misconduct by AMA's agents or the requisite fault on the part of AMA itself, AMA cannot incur vicarious liability here for punitive damages.

## CONCLUSION

As detailed above, Plaintiff's negligence claim is barred by the contractual waivers of liability he executed to participate in the 2020 Supercross. Furthermore, Plaintiff has failed to plausibly allege sufficient facts to state a claim for negligence, has failed to adequately allege an actual or apparent agency relationship between AMA and the underlying tortfeasors, and has failed to plead any allegations of direct conduct by AMA to support the imposition of punitive damages. As a result, Plaintiff's claim for vicarious liability for negligence against AMA fails and Count VIII should be dismissed.

WHEREFORE, AMA respectfully requests this Court grant this Motion and dismiss Count VIII of the Third Amended Complaint and grant any other and further relief as this Court deems just and proper.

## **CERTIFICATION OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

*/s/ Michael S. Hooker*
Michael S. Hooker

Dated:  May 21, 2024          Respectfully submitted,

_____/s/____Michael S. Hooker_____
Michael S. Hooker  |  FBN 0330655
Caroline Catchpole Spradlin  |  FBN 1003631
**PHELPS DUNBAR LLP**
100 South Ashley Drive, Suite 2000
Tampa, FL  33602-5311
Phone:  813-472-7550; Fax:  813-472-7570
E-mail:  brian.albritton@phelps.com,
caroline.spradlin@phelps.com,
**COUNSEL FOR AMERICAN MOTORCYCLE ASSOCIATION**

## CERTIFICATE OF SERVICE

We hereby certify that on May 21, 2024, we electronically filed the foregoing using the Court's CM/ECF system, thereby serving all registered users in this case.

_____/s/____Michael S. Hooker_____

PD.45377033.1