# EXHIBIT A

# SECOND AMENDED

# AND

# RESTATED

# SUPERCROSS SANCTIONING AGREEMENT

# DATED JULY 1, 2019

# BETWEEN

# FELD MOTORSPORTS INC.

# AND THE

# AMERICAN MOTORCYCLIST ASSOCIATION

CONFIDENTIAL

FMS02247
FMS_INC_0000597

## SECOND AMENDED AND RESTATED
## SUPERCROSS SANCTIONING AGREEMENT

THIS SECOND AMENDED AND RESTATED SUPERCROSS SANCTIONING AGREEMENT (the "Agreement") is entered into July 1, 2019 by and between Feld Motor Sports, Inc., a Delaware corporation ("FMS") and American Motorcycle Association (d/b/a American Motorcyclist Association), an Ohio non-profit corporation ("AMA").

WHEREAS, Paradama Productions, Inc., d/b/a AMA Pro Racing, an Ohio for profit corporation, ("AMA Pro") and SFX Motor Sports, Inc., then d/b/a Clear Channel Entertainment-Motor Sports, a Texas corporation entered into that certain Supercross Sanctioning Agreement ("Old Sanctioning Agreement") dated February 25, 2002.

WHEREAS, all of AMA Pro's rights and benefits under the Old Sanctioning Agreement have been assigned to, and all of AMA Pro's duties and obligations under the Old Sanctioning Agreement have been assumed by, AMA.

WHEREAS, AMA and SFX Motor Sports, Inc. d/b/a Live Nation Motor Sports, a Texas corporation ("Live Nation") and AMA extended the Old Sanctioning Agreement by entering into that certain Amended and Restated Supercross Sanctioning Agreement dated July 14, 2006 ("Current Amended Sanctioning Agreement" or "CASA").

WHEREAS, all of Live Nation's rights and benefits under the Current Amended Sanctioning Agreement have been assigned to, and all of Live Nation's duties and obligations under the Current Amended Sanctioning Agreement have been assumed by, FMS.

WHEREAS, AMA owns the names and marks "American Motorcyclist Association", "AMA", and "AMA SUPERCROSS" (collectively, the "AMA Marks") and all rights to exploit the AMA Marks.

WHEREAS, AMA owns or has the rights to the sanctioning, promotion, sponsorship, marketing and broadcast rights related to the AMA Marks related to the supercross series as currently constituted pursuant to the CASA (the "Existing Series") and has the exclusive right to grant sanctions for, and provide sanctioning services to, the Existing Series, the exclusive right to manage all other rights associated with the Existing Series, and the right to license the use of AMA Marks in connection with the Existing Series (collectively, the "Rights").

WHEREAS, FMS is the owner and promoter of various supercross events (as that term is herein defined) that have been or will be presented by FMS in various venues throughout the United States (hereinafter sometimes collectively referred to as the "Domestic Events") and/or in various venues outside of the United States (the "International Events") that participate in the Existing Series.

WHEREAS, AMA and FMS have agreed that it is currently in the best interest of both parties to, among other things, (i) extend the term contemplated by the Current Amended Sanctioning Agreement for an additional fifteen (15) years through and until November 5, 2034, and (ii) continue to combine the Domestic Events, the International Events and the ISC Event (as defined herein) into a single championship supercross series that will be referred to in this Agreement as the "Series" or the "Championship".

1

CONFIDENTIAL

FMS02250
FMS INC 0000600

WHEREAS, AMA and FMS recognize that the Federation Internationale Motocyclisme ("FIM") will have certain rights and authority with respect to the Series as described herein.

WHEREAS, AMA and FMS desire to enter into this Agreement as a second amendment and restatement of the Old Sanctioning Agreement, as amended and restated by the CASA, in order to address the agreements of the parties hereto regarding the sanctioning, promotion, sponsorship, marketing and broadcast rights (collectively, the "Rights") related to the Series as more fully described herein.

WHEREAS, during the term of this Agreement and upon the terms and conditions contained herein, AMA is willing to (i) agree that the Domestic Events, the International Events (collectively, the "Events") and the ISC Event will continue to be combined into a single supercross championship series, (ii) permit FMS use of AMA Marks in connection with the operation and promotion of the Events, (iv) grant to FMS the exclusive right to exploit the Rights owned by AMA with respect to the Series, (v) provide certain sanctioning services more fully described herein with respect to all of the Events included in the Series and (vi) agree that neither it nor any of its subsidiaries or affiliates will provide sanctioning services to any other supercross events other than the ISC Event or except as otherwise permitted herein without the prior written consent of FMS.

WHEREAS, FMS is willing to (i) produce, promote and operate the Domestic Events in accordance with the provisions hereof during the term hereof, (ii) cause the International Events to be produced, promoted and operated in accordance with the provisions hereof, and (iii) pay certain fees to AMA as more fully set forth herein in exchange for the agreements and rights described in the immediately preceding recital.

NOW, THEREFORE, for and in consideration of the foregoing recitals, and the mutual covenants and agreements contained herein, the parties to this Agreement agree as follows:

## I. Term of Agreement

A.   Term of Agreement.

   1.   The term of this Agreement shall be effective as of May 8, 2019 (the "Effective Date") and expire on November 5, 2034 and shall govern all Supercross Seasons (herein defined) that begin after the Effective Date.

       (a)   FMS shall be obligated to produce, promote and operate fifteen (15) Events, exclusive of the ISC Event, to be included in the Series during each of the Supercross Seasons during the term of this Agreement.

       (b)   FMS shall have the right, but not the obligation, to produce, promote and operate a minimum of two (2) International Events to be included in the Series during each of the Supercross Seasons during the term of this Agreement; provided, however, FMS will not include more than two (2) International Events in the Series during any Supercross Season during the term of this Agreement without AMA's consent (such consent not to be unreasonably withheld). If, for any reason, the number of Domestic Events should be reduced to less than fifteen (15) for any Supercross Season during the term of this

CONFIDENTIAL

FMS02251
FMS_INC 0000601

4. <u>Emergency Medical Support</u>. FMS agrees to arrange for emergency medical care at the Events at no cost to AMA. FMS will use commercially reasonable efforts to maintain the same level of emergency medical support as provided during the 2019 Season, including the provision of the Mobile Medic Rig.

5. <u>AMA Maintenance of FIM Relationship.</u> The current affiliation of AMA as the United States FMN of the FIM is a material term upon which FMS has relied in entering into this Agreement. AMA covenants to FMS that AMA will exercise its best efforts to maintain its existing relationship and affiliation as the United States FMN (or designated representative) of the FIM. The obligation of AMA contained in this Section II, L, 5 are sometimes herein called the "FIM Maintenance Obligations", and a termination of the current affiliation of the AMA as the FMN of the FIM is referred to herein as an "FIM Affiliation Loss." On and subject to the terms of this Agreement, including the FIM Maintenance Obligations, AMA will be the exclusive provider of the services described in Section II, E hereof during the term of this Agreement for the Series subject to the following:

(a) <u>Permissible Termination of the FIM Maintenance Obligations by AMA</u>. AMA shall not be required to continue its FIM Maintenance Obligations during the Term of this Agreement if any of the following events occur: (i) the FIM, its officers and/or directors are convicted of, or plead guilty to, any illegal or criminal activity; (ii) the FIM, its officers and/or directors do or commit any act involving bribery, race-fixing, or fraudulently reporting or altering rider drug test results; or (iii) the FIM becomes insolvent, declares bankruptcy or otherwise discontinues its operations or ceases to exist. In such event, if AMA elects to terminate its affiliation with the FIM, then it shall consult with FMS regarding the effect on the Series and provide FMS with written notice no less than 30 days prior to the effective date of such termination. FMS, in its sole discretion, may also elect to terminate its relationship with the FIM. The parties shall then cooperate to sever the Domestic Events from the Series and continue to operate the Domestic Events pursuant to the terms and conditions of this Agreement, and AMA will be required to recognize the FIM licenses of international riders participating in the Events.

(b) <u>Possible Termination of the FIM Maintenance Obligations</u>. During the Term of this Agreement, if the FIM, its officers or directors (i) commit an offense of moral turpitude under federal, state or local laws, (ii) engage in conduct which degrades, injures or tarnishes the Series, (iii) brings the Series into public hatred, disrepute, scorn, or ridicule, or (iv) which results in or is likely to result in actual or threatened claims against the Series, then the AMA shall meet and confer with FMS regarding whether the FIM Maintenance Obligations should be terminated. The Parties agree first to meet in good faith to determine whether the FIM Maintenance Obligations should be terminated, after giving full consideration to all relevant factors, including but not limited to: the factual events and context of the conduct at issue; the resultant effect of such conduct on FMS, AMA, the Series, its participants, and fans; remedial steps taken by the FIM, if any; the timing, terms and conditions of a potential withdrawal by the AMA as the US FMN; and the resultant effect of such withdrawal on FMS, AMA, the Series, its participants, and fans. In the event that the Parties cannot agree whether withdrawal by the AMA as the US FMN to FIM constitutes a permissible or impermissible FIM Affiliation Loss, then the Parties

CONFIDENTIAL

    C.    <u>Independent Contractors.</u>

It is expressly understood and agreed that the parties are independent contractors and that this Agreement is not intended and shall not be construed to create a partnership, joint venture, principal agent relationship, or any other similar relationship between AMA and FMS. Unless specifically provided in this Agreement, neither party is authorized to contract or otherwise make commitments on behalf of the other party, or to otherwise act as an agent or representative of the other party for any reason or purpose.

    D.    <u>Insurance.</u>

        1.    <u>By Feld Motor Sports</u>. FMS agrees to acquire insurance of the types and amounts as are commercially reasonable in consideration of its obligations and the activities contemplated under this Agreement, including, without limitation, workers' compensation for its employees and commercial general liability (occurrence form) and umbrella/excess liability insurance coverage for (i) premises and operations liability, (ii) broad form property damage, (iii) contractual liability for liability assumed under this Agreement and other contract documents with AMA, (iv) personal injury, and (v) products and completed operations liability, with a minimum combined single limit of Two Million ($2,000,000 USD) per occurrence and in the aggregate, or the amount required by a venue in which FMS promotes an Event, whichever is greater, on account of any accident, event, or occurrence in or about the facilities in which the Events are presented resulting in bodily injury, personal injury, death or property damage as a result of any negligent act or omission by FMS. FMS shall cause, if allowed by law, its workers' compensation carrier to waive insurers right of subrogation with respect to AMA, its parent and affiliated companies. Each such commercial general liability policy shall name AMA, and their respective trustees, directors, officers, representatives and employees as additional insureds. Further, coverage for the "Additional Insured" shall apply on a primary basis irrespective of any other insurance, whether collectible or not, only to the extent of FMS's liability. At least ten (10) business days prior to any Event, FMS shall deliver (or cause to be delivered) to AMA a certificate of insurance evidencing such coverage. Each such insurance policy shall be with an insurer having a minimum financial rating of A-VII, in a form reasonably acceptable to AMA and shall provide that it will not be subject to cancellation, termination or change except after at least thirty (30) days' prior written notice to AMA. If FMS fails to comply with such requirements, AMA may obtain such insurance and keep the same in effect, and the premiums paid by AMA for such policies shall be immediately due and payable by FMS, at the sole expense of FMS.

        2.    <u>By AMA</u>. AMA agrees to acquire insurance of the types and amounts as are commercially reasonable in consideration of its obligations and the activities contemplated under this Agreement, including, without limitation, workers' compensation for its employees and commercial general liability (occurrence form) and umbrella/excess liability insurance coverage for (i) premises and operations liability, (ii) broad form property damage, (iii) contractual liability for liability assumed under this Agreement and other contract documents with FMS, (iv) personal injury, and (v) products and completed operations liability, with a minimum combined single limit of Two Million ($2,000,000) per occurrence and in the aggregate, on account of any accident, event, or occurrence in or about the facilities in which the Events are presented resulting in bodily injury, personal injury, death or property damage as a result of any negligent act or omission by AMA. AMA shall cause, if allowed by law, its workers' compensation carrier to waive insurers

CONFIDENTIAL

FMS02274
FMS INC 0000624