# EXHIBIT B

## RACING AGREEMENT

This Racing Agreement (this "Agreement") is effective as of the date set forth below and is between Troy Lee Designs Red Bull KTM Racing Team ("TEAM "), located at 155 E Rincon, Corona, CA, 92879, and Brian Moreau an individual ("RIDER") located at 86190 Quincay, La Courtille, France.

1.  **Purpose.** TEAM is an established Supercross and Motocross racing team TEAM desires RIDER to perform certain personal services relating to racing, testing and promoting said motorcycles and products, such services to be performed for TEAM and/or the TEAM designated race team ("Team") as set forth on <u>Attachment "1"</u>. RIDER desires to provide the above services, in accordance with the terms and conditions of this Agreement.

2.  **Services and Obligations of RIDER.**

    2.1.  <u>Services of RIDER</u>. RIDER acknowledges that TEAM is entering into this Agreement in reliance upon RIDER's representations, warranties and covenants in Section 2.19, and that such representations, warranties and covenants are a material term and inducement to TEAM to enter into this Agreement.

    2.2.  <u>Events</u>.

        (a)  **Scheduled Events.** During each Agreement Year (as defined in Section 4.1) of this Agreement, RIDER shall enter in and race in all scheduled events as listed in <u>Attachment "1"</u> ("Scheduled Events"). In such Scheduled Events and Additional Events, as defined below, RIDER shall use only the brand motorcycles KTM ("Motorcycle(s)") as provided by TEAM or the Team. The Scheduled Events and the Additional Events are collectively referred to as the "Racing Events". RIDER shall ride to win in each Racing Event, unless specifically directed otherwise by TEAM.

        (b)  <u>Additional Events</u>. RIDER shall participate in (4) miscellaneous additional racing events for testing purposes ("Additional Events"), at such times and places as may be requested by TEAM. TEAM shall not be obligated to pay RIDER any additional compensation, including, without limitation, bonuses and expense reimbursements, for RIDER's participation in such Additional Events, unless specifically set forth in this Agreement. The same terms and conditions for RIDER's participation in the Scheduled Events shall apply to the Additional Events.

        (c)  <u>Right to Cancel Race Participation</u>. TEAM reserves the right to cancel RIDER's participation in any Racing Event which in TEAM's judgment may injure or adversely reflect on the name, goodwill or reputation of TEAM, its affiliated or related companies, the Team, sponsors of the Team ("Sponsors"), RIDER, any of

Rider Initials LS, FM, BM

TEAM Initials _____ 8/1/19

TLD000001

(d) **Events Outside of Series**. RIDER shall not participate in any other racing events, other than the Racing Events, without the prior written consent of TEAM which shall not be unreasonably withheld. RIDER agrees that all financial responsibility, insurance, health, safety and other arrangements for RIDER's participation in such other events shall be the sole responsibility of RIDER. TEAM agree to allow Rider to participate to the 2021 Paris Supercross (October or November)

2.3. **Protective Equipment**. At all times when RIDER is actually riding a Motorcycle, including without limitation during races, practice and testing sessions, RIDER shall wear protective equipment and accessories as designated and provided by from time to time by TEAM or the Team, in its/their sole discretion.

2.4. **Transportation and Lodging**. TEAM agrees to pay rider **$1,200.00** per AMA racing event Rider participates in. For scheduled main races less than 250 **miles** distance from RIDER's residence, TLD will pay a flat fee of **USD $500**. RIDER shall submit a claim form for each race he attends. TEAM agrees to make arrangements for air and ground transportation and motel/hotel reservations to facilitate RIDER's participation in the Racing Events. For transportation to and from his personal practice sessions. TEAM will provide a vehicle for the first year for RIDER to use Starting October 10th 2019 through September 30th 2020. TLD will also give RIDER up to $15,000 in housing expense. TLD will co-sign if rider would like to rent an apartment or rent a room from another resident.

2.5. **Costs and Expenses; Expense Reporting**. Except as otherwise provided in this Agreement, RIDER shall be responsible for all costs and expenses of the Racing Events and activities related to this Agreement, including without limitation: fuel, transportation, food, lodging and other expenses of RIDER. Except as otherwise provided in this Agreement, RIDER shall submit expense reports, with race results, to TEAM for expenses incurred, to facilitate RIDER's participation in the Racing Events, testing and personal appearances within thirty (30) days following the last day of any Racing Event, or other such event or appearance. RIDER shall only be reimbursed for expenses in the amounts and in accordance with the provisions of Attachment "2".

2.6. **Conduct**. RIDER shall at all times conform his personal conduct to social conventions and to the highest standards of good sportsmanship, good citizenship and good moral conduct ("Conduct Standard(s)"). RIDER shall not engage in any activity or act, which in TEAM's sole discretion and judgment, may in any way injure or adversely reflect on the name, goodwill or reputation of TEAM, its affiliated or related companies, the Team, or its/their products, insignias, logos, trademarks, trade names or service marks ("Negative Act(s)").In the event RIDER (a) fails to conform to any Conduct Standard, or (b) engages in a Negative Act, then RIDER agrees that TEAM, in its sole discretion, may either deduct the following amount(s), as applicable, from the next payment due from TEAM to RIDER pursuant to this Agreement, or require RIDER to pay to TEAM such amount(s), as applicable, as compensation to TEAM for liquidated damages: TEAM will issue a written warning for RIDER's first failure to conform to a Conduct Standard or RIDER's first engagement in a Negative Act, and the sum of Two Thousand Dollars ($2,000) each for the second and any subsequent (a) failure by RIDER to conform to a Conduct Standard or (b) engagement by RIDER in a Negative Act. The parties acknowledge that these amounts

Rider Initials _L.S. PM BM_

TEAM Initials _TL_

TLD000002

represent reasonable estimates of the damages that TEAM would incur for each such failure since the actual damages may be difficult to determine and may not be subject to exact computation. In addition, RIDER agrees that a third (a) failure to conform to a Conduct Standard and/or (b) engagement in a Negative Act, shall give TEAM the right, in its sole discretion, to terminate this Agreement in its entirety. The foregoing provisions in this Section shall not limit TEAM's rights under Section 4.3.

2.7. **Conditioning; Fitness to Ride**. RIDER will remain in top physical condition by means of training programs targeted at consistently improved muscular and cardiovascular capabilities during the term of this Agreement. RIDER will maintain a TEAM approved practice regimen to maintain his racing skills. RIDER agrees to submit weekly training and practice logs to TEAM or the Team, when requested at least seven (7) days in advance, as verification of RIDER's consistently improved physical conditioning and practice regimen. RIDER agrees to submit to a quarterly physical capability test conducted by TEAM or the Team at a facility of TEAM's or the Team's choice, at TEAM's expense. If in the opinion of TEAM, RIDER may not be mentally or physically fit to compete safely, RIDER agrees to submit to an appropriate examination by a doctor of TEAM's choice at TEAM's expense. TEAM reserves the right to make the final decision as to the RIDER's fitness to compete.

2.8. **Product and Apparel Endorsement Rights**.

(a) **Hard Goods**. RIDER agrees that TEAM has exclusive product endorsement rights to all hard goods, as defined by customary usage in the industry, including without limitation motorcycles, parts, attachments, accessories, lubricants, tires and other related racing products to be determined by TEAM ("Hard Goods") in connection with the Motorcycles, the Racing Events, and all other events and activities contemplated under this Agreement, including without limitation TEAM's exclusive right to enter into sponsorship agreements with suppliers of Hard Goods, and TEAM's exclusive right to earn compensation from such sponsorship and endorsement of Hard Goods by the Team and RIDER. RIDER shall have no right to endorse any Hard Goods, except for neck protection from the Effective Date hereof through September 30, 2021 regardless of whether this Agreement is terminated, or RIDER ceases to provide services hereunder for any reason, prior to September 30, 2021, except in event of a termination of the Agreement as a result of a breach by TEAM. RIDER shall not be entitled to any further compensation for any endorsement of Hard Goods by RIDER (at TEAM's request).

(b) **Team Apparel**. At all times during all events and functions contemplated in this Agreement, including without limitation all Racing Events, personal appearances, dealer events, podium ceremonies, interviews, special events and promotions that may be requested by TEAM from time to time (but excluding Racing Events and practice sessions while RIDER is actually riding a Motorcycle), RIDER and any employees or contractors of RIDER shall wear apparel and accessories supplied by TEAM, ("Team Apparel"), and conform their appearance to reasonable grooming standards as approved by TEAM, while within TEAM's designated pit area.

Rider Initials _LS_ _FM_ _RM_

TEAM Initials _TL_

RIDER acknowledges that the Team Apparel identification requirements of TEAM, the Team or Sponsors may change from time to time during the term of this Agreement, as set forth in Section 4.1 hereof, and RIDER agrees to comply with any such change in identification requirements upon designation by TEAM and/or the Team. RIDER agrees that TEAM has exclusive product endorsement rights to all Team Apparel, and that neither RIDER nor any of his employees or contractors shall be entitled to any compensation for wearing Team Apparel.

(c)  **Racing Apparel**.  RIDER agrees that TEAM has exclusive rights to all Racing Apparel and Rider will wear Racing Apparel, protective equipment and accessories including without limitation riding pants, jerseys, gloves, chest protectors, helmets, goggles, boots and other items ("Racing Apparel") as determined by TEAM. RIDER shall not be entitled to any additional compensation other than as listed in "Attachment 2" of the Racing Agreement for wearing Racing Apparel. At all times during Racing Events, practice and testing sessions while RIDER is actually riding a motorcycle, RIDER shall wear apparel, protective equipment and accessories including without limitation riding pants, jerseys, gloves, chest protectors, helmets, goggles, boots and other items ("Racing Apparel") approved by TEAM, bearing the Team Sponsor, Team and Sponsor identifications, as designated by TEAM in its sole and absolute discretion.  All Racing Apparel shall conform to TEAM requirements.

(d)  **Post-Race Interviews and Podium Events**.  RIDER's obligation to wear TEAM and/or Team Apparel supplied by the team, at interviews and podium events immediately following a Racing Event shall be subject to RIDER having a facility at or near the interview or podium event so that RIDER can change from Racing Apparel into Team Apparel on a timely basis.  If such a facility is not available, then RIDER will not be required to change completely out of Racing Apparel and into Team Apparel, but rather RIDER will comply with as many of TEAM's and/or Team Apparel requirements for the interview or podium event as may be reasonable under the circumstances, such as putting on a TEAM and/or Team Apparel hat or jacket.

2.9.  **Race Team Sponsors and Product Identification**.

**Race Team Sponsors**.  Notwithstanding anything herein to the contrary, TEAM shall have the unconditional exclusive right, in its sole discretion, to enter into agreements pursuant to which the Team will accept sponsorship of products and endorse products of any nature whatsoever, including without limitation Hard Goods, Team Apparel and Racing Apparel so long as any such products do not in any significant way injure or adversely reflect on the name, goodwill, or the reputation of RIDER.

(a)  **TEAM's Product Identification Rights**.  Notwithstanding anything herein to the contrary, all designs, colors, and product and sponsor identification on all Motorcycles, Team Apparel and Racing Apparel to be displayed, worn or used by RIDER, and/or any employees and contractors of RIDER, in connection with the

Rider Initials *LS  FH  BH*

TEAM Initials *TC*

TLD000004

Racing Events or any other events or activities contemplated in this Agreement will bear the identification, trademarks and designs of TEAM, the Team and Sponsors, as designated and approved in advance by TEAM, in TEAM's sole discretion for identification on Motorcycles, Team Apparel, and Racing Apparel. RIDER will not use, endorse or promote any other product or sponsor identification in connection with the activities contemplated under this Agreement. Any other identification must not overlie or encroach upon the Team Sponsor name, or any identification or trademarks of TEAM or the Team.

(b)    **Failure to Comply with Apparel Requirements**. In the event RIDER, or any employee or contractor of RIDER, fails to comply with any Racing Apparel requirements or Racing Apparel identification set forth in this Agreement, then TEAM shall give RIDER written notice of the first such failure to comply and in the event of a second and any subsequent failure to comply, RIDER agrees that TEAM may withhold the amount of Two Thousand Dollars ($2,000.00) from the next scheduled TEAM payment to RIDER for each such failure to comply and for each subsequent failure to comply that occurs at any Racing Event during the term of this Agreement. In the event RIDER, or any employee or contractor of RIDER, fails to comply with any Team Apparel, Team Apparel identification or grooming requirements set forth in this Agreement, then TEAM shall give RIDER written notice of the first such failure to comply and RIDER agrees that TEAM may withhold the amount of Two Thousand Dollars ($2,000.00) from the next scheduled TEAM payment to RIDER for each such failure to comply and for each subsequent failure to comply that occurs at any Racing Event, dealer or personal appearance, podium ceremony, interview or other event contemplated herein during the term of this Agreement. The parties acknowledge that, in addition to all other remedies, these withholding amounts represent a reasonable estimate of the damages that TEAM or the Team would incur in the event of any such failure to comply because the actual damages may be difficult to determine and may not be subject to exact computation.

2.10.    **Covenant Not to Compete**.

(a)    Notwithstanding anything herein to the contrary, RIDER acknowledges that in entering into this Agreement, TEAM has relied heavily on RIDER's commitment to provide personal services hereunder through September 30, 2021, that, in further reliance on RIDER's personal commitment through September 30, 2021 TEAM has spent and will continue to spend a great deal of money, time and effort in the promotion and advertising of the Team and Team Sponsor products based on RIDER's personal services hereunder and RIDER's personal identification with the Team and Team Sponsor Products through September 30, 2021 and that, regardless of whether this Agreement is terminated prior to September 30, 2021, if RIDER were to endorse, promote or compete for any brand of motorcycles or other products that are competitive with the Motorcycles or Team Sponsor products prior to September 30, 2021 TEAM would suffer very serious damage and financial injury the amount of which would be extremely difficult if not impossible to estimate. Therefore, as an inducement to TEAM to enter into this Agreement,

Rider Initials *CS* *FM* *BH*

TEAM Initials *TC*

TLD000005

RIDER hereby agrees that neither RIDER nor any employees or contractors of RIDER will directly or indirectly endorse, represent, promote or compete for any brand of motorcycles or other products that are competitive with the Motorcycles, Team Sponsor products, or any sponsorship products of the Team, including without limitation sponsorship products of Hard Goods, Team Apparel and Racing Apparel ("Covenant Not to Compete"). All of the terms and conditions of this Covenant not to Compete shall continue in effect until September 30, 2021, except in the event of an early termination of this Agreement as a result of a breach by TEAM.

(b) **Term of Covenant Not to Compete**. The Covenant Not to Compete shall remain in effect during the term of the Agreement so long as the Agreement Terms remain in effect. For clarity, it shall remain in effect regardless of whether this Agreement is terminated by RIDER or TEAM prior to September 30, 2021, except in the event of a termination of this Agreement as a result of a breach by TEAM or early termination due to lack of eligibility of Rider in year two as set out in Section 4.3(c).

2.11. **Publicity**.

(a) **Podium Ceremonies**. RIDER shall be physically present and shall cooperate at each podium ceremony conducted for a finish position that RIDER achieves during any Racing Event. RIDER shall mention and promote Team Sponsor, the Team and the Sponsors during each such podium ceremony. If RIDER fails to be present for the podium ceremony or fails to mention and promote Team Sponsor, the Team, and the Sponsors, then RIDER agrees that TEAM in its sole discretion may either deduct the amount of Two Thousand Dollars ($2,000.00) from RIDER's next scheduled TEAM payment or require RIDER to pay TEAM such amount, to compensate TEAM as liquidated damages, for each failure that occurs at any Racing Event. The parties acknowledge that this amount represents a reasonable estimate of the damages that TEAM would incur for each such failure because the actual damages in such event may be difficult to determine and may not be subject to exact computation. The forgoing provisions of this section shall not limit TEAM's right under section 4.3.

(b) **Post-Race Promotion**. RIDER shall be physically present at the Team transporter and shall fully cooperate, from the time specified by TEAM or the Team for a minimum of sixty (60) minutes following the final race of each Racing Event, for promotional purposes and spectator/fan autograph requests (collectively, "Publicity Event(s)"). In the event RIDER fails to be available for a Publicity Event for the minimum sixty (60) minute period, without prior consent from an authorized TEAM employee, or fails to fully cooperate as agreed, then TEAM may in its reasonable discretion either deduct the amount of Five Hundred Dollars ($500) from the next payment due from TEAM to RIDER pursuant to this Agreement, or require RIDER to pay TEAM such amount, to compensate TEAM as liquidated damages. The parties acknowledge that this amount represents a reasonable estimate of the damages TEAM would incur for each such failure since the actual damages may be difficult to determine and may not be subject to exact computation. Repeated breaches of this provision may be treated by TEAM in its

Rider Initials _LS FM BH_

TEAM Initials _TLC_

TLD000006

sole discretion as grounds for termination of this Agreement. The foregoing provisions of this Section shall not limit TEAM's rights under Section 4.3.

(c)  **Additional Personal Appearances**.  RIDER shall make personal appearances at such times and places as may be requested by TEAM, up to a total of twenty-five (25) appearances per Agreement Year provided the racing schedule permits such appearances.  TEAM will use its best efforts to maintain a two (2) hour maximum time limit on each such personal appearance.  RIDER shall be notified at least ten (10) days in advance of the scheduled personal and/or dealer appearances.

(d)  **TEAM's Publicity Rights**.  In consideration of TEAM's commitments in this Agreement, RIDER hereby assigns to TEAM all of his respective right, title and interest in and to RIDER's name and likeness of his signature, and any and all films, photographs, likenesses, facsimiles, pictures, including negatives thereof, recordings, tapes, publicity and the like, whether taken or made by TEAM, RIDER or any other person, and whether or not delivered to TEAM, which may be generated by, taken during or result from the Race Team, the Motorcycles, the Racing Events, RIDER's entering any of the Racing Events, RIDER's use of or association with the Motorcycles or Team Sponsor products for racing, practice, personal use or transportation, or any other events or activities contemplated in this Agreement, from the date hereof through September 30, 2021, regardless of whether this Agreement is terminated or RIDER ceases to provide services hereunder for any reason other than due to breach by TEAM prior to September 30, 2021 (collectively, "Publicity"), all of which will hereafter belong to and become the exclusive property of TEAM.  RIDER hereby acknowledges and agrees that TEAM may use the Publicity in any-manner TEAM may deem fit or proper, in TEAM's sole discretion, including without limitation authorizing others to use the Publicity, without any further consent of or compensation to RIDER, or any other person, and RIDER hereby waives any and all rights thereto and to any direct and/or residual monies which may be derived from the use thereof by TEAM.

(e)  **Testimonial Endorsements**.  In the event TEAM requests RIDER to make any statement or testimonial for use in advertising or promotions and the like, whether in written material, billboards, radio, television or otherwise, concerning Team Sponsor or associated sponsor products RIDER shall fully cooperate with TEAM in the giving of such statements or testimonials, provided, however, that prior to use thereof, TEAM shall first submit same to RIDER for approval and concurrence regarding the truthfulness thereof by RIDER.  RIDER's written approval of such statements or testimonials, or RIDER's failure to object in writing to any such statement or testimonial to TEAM within ten (10) days after RIDER's receipt of the statement or testimonial from TEAM, shall be deemed to be (i) written consent for the use thereof by TEAM; (ii) certification that such statements or testimonials were freely given by RIDER; and (iii) RIDER's honest belief and opinion.  No further compensation shall be paid to RIDER for such statements or testimonials.

Rider Initials _LS_ _FH_ _BH_

TEAM Initials _TC_

TLD000007

2.12    **Motorcycles**.

(a)    **Use of Motorcycles**. RIDER agrees that the Motorcycles are provided for RIDER's use only according to the terms of this Agreement. RIDER shall ensure that all Motorcycles ridden under this Agreement are in first class mechanical and safe operating condition before RIDER operates the Motorcycles, and the acceptance of the Motorcycles by RIDER shall be deemed to be a certification by RIDER that the Motorcycles are in first class mechanical, operating and racing condition. TEAM does not authorize, and RIDER shall not allow, the use of any Motorcycles by anyone other than RIDER (except persons such as mechanics or other persons specifically assigned by TEAM or the Team to assist in testing, servicing and/or maintaining the Motorcycles). RIDER shall ride or operate the Motorcycles only in designated testing areas, on testing tracks or at Racing Events. RIDER shall cooperate with TEAM or the Team, as applicable, in the preparation and maintenance of all Motorcycles at the end of each practice session and Racing Event as well as at any other time as is requested by TEAM or the Team. RIDER is responsible for the theft or other loss of any Motorcycles or equipment provided by TEAM to RIDER and under control of RIDER. Should RIDER win a Championship during his time with TEAM, TEAM agrees to provide RIDER with one of his race bikes detuned for his keeping.

(b)    **Return of Loaned Motorcycles**. At the end of this Agreement, or at any time upon demand by TEAM in writing, RIDER shall return all loaned Motorcycles. Motorcycles returned shall have original frame and engine numbers as issued to RIDER. At the end of the term of this Agreement, RIDER may deliver a written request to purchase or otherwise dispose of the Motorcycles. In no event shall RIDER release possession or use of the Motorcycles to a third party until TEAM has provided its express written consent to do so and has provided RIDER with clear title to the Motorcycles. Motorcycles to be returned shall be returned to TEAM at RIDER's expense, and as directed by TEAM.

2.13    **Rights to Parts and Modifications**. RIDER agrees that TEAM and/or the Team reserves the right to control the use of both factory and aftermarket parts, accessories and modifications used on Motorcycles or Team Sponsor products used by RIDER.

2.14    **Motorcycle and Product Testing**. RIDER shall participate in testing sessions for the development of designated motorcycles and products as requested by TEAM or the Team. RIDER shall provide all technical information as requested by TEAM or the Team regarding such testing and development.

2.15    **Health Insurance**. During the term of this Agreement, RIDER shall provide his own adequate health insurance.

2.17    **Taxes**. RIDER shall pay, when due and as due, any and all taxes incurred as a result of payments made by TEAM to RIDER under this Agreement, including estimated taxes. RIDER hereby agrees to indemnify, defend and hold harmless, TEAM and its affiliated

Rider Initials _LS FH BH_

TEAM Initials _TC_

TLD000008

and related companies, for any claims, losses, costs, fees (including attorneys' fees and costs), liabilities, damages or injuries suffered by TEAM arising out of RIDER's breach of this Section.

2.18    **Confidentiality**. RIDER acknowledges the confidential and proprietary nature and value to TEAM, the Team, and the Sponsors of information relating to the terms of this Agreement, and any ideas, concepts, inventions, designs, developments, procedures, data, know-how, or other matters concerning TEAM, its affiliated and/or related companies, its/their products, the Team, and the Sponsors, which may be disclosed to RIDER or otherwise acquired by RIDER in the course of his duties under this Agreement (collectively, "Confidential Information"). RIDER shall maintain the confidentiality of such Confidential Information and shall not disclose such Confidential Information, except to his employees, agents and representatives who have a demonstrated need to know such Confidential Information in order to carry out RIDER's obligations under this Agreement confidential or proprietary information, but shall use no less than reasonable care under the circumstances. In the event RIDER is required to disclose Confidential Information pursuant to any legal process, judicial or government order, RIDER shall promptly notify TEAM so as to allow it to take all appropriate legal action and intervention in response thereto. RIDER shall advise TEAM in writing within twenty-four (24) hours of receiving evidence of any misappropriation or misuse of any Confidential Information of which RIDER becomes aware. RIDER shall, at his own expense, take all steps, including initiation and prosecution of actions at law or in equity, necessary to prevent disclosure of any of the Confidential Information by any employees, representatives, or agents of RIDER or prevent the unauthorized use or disclosure of any Confidential Information by another party who gained the Confidential Information from Rider or his employees, representatives or agents in violation of this Agreement.

2.19    **RIDER Representations, Warranties and Covenants**. As an inducement to TEAM to enter into this Agreement, RIDER represents warrants and covenants to TEAM that:

(a)    RIDER is skilled, experienced, proficient and well trained in motorcycle riding and racing and possesses all licenses and/or certifications required for RIDER to carry out his obligations to TEAM under this Agreement. RIDER is familiar with and has knowledge of the risks, dangers, hazards and perils involved in performing mechanical and racing services at racing events on motorized vehicles.

(b)    RIDER has no contractual or other obligations of any kind that would prevent RIDER from performing any of his obligations under this Agreement.

(c)    RIDER has no physical or mental problems of any kind or nature that would hinder or prevent him from riding designated Motorcycles at a level capable of competing to win in any of the Racing Events as outlined in this Agreement, or that would hinder or prevent him from performing any of the other obligations under this Agreement. In the event RIDER determines that he has any such physical or mental problem, RIDER covenants to immediately notify TEAM orally, and if

Rider Initials _LS_ _FH_ _BH_

TEAM Initials _TC_

TLD000009

requested by TEAM, in writing. Such oral and/or written notice shall describe RIDER's physical and/or mental problem in sufficient detail, as required by TEAM.

3.     **TEAM Obligations.**

3.1    **Base Compensation**. In consideration for RIDER's services, TEAM shall compensate RIDER in the amounts and upon the conditions set forth in <u>Attachment "2"</u>. Distribution of compensation shall be as provided in <u>Attachment "2"</u>.

3.2    **Expense Reimbursement**. TEAM shall reimburse RIDER for expenses incurred as a result of participation in the Racing Events as provided in <u>Attachment "2"</u>.

3.3    **Motorcycle/Equipment Support**. TEAM shall provide, or cause the Team to provide, to RIDER the Motorcycles and equipment support as TEAM and RIDER deems necessary and appropriate for use in Racing Events practice and testing sessions.

3.4    **Incentive Compensation**. RIDER shall be entitled to bonuses in the amounts and upon the conditions set forth in <u>Attachment "3"</u>.

3.5    **Return of Equipment**. In no event shall TEAM be obligated to make any payment due to RIDER under the terms of this Agreement after the last Racing Event until all loaned designated Motorcycles and equipment have been returned in accordance with Section 2.13(b), and loaned parts and equipment, if any, have been returned in good working condition, except normal wear as determined by TEAM.

3.6    **Race Support**. TEAM shall provide, or cause the Team to provide, a mechanic to adequately maintain the Motorcycles for the Racing Events. TEAM shall provide, or cause the Team to provide, adequate equipment and spare parts support at the Racing Events. TEAM shall provide, or cause the Team to provide, at its cost and expense, to RIDER all Racing Apparel, Team Apparel, Hard Goods and Team support personnel necessary to perform RIDER's services under this Agreement, as reasonably determined by TEAM and/or the Team.

TEAM will enter Rider in all Scheduled Races and any Additional Events unless otherwise specified in this Agreement. TEAM will be paying for any entry fees if any regarding the Racing Events as per attachment "1"

4.     **Term and Termination.**

1.     **Term**. The term of this Agreement shall be for Two (2) year(s) and shall commence on October 1, 2019 and terminate on September 30, 2021, unless otherwise extended or terminated earlier as described herein. The Twenty Four (24) month period commencing on October 1, 2019 and terminating on September 30, 2021 shall be defined as the "Agreement Year(s)".

Rider Initials *LS  FH  BH*

TEAM Initials *TL*

Confidential                              Page 10                              8/1/19

TLD000010

At the end of the Two (2) years term, the TEAM benefit from an option to extend the agreement for one more year. Such option will have to be exercised in writing no later than 10 days after the last SX rounds or no later than May 5th 2021.

In the event this agreement is extended for a third year, the yearly base compensation will be determined upon the final classification of the Rider in the 2020 or 2021 AMA 250 Supercross Championship Series or the AMA National Championship Series as per attachment 2, in all case the minimum base compensation won't be less than $100,000.

1.1.   Rider agrees this Racing Agreement is 100% contingent upon Rider presenting himself to TLD on October 1, 2019 and October 1, 2020 in top physical condition ready to participate in testing and racing activities. Should Rider be in an injured state TLD in its sole discretion reserves the right to cancel their participation in this Racing Agreement in its entirety.

**-Subsequent Agreement and Right of First Refusal.** Upon the request of TEAM during the term of this Agreement, or such greater term as negotiated by the parties, RIDER and TEAM agree to negotiate in good faith for an additional one (1) year agreement, or such greater term as negotiated by the parties, prior to signing with any other team or another motorcycle manufacturer or distributor.

Furthermore, TEAM shall have a right of first refusal, during the term of this Agreement, to meet offer to RIDER, or to any other person or entity for the services of RIDER, ("Offer"), from another motorcycle manufacturer or distributor, or any other race team or organization for Riders services in the 250 Class, and to enter into an agreement with RIDER, or with any such other person or entity, on terms and conditions similar to those offered. RIDER shall notify TEAM in writing of the Offer, and shall provide a copy of the written Offer to TEAM. Thereafter, TEAM shall have ten (10) business days to better the competitors Offer, in which case TEAM and RIDER shall enter into another racing agreement on substantially the same terms as the Offer and the other terms and conditions of this Agreement.

4.3    **Termination for Breach.** TEAM may terminate this Agreement prior to its expiration date effective immediately upon delivery of written notice to RIDER for any of the following reasons:

(a)    Breach by RIDER of any of the material terms of this Agreement in TEAM's sole discretion and reasonable judgment, including without limitation the refusal or failure by RIDER to perform the services required in this Agreement. RIDER is to be provided with written notification and a thirty (30) day right to cure any such alleged breach that is deemed curable based upon a standard of reasonableness.

(b)    RIDER being convicted of involvement in any felony, crime or violation of any law of the United States or any state, except for traffic infractions.

Rider Initials *LS FH BM*

TEAM Initials *TL*

TLD000011

(c) RIDER's engagement in any act or conduct, whether or not a crime, which in TEAM's sole discretion and reasonable judgment, may in any significant way injure or adversely reflect on the name, goodwill, or the reputation of TEAM, its affiliated or related companies, its/their insignias, logos, trademarks, trade names, or service marks or those of the Team.

(e)    Special Termination Rights of TEAM.

PERFORMANCE: If, for an aggregate or consecutive period of four (4) months or more during the Term, Athlete does not train and/or compete at a first class level acceptable to TEAM, KTM, Or Red Bull, TEAM, KTM, Or Red Bull shall have the right, in TEAM's, KTM, or Red Bull's, sole and absolute discretion, to terminate this Agreement upon delivery of written notice to Athlete. TEAM shall be required to provide advance written notice to RIDER of its concern about his performance spelling out the basis for alleging that RIDER is not meeting the standard of "first class level" and to provide RIDER with the opportunity to meet certain specifically determined, reasonable standards prior to any such early termination.

4.4    **Injury Defined; Fitness to Compete**. RIDER agrees that in the event of injury to the RIDER, the provisions set forth below in this Paragraph will apply. In this paragraph, the term "injury" means any act or acts affecting RIDER that incapacitates or disables RIDER physically or mentally and restricts RIDER from competing (i) under the terms of this Agreement, (ii) at the skill level of the RIDER as generally recognized by the parties when they entered into this Agreement; and (iii) at the RIDER's same level of performance prior to the injury. If multiple injuries exist, such injuries will be characterized as a collective single injury for purposes of this Agreement. Under this definition, the term, "injury" also applies to illnesses of RIDER, including without limitation, any disease, hereditary disorder, or sickness resulting from any cause. If, in the reasonable determination of TEAM, RIDER has sustained an injury, TEAM may request and RIDER agrees to submit to, an appropriate examination(s) by a qualified physician at the recommendations of TEAM, at TEAM's expense; and that physician shall make the determination as to the extent of RIDER's injury and when he can reasonably resume competing or performing any of the obligations in this Agreement. TEAM reserves the right to make the final decision in good faith and in its reasonable and objective determination, which shall include consultation with the examining physician, regarding the RIDER's fitness to compete and perform.

During RIDER's rehabilitation period (which extends from date of injury to date RIDER resumes competition in Scheduled Events) RIDER agrees to use his best efforts to rehabilitate any injury, which may include following proscribed training guidelines recommended or imposed by TEAM. Subject to Attachment "1" of this Agreement, to the extent that RIDER fails to meet the following number of regular Scheduled or Non-Scheduled Events due to injury occurring in or as a result of (i) participation in Scheduled Events or related TEAM pre-event testing activities or (ii) participation in approved Non-Scheduled Events or related TEAM pre-event activities, RIDER's annual base compensation remaining to be paid in that particular contract year may be reduced as follows:

Rider Initials *LS FH BH*

TEAM Initials *TL*

TLD000012

| No. of Events Missed | % Compensation Deduction |
|---|---|
| 7 – 10 | 10% |
| 11 – 14 | 37% |
| 15 or above | 50% |

5.   **Returning to Testing and Racing Activities**.  RIDER must be cleared to resume test obligations and participate in Scheduled or Non- Scheduled Events by a qualified physician designated by TEAM.

4.6   **Consequences of Termination**.  Effective immediately upon termination of this Agreement, TEAM and Rider shall be released from all obligations under this Agreement that have not yet accrued as of the date of termination, including, without limitation, all payment obligations.  During the period of any notice of termination, if any, RIDER shall observe and faithfully perform all of RIDER's obligations under this Agreement.

4.7   **RIDER's Right to Terminate Agreement**.  RIDER shall have the right to terminate this Agreement upon thirty (30) days prior written notice to TEAM only if one of the following occurs:

(a)    TEAM is adjudicated as insolvent or declares bankruptcy; or,

(b)    TEAM fails to pay RIDER any amounts owing under this Agreement, or fails to notify RIDER that it is disputing any amount that RIDER claims is owing under this Agreement, within thirty (30) days following TEAM's receipt of written notice from RIDER that any such amount is past due.

5.   **Release, Covenant, Waiver and Indemnity**.

5.1   **General Release**.  RIDER and TEAM do hereby, on behalf of themselves, their heirs, executors, administrators, legal representatives, successors and assigns:

(a)    Each irrevocably, reciprocally, and unconditionally releases and discharges the other, their affiliated and related companies, the Team, the Sponsors, its/their predecessors, successors, assigns, and the directors, officers, employees, agents and representatives of each of them, and all persons acting by, through, under or in concert with any of them (collectively, "Released Parties");

(b) From and against any and all claims, causes of action, damages, demands, liens, rights, controversies, losses, costs and expenses (including without limitation attorneys' fees and costs), or charges of whatsoever nature, whether known or unknown, developed or undeveloped, suspected or unsuspected, fixed or contingent, past, present or future, including without limitation wrongful death, any and all personal injuries, and injuries to property, real or personal, whether or not liability is alleged to arise from **PRODUCT DEFECT, NEGLIGENCE, FAILURE TO WARN, FAILURE TO INSTRUCT, FAILURE TO CONSTRUCT PROPERLY, FAILURE TO KEEP SAFE, FAILURE TO MAINTAIN OR OTHER TORTIOUS CONDUCT** of Released Parties, or any of them, ("Claim" or "Claims"); and

Rider Initials _LS_ _BH_ _BH_

TEAM Initials _TK_

TLD000013

(c) Arising from any cause or reason whatsoever, including without limitation (i) out of RIDER's activities or association with any of the Released Parties, (ii) out of RIDER's use, operation or control of or any association with any designated Motorcycles or products, or any other vehicles or products made available to RIDER in connection with RIDER's services under this Agreement, prior to or during the term of this Agreement, or while said vehicles or products are in RIDER's possession or under his control, or (iii) out of any activity contemplated under this Agreement.

2.    **Covenant not to Sue**.  Further, RIDER agrees to never institute any action or any suit at law or in equity against Released Parties, nor institute, or prosecute or in any way aid in the institution or prosecution of any Claim, whether or not liability is alleged to arise from **PRODUCT DEFECT, NEGLIGENCE, FAILURE TO WARN, FAILURE TO INSTRUCT, FAILURE TO CONSTRUCT PROPERLY, FAILURE TO KEEP SAFE, FAILURE TO MAINTAIN OR OTHER TORTIOUS CONDUCT** of Released Parties, or any of them, for damages, costs, loss of service, expenses (including without limitation attorneys' fees and costs) or compensation for or on account of any damage, loss or injury either to person (**including death and bodily injury**) or property, or both, whether known or unknown, developed or undeveloped, suspected or unsuspected, fixed or contingent, past, present or future, arising from any cause or reason whatsoever, including without limitation (a) out of RIDER's activities or association with any of the Released Parties, (b) out of RIDER's use, operation or control of or any association with any designated Motorcycles or products, or any other vehicles or products made available to RIDER in connection with RIDER's services under this Agreement, prior to or during the term of this Agreement, or while said vehicles or products made available by TEAM to RIDER are in RIDER's possession or under his control.

5.3    **Release of Unknown or Unanticipated Claims**.  RIDER further agrees and acknowledges that there is a risk that subsequent to the execution of this Agreement, he will discover, incur or suffer Claims which were unknown or unanticipated at the time of execution, including without limitation, unknown or unanticipated Claims arising from any cause or reason whatsoever, including without limitation (a) out of RIDER's activities or association with any of the Released Parties, (b) out of RIDER's use, operation or control of or any association with any designated motorcycles or products, or any other vehicles or products made available to RIDER in connection with RIDER's services under this Agreement, prior
to or during the term of this Agreement, or while said vehicles or products are in RIDER's possession or under his control, which if known by RIDER on the date of execution of this Agreement may have materially affected his decision to agree to this release.

5.4    **Waiver of California Civil Code § 1542**.  RIDER acknowledges and agrees that by reason of the release contained above, he is assuming all risk of bodily injury, death or property damage, and all other unknown and unanticipated Claims and agrees that his release of Released Parties applies thereto.  RIDER expressly waives whatever benefits he may have under Section 1542 of the California Civil Code, which reads as follows:

Rider Initials _LJ_ _FH_ _BJ_

TEAM Initials _____

TLD000014

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Thus, notwithstanding the provisions of California Civil Code Section 1542, and for the purpose of implementing a full and complete release and discharge of the Released Parties, RIDER expressly acknowledges that this release is intended to include in its effect, without limitation, all Claims which RIDER does not know or suspect to exist in RIDER's favor at the time of execution of this Agreement, and that this release contemplates the extinguishment of any such Claim or Claims.

5. **Indemnity**. RIDER does hereby agree to indemnify, defend and hold the Released Parties harmless from and against any and all claims, causes of action, demands, liens, rights, controversies, losses, costs and expenses, including without limitation attorneys' fees and costs, wrongful death, any and all personal injuries, and injuries to property, real or personal, whether or not liability is alleged to arise from **PRODUCT DEFECT, NEGLIGENCE, FAILURE TO WARN, FAILURE TO INSTRUCT, FAILURE TO CONSTRUCT PROPERLY, FAILURE TO KEEP SAFE, FAILURE TO MAINTAIN OR OTHER TORTIOUS CONDUCT** arising from any cause or reason whatsoever, including without limitation (a) out of RIDER's activities or association with any of the Released Parties, (b) out of RIDER's use, operation or control of or any association with any designated Motorcycles or products, or any other vehicles or products made available to RIDER in connection with RIDER's services under this Agreement, prior to or during the term of this Agreement, or while said vehicles or products are in RIDER's possession or under his control, or (c) out of any activity contemplated under this Agreement.

6. **Breadth of Release, Covenant, Waiver and Indemnity**. RIDER expressly agrees that the above General Release, Covenant, Waiver and Indemnity are intended to be as broad and inclusive as permitted by applicable law and that if any portion of it is held invalid, then the balance shall nevertheless continue in full legal force and effect to the greatest extent permitted by law.

7. **Assumption of Risk**. RIDER represents and warrants, and TEAM relies upon such representations and warranties, that RIDER, his employees, agents and representatives, are familiar with and have knowledge of the risks, dangers, hazards and perils involved in performing mechanical and racing activities and services at racing events on motorized vehicles. RIDER hereby fully assumes any and all responsibilities and liabilities for such risks, including without limitation, performing mechanical services on any racing or other vehicles during practice, in competition, during testing procedures, while in the racing or working areas, the infield, or any other place on, in or about the various locations where said vehicles will be raced or ridden, or during the transportation of said vehicles to and from the said locations, regardless of the causes therefore. **RIDER VOLUNTARILY ELECTS TO ACCEPT ALL RISKS** arising from any cause or reason whatsoever, including without limitation (a) out of RIDER's activities or association with any of the Released Parties, (b) out of RIDER's use, operation or control of or any association with

Rider Initials _____

TEAM Initials _____

TLD000015

any designated Motorcycles or products, or any other vehicles or products made available to RIDER in connection with RIDER's services under this Agreement, prior to or during the term of this Agreement, or while said vehicles or products are in RIDER's possession or under his control, or (c) out of any activity contemplated under this Agreement.

6.  **Independent Contractor Status**.

RIDER is an independent contractor, and RIDER shall enter all of the Racing Events as an independent RIDER sponsored as set forth on **Attachment "1"**. TEAM shall have no control over the manner in which RIDER performs the services he renders under this Agreement, provided that his conduct conforms to the standards of good sportsmanship, as described in Section 2.6 above. Nothing contained in this Agreement shall be deemed or construed to create the relationship of principal and agent, and RIDER shall not hold himself out as an agent or employee of TEAM or any of TEAM's affiliated or related companies. Neither this Agreement, nor any other actions by RIDER or TEAM, shall be deemed to create any joint venture, agency or other relationship between RIDER and TEAM, except for an independent contractor relationship. RIDER shall not have authority to make commitments or agreements for or on behalf of, or to in any way bind or obligate TEAM or any of its affiliated or related companies. As an independent contractor, RIDER is self-employed, and is not an employee of TEAM. As such, RIDER is not eligible to participate in or benefit from TEAM's industrial accident group, disability, or other insurance, nor TEAM's worker's compensation insurance, whether or not injured while working on a TEAM project and/or on TEAM property. Neither RIDER, his employees, agents nor representatives are entitled to any benefits provided by TEAM to TEAM employees. TEAM does not provide medical, surgical, hospital or emergency room care or insurance or related payment assistance on behalf of any independent contractor. It is RIDER's responsibility to obtain any and all such medical coverage or insurance, and it is RIDER's responsibility to pay for same.

7.  **Miscellaneous**.

1.  **Inadequacy of Money Damages**. RIDER acknowledges that services performed under this Agreement by RIDER are of a special, unique and extraordinary character, and that they have peculiar value, for the loss of which TEAM could not be reasonably or adequately compensated in money damages. Therefore, TEAM may seek to enjoin the actions of RIDER if and when necessary.

2.  **Arbitration**. Any controversy or claim between the parties arising out of or relating to this Agreement, or a breach of this Agreement, which cannot be resolved by mutual agreement, shall be settled by binding arbitration conducted by a single arbitrator in accordance with the rules of the American Arbitration Association, and any judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. Any such arbitration shall be held in Orange County, California.

3.  **Partial Invalidity**. If any provision in this Agreement is held invalid or unenforceable, in whole or in part, the remainder of the provisions or enforceable parts of this Agreement shall not be affected, and shall be enforced to the fullest extent permitted by law.

Rider Initials _LS FH AH_

TEAM Initials

4.     **Non-Waiver**. The waiver by a party of the performance of any covenant, condition, obligation, representation, warranty or promise in this Agreement shall not invalidate this Agreement or be deemed a waiver by such party of any other covenant, condition, obligation, representation, warranty or promise. The waiver by any party of the time for performing any act or condition under this Agreement does not constitute a waiver of the act or condition itself.

7.5    **Notice**. Any written notice to be given by either party to the other may be effected by personal delivery, by facsimile, or by registered or certified mail, postage prepaid, return receipt requested, at the addresses or facsimile numbers noted on the signature page of this Agreement. Notices shall be deemed received (a) if personally delivered, upon date of delivery to the address of the person to receive such notice if delivered before 5:00 p.m., or otherwise on the business day following personal delivery; (b) if by facsimile, upon confirmation of receipt; or (c) if mailed, two (2) business days after deposit in the U.S. mail. For TEAM, notices shall be sent to the attention of TEAM's team manager.

7.6    **No Assignment; Successors in Interest**. RIDER or TEAM may not assign this Agreement or any obligation or right under this Agreement without the prior written consent of non-assigning party. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties.

7.7    **Enforcement Expenses**. In the event of any legal action or other proceeding between the parties arising out of this Agreement or the transactions contemplated in this Agreement, the prevailing party in such legal action or proceeding shall be entitled to have and recover from the other party all costs and expenses incurred in such action or proceeding, including reasonable attorneys' fees and costs.

7.8    **Counterparts; Facsimile Signatures**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures shall be binding upon receipt, and the parties agree to exchange original signatures within five (5) days of the facsimile transmission.

7.9    **Headings; Cross-References**. The headings and captions used in this Agreement are for convenience and ease of reference only and shall not be used to construe, interpret, expand or limit the terms of this Agreement. All cross-references in this Agreement, unless expressly directed to another agreement or document, shall refer to the provisions in this Agreement and shall not be deemed to be references to any other agreements or documents.

7.10   **Gender and Number**. As the context requires, as used in this Agreement, the masculine, feminine and neuter genders, and the singular and the plural, include one another.

7.11   **Advice of Counsel/Joint Drafting**. Each party has had the opportunity to have advice of legal counsel regarding this Agreement, and fully understands and accepts its terms. This

Rider Initials _LS AH BH_

TEAM Initials _TLC_

TLD000017

Agreement was fully negotiated and shall be deemed to have been jointly drafted by the parties.

7.12    **Survival of Provisions**.  The following provisions shall survive and continue after any termination of this Agreement: Section 2.12(d) (TEAM's Publicity Rights), Section 2.18 (Taxes), Section 2.19 (Confidentiality), and Section 5 (Release, Covenant, Waiver and Indemnity).

13.    **Law Governing; Venue**.  This Agreement shall be governed by, interpreted under and enforced in accordance with the laws of the State of California.  Any action brought to enforce or interpret this Agreement shall be filed in Orange County, California.

14.    **Entire Agreement; Amendments**.  This Agreement, including the Attachments (which are incorporated by reference) set forth the entire Agreement between the parties and supersede any and all other agreements, either oral or in writing, between the parties pertaining to the subject matter of this Agreement.  Each party to this Agreement acknowledges that no representations, inducement, promises, or agreements, oral or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied in this Agreement or in the attachments, and that no other agreement, statement, or promise not contained in this Agreement or in the aforementioned documents shall be valid or binding.  Any modification of this Agreement shall be effective only if it is in writing signed by both parties.

### Minors

15.    This AGREEMENT is intended to comply with all applicable state statutes where a minor enters into a contract and it is further the intention of the PARTIES that this contract cannot be disaffirmed on the ground of minority, or any time thereafter. Each of the PARTIES further agrees to take all actions necessary to have this Agreement approved by either: (i.) the superior court in which the minor resides, or (ii.) the applicable California court pursuant to Section 6750 et. seq. of the California Family Code.

16.    **AGENT** covenants and agrees to use his, her or its best efforts to ensure RIDER undertakes to sign a separate Rider Racing Agreement with COMPANY to the same terms and conditions, in his own name immediately after attaining majority.

Rider Initials  LS FM  BM

TEAM Initials  TLC

TLD000018

Execution. This Agreement shall not be binding upon RIDER until it is executed by RIDER, and shall not be binding upon TEAM until it is executed by a duly authorized corporate officer of TEAM.

**RIDER HAS READ THIS DOCUMENT. RIDER UNDERSTANDS IT CONTAINS A RELEASE OF ALL CLAIMS, INCLUDING KNOWN AND UNKNOWN CLAIMS. RIDER UNDERSTANDS THAT HE ASSUMES ALL RISKS INHERENT IN RIDING AND RACING MOTORCYCLES. RIDER VOLUNTARILY SIGNS HIS NAME EVIDENCING HIS ACCEPTANCE OF THE RELEASE, COVENANT NOT TO SUE, WAIVER AND INDEMNITY PROVISIONS CONTAINED IN THIS AGREEMENT.**

IN WITNESS WHEREOF, the parties have executed, or caused this Agreement to be executed by their duly authorized representative, as of the date last set forth below.

**Troy Lee Designs**                                    **RIDER Brian Moreau**

_____  8/20/20A        _____

Troy Lee, Team Owner          Date          Brian Moreau                    Date

Address for Notices:                        Address for Notices:

Tyler Keefe, Team Manager                   Brian Moreau
Troy Lee Designs                            La Courtille, 86190 Quincey, France
Address: 155 E Rincon, Corona, CA, 92879
Phone: 951-371-5219 EXT 266
Fax: 951-371-6080


**Troy Lee Designs**                                    **Legal Guardian (Lydia Strubhart)**

_____  8-20-A           _____

Tyler Keefe, Manager          Date          Legal Guardian (Lydia Strubhart)
                                            Date   2.08.19.

Address for Notices:                        Address for Notices:

Tyler Keefe, Team Manager                   Brian Moreau
Troy Lee Designs                            La Courtille, 86190 Quincey, France
Address: 155 E Rincon, Corona, CA, 92879
Phone: 951-371-5219 EXT 266
Fax: 951-371-6080


Rider Initials _LS_ _FH_ _BM_

TEAM Initials _TK_

## ATTACHMENT "1"

### RACING EVENTS

**TEAM Designated Race Team:**

 RIDER shall be obligated to follow the direction of Team management unless otherwise directed by TEAM.

**Scheduled Events:**

RIDER shall enter in the following races ("Scheduled Events") on behalf of TEAM and/or the Team(s), during the 2018-2019 Agreement Year(s).:

**2020-2021**
AMA 250 Supercross and Motocross


*\*These classes may change at the sole discretion of TEAM*

**Additional Events:**

Miscellaneous other races for promotional and/or testing purposes, as requested by TEAM, as further set forth in Section 2.2(b) of the Agreement.

**NOTE:** The Scheduled Events may change subject to the discretion of sanctioning bodies or the change of sanctioning bodies, and consequently the series in which RIDER will compete may also change, at TEAM's sole discretion. In addition, the Scheduled Events and Team designations for each Agreement Year will be finalized by TEAM, in its sole discretion, prior to the beginning of each Agreement Year.

Rider Initials *ES EM BM*

TEAM Initials

TLD000020

### ATTACHMENT "2"

#### BASE COMPENSATION AND EXPENSES

**2020-2021 Base Compensation:** 2020 Brian Moreau will receive a base salary of $65,000.00 TEAM shall pay RIDER as follows:

| Agreement Year | Annual Base Compensation | Distribution |
|---|---|---|
| 2020-2021 | $65,000<br>Sixty Five Thousand Dollars | Twenty Four (24) monthly payments of Five Thousand Four Hundred and Sixteen Dollars and Sixty Six Cents. (5,416.66). Paid at the beginning of each month starting October 1, 2019 |

**2020 Additional Help:** TLD will also give RIDER up to $15,000 in housing expense when needed. TLD will co-sign if rider would like to rent an apartment or rent a room from another resident. TEAM will provide a vehicle for the first year for RIDER to use Starting October 10th 2019 through September 30th 2020.

#### Additional Salary Increase

| 2020 Supercross OR Motocross Series Overall | 2021 Salary Increase |
|---|---|
| Base Salary, if Rider wins the 2020 250 SX or 250MX Championship, Base Compensation will be | $300,000 |
| Base Salary, If Rider finishes second overall in 2020 SX or MX Championship Base Compensation will be | $250,000 |
| Base Salary, If Rider finishes Third overall in 2020 SX or MX Championship Base Compensation will be | $200,000 |
| Base Salary, If Rider finishes Fourth overall in 2020 SX or MX Championship Base Compensation will be | $150,000 |
| Base Salary, If Rider finishes Fifth overall in 2020 SX or MX Championship Base Compensation will be | $125,000 |
| If Rider finishes with 3 podium finishes in SX or MX Rider Base Compensation will be | $110,000 |

Rider Initials _LJ EM BM_

TEAM Initials _TL_

TLD000021

### EXPENSES AND TRAVEL ARRANGEMENTS

#### Hotel/Motel/ Rental Car Accommodations Travel Allowance:

Team will pay rider $1,200.00 dollars per 2021 AMA Supercross or AMA Motocross racing event that Rider Participates at. For scheduled main races less than 250 miles distance from RIDER's residence, TLD will pay a flat fee of USD $500. RIDER shall submit a claim form for each race he attends. For the 2020 season, TEAM agrees to make arrangements for air and ground transportation and motel/hotel reservations to facilitate RIDER's participation in the Racing Events.

#### Payments:

All payments made by **check** shall be made payable to Rider and sent directly to:
Rider

Rider Initials _LS HH BH_

TEAM Initials _TL_

TLD000022

### ATTACHMENT "4"

#### MEDICAL RESPONSIBILITY

Any contract personnel or outside vendor, regardless of title or capacity, is an independent contractor. As such they are self-employed, not employees of TEAM, not eligible with the TEAM industrial accident group, nor with TEAM's workman's compensation, whether or not while working with a TEAM project and/or property. TEAM does not provide medical, surgical, hospital or emergency room care or insurance or related payment assistance on behalf of any independent contractor. It is the contractor's responsibility to secure any and all such medical coverage or insurance, and it is the contractor's responsibility for payment of same.

I have read the above statement. I understand that I am an independent, self-employed contractor and that any medical costs incurred by me are my own responsibility.

RIDER: BRIAN MOREAU          DATE: 04/08/19

Brian Moreau

Rider Initials *LS & pf ED*

TEAM Initials _____

TLD000023

## ATTACHMENT "3"

### INCENTIVE COMPENSATION

For 2020-2021 RIDER will receive a bonus for top Five (5) in 2020 and top Three (3) finishes in 2021 at each event in the AMA 250, West or East Supercross Series Championship or the AMA National Motocross Series Championship.

**2020-2021 Agreement Year(s):**

**2020 AMA 250 West or East Supercross and Motocross Championship Series**

| Supercross or Motocross Overall: | | |
|---|---|---|
| | 1st place | $30,000 |
| | 2nd place | $20,000 |
| | 3rd place | $10,000 |
| | 4th place | $2,500 |
| | 5th place | $2,000 |
| **Heat or Moto Win:** | | $3,000 |
| **Supercross Championship** | 1st place | $250,000 |
| | 2nd place | $100,000 |
| | 3rd place | $75,000 |

**2021 AMA 250 West or East Supercross and Motocross Championship Series**

| Supercross or Motocross Overall | | |
|---|---|---|
| | 1st place | $50,000 |
| | 2nd place | $25,000 |
| | 3rd place | $10,000 |
| **Heat or Moto Win:** | | $3,000 |
| **Supercross Championship** | 1st place | $350,000 |

Rider Initials  _L)  AY  BH._

TEAM Initials  _TK_

TLD000024