# EXHIBIT T

UNITED STATES DISCTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN MOREAU,
Plaintiff,

vs.

CASE NO. 8:22-CV-01925-TPB-CPT

FELD MOTOR SPORTS, INC., et al.,
Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT AMERICAN MOTORCYCLE
ASSOCIATION'S FIRST INTERROGATORIES**

Plaintiff BRIAN MOREAU, by and through its undersigned counsel, and pursuant to Fed. R. P. 33, hereby responds to Defendant AMERICAN MOTORCYCLE ASSOCIATION'S First Interrogatories served on August 19, 2024.

**INTRODUCTORY STATEMENT**

Plaintiff provides these responses based upon the information reasonably available to him at this time. His investigation is ongoing. Accordingly, Plaintiff reserves the right to modify, amend, or supplement these responses as additional information becomes available through discovery and/or further investigation.

By serving these responses, Plaintiff does not concede the relevance, materiality, or admissibility of any of the information described or suggested herein. Nor does Plaintiff waive: (a) any claim for privilege or work-product protection, (b) any objections to the discoverability or admissibility of documents, (c) any other exemptions from disclosure or discovery, or (d) any claims of confidentiality or any rights or obligations pursuant to any protective orders concerning the production of documents. These responses are not to be interpreted as a waiver of Plaintiff's right to object to any information as irrelevant or inadmissible in this action or any other action.

Exhibit
Exhibit No.: 41
Name:
Date: 10-7-24
ESQUIRE

## INTERROGATORIES

1. Identify with specificity each item of "noneconomic damages" as alleged in Paragraph 154 of the Third Amended Complaint, other than loss of income, benefits, or earning capacity, that you claim to have incurred as a result of the incident described in the Third Amended Complaint, giving for each item the date incurred, the name and business address to whom each was paid or is owed, and the goods or services for which each was incurred.

> **ANSWER:** Plaintiff seeks noneconomic damages to compensate him for his bodily injuries and the resulting pain and suffering, disability and physical impairment, mental anguish, emotional distress, inconvenience, and loss of capacity for the enjoyment of life, including but not limited to diminished life expectancy, the loss of the use of his legs, and shattered dreams for his future, experienced both in the past and to be experienced in the future, as a result of the catastrophic injuries sustained in the incident on February 15, 2020, as described in the Third Amended Complaint.
>
> These noneconomic damages began on February 15, 2020, the date of the incident, and are ongoing and lifelong. There are no specific goods, services, or payments made to third parties associated with these noneconomic damages, as they pertain to Plaintiff's subjective experiences of pain, loss, and suffering, which do not result in itemized charges.
>
> There is no exact standard for measuring such noneconomic damages. Rather, Plaintiff, through his counsel, intends to ask the jury to award an amount of past and future noneconomic damages that is fair and just in light of the evidence presented at trial, consistent with Florida law.

2. Identify with specificity each category or type of economic damages as well as monetary amount for which you seek recovery from the AMA as a result of the incident described in the Third Amended Complaint, including but not limited to the economic damages alleged in Paragraph 153 of the Third Amended Complaint.

> **ANSWER:** Plaintiff objects to this interrogatory to the extent that it seeks a premature disclosure of expert opinions regarding the category, type, and amount of certain economic damages, including but not limited to those related to Plaintiff's past and future medical, pharmacological, psychological, and psychiatric care and treatment, as well as life care planning.
>
> To the extent this interrogatory seeks information not subject to expert opinions, Plaintiff answers pursuant to Federal Rule of Civil Procedure 33(d) by directing the AMA to the following documents, which contain letters from two putative collateral source providers who have asserted claims for reimbursement for benefits previously paid on Plaintiff's behalf with respect to his medical treatment in the United States:
>
>> MOREAU04202-4203: Letter from Health Special Risk, Inc., on behalf of Ace American Insurance Company, asserting right to reimbursement for any benefits paid on Plaintiff's behalf under $50,000.00 policy with $1,000.00 deductible.

MOREAU04261-4262: Letter from Davies Life & Health Inc., on behalf of Petersen International Underwriters and Underwriters at Lloyd's, London, asserting right to reimbursement of $100,000.00 for benefits paid on Plaintiff's behalf.

Plaintiff further answers pursuant to Rule 33(d) by directing the AMA to the following documents showing the amounts he paid:

1. For the purchase of real estate where he built a new home to accommodate his disability, which was €35,078.00, as shown on the "Decompte Acquereur" (Purchaser Statement) attached hereto;

2. For the building permit for the new house, which was €1,080.00, as shown on the document sent by Imagerie 3d attached hereto;

3. For the construction of the new home, which he believes was approximately €238,000.00, the supporting records for which he is working to compile for production; and

4. For the "fourgonnette," a van with special hand controls to accommodate his disability, *see* Moreau Dep. Vol I at 261:25-262:10, which he purchased used for €23,000.00, which consisted of €3,000.00 in cash and an electronic transfer of €20,000.00 as shown on the attached document labeled "Chq Bq Sarl Tarif Distribu."

3. Are you seeking recovery from the AMA for any economic damages for past or future loss of income, past or future loss of benefits, or past or future loss of earning capacity as a result of the incident described in the Third Amended Complaint? If so, identify all such damages with specificity, stating the nature of the income, benefits, or earning capacity, and the amount and method that you used in computing the amount.

**ANSWER:** No, Plaintiff is not seeking to recover from the AMA economic damages for past or future loss of income, past or future loss of benefits, or past or future loss of earning capacity as a result of the incident described in the Third Amended Complaint.

4. Identify with as much specificity as possible each AMA employee, agent, and/or contractor, including any race staff and officials, who had the duty to "red flag" a practice session or race as alleged in Paragraph 138 of the Third Amended Complaint. To fully respond to this Interrogatory, please identify with specificity how each individual caused or contributed to the incident described in the Third Amended Complaint.

**ANSWER:** Plaintiff objects to this interrogatory to the extent that it seeks information exclusively within the knowledge and control of the AMA, its agents, employees, contractors, or the other defendants, particularly regarding the identities and specific duties

of individuals responsible for monitoring the section of the track where Plaintiff crashed and for deciding whether to "red flag" the practice. Discovery is ongoing, and Plaintiff reserves the right to supplement this response as additional information becomes available.

Based on the information currently available, the AMA's employees, agents, and/or contractors, including any race staff and officials, who were responsible for calling for or red-flagging the practice after Plaintiff's crash include the "Race Management Personnel" identified in the Sanctioning Agreement. These personnel included the AMA Supercross Manager, who was responsible for maintaining ultimate control over all race and floor operations; the AMA Race Director, who was responsible for supporting the AMA Supercross Manager; and the AMA Event Manager, who was responsible for certain race control functions from an operation booth with a clear view of the entire track.

At the Tampa event, it is believed that John Gallagher served as the AMA Race Director, Jeff Canfield served as the AMA Event Manager, and Mike Pelletier served as the AMA Supercross Manager. Additionally, track marshals and other officials with headsets on Channel 1 had the authority and responsibility to call for a red flag by communicating with the Race Director, Event Manager, and Supercross Manager. The identities of track marshals or other officials stationed near or assigned to monitor the section of the track where Plaintiff crashed, if any, remain unknown. There may also have been a Track Safety Supervisor or "eye in the sky" with similar authority and responsibility. All these individuals—who are collectively referred to as the **"AMA Officials"** hereinafter—shared the responsibility of stopping the practice for safety reasons, regardless of any specific medical request from the CMO or medics.

The AMA Officials were responsible for stopping the practice once Plaintiff crashed headfirst, was lying in the middle of the track in the path of oncoming riders, was unable to move his legs, and was unable to get up on his own. Their failure to "red flag" the practice prolonged Plaintiff's exposure to danger on the track, leading to a rushed and grossly inadequate medical response that delayed Plaintiff from receiving critical treatment, including any spinal precautions. Had the practice been stopped immediately, Plaintiff could have been stabilized on the track, preventing the exacerbation of his injuries caused by his rushed removal without any spinal precautions.

Common sense and event protocols dictated that the session should have been stopped given the nature and location of his crash, Plaintiff's vulnerable position lying in the middle of the track, the severity of his injuries, or his inability to get up or walk off the track even with assistance. This failure, coupled with apparent deficiencies in track monitoring, is underscored by subsequent media inquiries questioning "why no red flag" and why "Brian was quickly put on his feet" after his crash.

Plaintiff testified that after his crash, he was unable to move his legs and screamed about a potential spinal cord injury. The medics attending to Plaintiff, however, testified that he merely reported a generic "left leg injury" and nodded affirmatively when asked if he could get up and off the track. They further testified that they did not assess the nature and extent of the so-called "left leg injury" on the track, because they were all in danger and prioritized removing Plaintiff quickly from the track before conducting a more thorough assessment. However, a Tampa ambulance paramedic testified that he heard over the radio that

"somebody's down," that the injury was "legit," and that the racetrack needed to be stopped.

Regardless of these conflicting accounts, the AMA Officials had an independent duty to stop the practice for Plaintiff's safety, particularly as his condition visibly worsened throughout the rescue. This included the alarming sight of his legs dragging on the ground as he was being removed from the track and the medics having to manually lift each of his legs onto the medical mule. The AMA Officials' failure to take corrective action at any point during the rescue delayed critical medical care and directly contributed to the medics' rushed and grossly inadequate response, ultimately exacerbating Plaintiff's injuries.

Respectfully submitted,

By: /s/ Mark A. Schweikert
Mark A. Schweikert (FBN 70555)
mark@schweikertlaw.com
**SCHWEIKERT LAW PLLC**
1111 Brickell Avenue, Suite 1550
Miami, Florida 33131
Office: (305) 999-1906
Mobile: (305) 926-9452
*Lead Counsel for Plaintiff*

*and*

Maria A. Dominguez, Esq. (FBN 0510221)
m.dominguez@dmrpr.com
Juan C. Ramos-Rosado, Esq. (FBN 1002562)
j.ramos@dmrpr.com
Javier F. Micheo Marcial, Esq. (FBN 1009694)
j.micheo@dmrpr.com
**DMR LAW LLC**
1430 South Dixie Hwy., Suite 314
Coral Gables, FL 33146
Telephone: 305-548-8666

*and*

Jason B. Giller, Esq. (FBN 77441)
jason@gillerpa.com
**JASON B. GILLER, P.A.**
1111 Brickell Avenue, Suite 1550
Miami, Florida 33131
Telephone: (305) 999-1906

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2024, I served via email the foregoing document on counsel for all parties.

By: /s/ *Mark A. Schweikert*
Mark A. Schweikert (FBN 70555)



**Me Julien RENARD**   **Me Nicolas MARTINIERE**

*Notaires Associés*

Successeurs de Me Pascal RENARD et Me Jean BETTERMANN

## OFFICE M2R
### NOTAIRES & ASSOCIÉS

**Notaires Salariés**

Sophie RENARD
Charlotte DEVILLERS
Adélaïde JEANNEAU
Mike FOUET

**Pôles de compétence**

Négociation Immobilière

Expertise Immobilière

Droit Immobilier

Droit Commercial

Droit des Sociétés

Promotion Immobilière

Droit de la Famille

Droit des Personnes Publiques



NOTAIRE CONSEIL
DES PERSONNES PUBLIQUES



N° visio 23 95 405



l'évaluation immobilière notariale

Monsieur Brian MOREAU
lieu-dit La Courtille

86190 QUINCAY

Jaunay-Marigny, le 21 novembre 2022

Dossier suivi par
Amarylice BEGUE
amarylice.begue.86018@notaires.fr

VENTE MORAUD Ludivine / MOREAU Brian
1006127 /SR /AB /
Compte numéro : 19904

### DECOMPTE ACQUEREUR

| **PRIX D'ACQUISITION** | | 31 428,00€ |
|---|---|---|
| **Frais à ajouter** | | |
| - Frais d'acquisition* | 4 000,00€ | |
| - Frais de prêt | 0,00€ | |
| - Honoraires de l'agence | 0,00€ | |
| - Prorata d'impôt foncier (à première demande) | | |
| Total | 4 000,00€ | 35 428,00€ |
| **Sous déduction** | | |
| Frais de promesse de vente | 350,00€ | |
| Total | 350,00€ | 35 078,00€ |
| **SOLDE A VERSER PAR VIREMENT TROIS JOURS AVANT LA SIGNATURE** | | 35 078,00€ |

(*) L'état de frais vous sera adressé en même temps que le titre de propriété, après publication de l'acte au Service de la Publicité Foncière.
Merci de remettre un RIB signé au verso, pour le versement du solde créditeur si c'est le cas.

**Relevé d'Identité Bancaire**

| CSB ANGOULEME 3 RUE PIERRE LABACHOT CS 12222 16022 ANGOULEME CEDEX Site de JAUNAY-MARIGNY (86130), 5 Grand Rue | **Domiciliation :** CSB ANGOULEME | | | |
|---|---|---|---|---|
| | Code Banque | Code Guichet | N° de compte | Clé RIB |
| | 40031 | 00001 | 0000147335W | 64 |
| Cadre réservé au destinataire du relevé | **Identifiant Norme Internationale Bancaire (IBAN)** Règlement des honoraires par chèque accepté. | | | |
| | FR48 | 4003 1000 0100 | 0014 7335 | W64 |



2 Rue Raoul Mortier  
ZAE de Beauregard  
86190 VOUILLE  

Tél : 06-11-078-078  
Mail : Infopc@imagerie3d.com  
Site : www.imagerie3d.com  

MR MOREAU Brian  

La Courtille  
86 190 QUINCAY  

| FACTURE | DATE | REF. CLIENT | E — MAIL |
|---|---|---|---|
| 220850 | 25/08/2022 | 06 67 78 94 72 | bmoreau225@gmail.com |

| Réf : | Désignation | Qtés | Prix U. HT | Prix HT |
|---|---|---|---|---|
| ACP | Acompte sur la réalisation d'un dossier plans et permis de construire. Construction d'une maison d'habitation. <br><br> • Relevé topographique. <br> • Avants projets sommaires. <br><br> Suite au devis n° 202226. <br> Restant dû : 1080 € TTC. | 1 | 600,00 | 600,00 |

TVA Intracommunautaire n° FR01523880086.  
**En votre aimable règlement sous 10 jours.**  
**Pénalité de retard : 1,5 fois le taux légal.**  
IBAN: FR76 1027 8364 0300 0107 6290 111  
BIC : CMCIFR2A  

| | |
|---|---|
| TOTAL € HT | 600,00 |
| TVA € 20 % | 120,00 |
| TOTAL € TTC | 720,00 |

SARL au Capital de 30 000€ - RCS de Poitiers - SIRET n° 523880086 00021  
TVA acquittée sur encaissement. La facture est payée au comptant, aucun escompte ne sera consenti. Loi n° 92-442 du 21/12/82 :  
Toute somme payée en retard est susceptible de porter intérêt à un taux égal à une fois et demi le taux de l'intérêt légal.



|  | Date d'opération<br>03/02/2023 |  |
|---|---|---|
|  | Date d'analyse budgétaire<br>03/02/2023 | > |
| ? | Chèques | ✎ |
| ▤ | Annotation de la dépense | ✎ |

**Pointer l'opération**

    
Accueil   Comptes   Virements   Assurances   Plus

## **DECLARATION UNDER 28 U.S.C. § 1746(1)**

I, BRIAN MOREAU, declare under penalty of perjury under the laws of the United States of America that the answers in Plaintiff's Response to Defendant American Motorcycle Association's First Interrogatories previously served on September 18, 2024, are true and correct to the best of my knowledge, information, and belief, as well as the documents referenced therein, which I do not necessarily have personal knowledge of.

Executed on  October 16 , 2024.                              _____
                                                                                          BRIAN MOREAU