## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BRIAN MOREAU,

     Plaintiff,

v.                                                    CASE NO. 8:22-cv-01295-TPB-CPT

FELD MOTOR SPORTS, INC. *et al.*,

     Defendants.

_____/

## DEFENDANT AMA'S REPLY TO ITS MOTION FOR SUMMARY JUDGMENT

     Defendant American Motorcyclist Association ("AMA") hereby replies to Plaintiff's Response ("Response") [DE 318]) to AMA's Motion for Summary Judgment ("Motion" [DE 294]).

**I.  Because Plaintiff's Vicarious Liability Claim Against AMA is "Based *Solely* on the Conduct" of AMA Officials He Did Not Sue, It Fails as a Matter of Law.**

     Plaintiff failed to bring a direct claim against AMA's purported agents before the statute of limitation expired.[1] A principal cannot be held vicariously liable for the actions of its agent *unless and until* the agent is found to be directly liable. As the Florida Supreme Court observed in *Tsuji v. Fleet*, 366 So.3d 1020, 1032 (Fla. 2023):

> [B]ecause an alleged vicariously liable employer and its employee are in no sense joint tort-feasors, a party must establish an employee's liability in a vicarious liability action against the employer. If a party fails to do so, thus exonerating the employee, a principal cannot be held liable either.

Moreover, if the statute of limitations has expired on a direct claim against an alleged agent, a plaintiff necessarily cannot establish vicarious liability against the principal

---

[1] The statute of limitations for a negligence claim that accrued on February 15, 2020 is four years. Therefore, any claim expired more than a year ago and is now time-barred. § 95.11, *Fla. Stat.* (2020).

because a time-barred claim is an adjudication on the merits for *res judicata* purposes. *Buettner v. Cellular One*, 700 So.2d 48, 48 (Fla. 1st DCA 1997). Because Plaintiff cannot establish direct liability against AMA's alleged underlying agents due to his failure to timely sue them, he cannot now state a claim for vicarious liability against AMA.

Since its initial Motion to Dismiss, AMA has been trying to determine precisely whose conduct it is defending in this case. Plaintiff's Response finally clarified that he is suing AMA only for vicarious liability based *solely* on the conduct of its race officials: Supercross Manager ([Michael] Pelletier), Race Director (John Gallagher), and Event Manager (Jeff Canfield). Indeed, Plaintiff "stipulated" in his Response for the first time that he is not pursuing vicarious liability claims against AMA for the conduct of FMS or the Medic Rig Defendants. Response at 17-18.[2]

Plaintiff's problem now is that he failed to state, and thereby preserve, a claim against the agents for whose conduct he seeks to impose vicarious liability against AMA. Because he did not sue Pelletier, Gallagher, or Canfield before the statute of limitations expired, they have been adjudicated not liable in the eyes of the law. *Buettner*, 700 So.2d at 48. And because Plaintiff now admits that their conduct was the *sole* basis for his vicarious liability claim against AMA, he has failed to state a claim against AMA, and his suit against AMA is barred as a matter of law.

---

[2] Plaintiff has made this stipulation, and improperly raised his brand-new Inherently Dangerous Activities Doctrine theory of liability at the summary judgment stage, because he recognizes the agency theory he has consistently advanced to this stage is untenable. His attempt to salvage his case against AMA is not only procedurally improper at this late stage, but also fatally flawed as a matter of law. [*See* DE 316, §II(D)].

## II. Plaintiff Cannot Adduce Sufficient Evidence of "Culpable Conduct" As Would Sustain Punitive Damages.

Plaintiff cannot present one shred of admissible evidence that would support imposition of punitive damages against AMA. Plaintiff misleadingly cites the testimony of paramedic Lieutenant Marcus Williams, Jr. to claim he heard radio chatter to the effect of "Hey, somebody's down, 'stopped [sic] the race," and "it was legit." Response at §C. Williams actually testified that:

> I just don't remember the state or the nature of him. I – because with that – and then my – I feel like my mirror - my memory is error, because then – now, I – the memory, the – the – the radio traffic and everything about what happened, it wasn't – it's like 'Hey, we got somebody down,' and it was – it was legit. It wasn't just like, the – somebody. You know it was like, 'Hey, somebody's down,' stopped the race. It was a lot of things that accompanied that.

**Ex. 1**, Williams, 87:12-88:1. Williams subsequently admitted "I don't remember explicitly…" "it was just nothing. It was very just background noise, so to say…" "I don't remember exactly what was said…" and "I heard chatter. I don't remember exactly what I heard…." *Id.* at 108:11-110:2.[3]

Williams' testimony about an out-of-court statement made by a person he cannot identify, offered for the truth of the matter asserted, constitutes inadmissible hearsay that cannot be invoked to stave off summary judgment. *Lopez v. Ingram Micro, Inc.*, 1997 WL 401585 at *7 (S.D. Fla. Mar. 18, 1997) (statement by an unidentified

---

[3] Plaintiff further claims that "Dr. Kennedye also recalled radio chatter about stopping the track… but they 'try not to stop the event' because of the fans." *See* Response at n. 32. This is a decidedly loose summary of Dr. Kennedye's on-point testimony as his actual testimony was quite different: *See* **Ex. 2** Kennedye, 101:16-102:2. Plaintiff's claim that Dr. Kennedye heard radio chatter about stopping the race is equally untethered to his actual testimony that he could not specifically recall what was said. *Id* at 255:5-257:5. Regardless, the Medic Rig Defendants admitted that no red flag was requested. [DE 294-9 at No. 23].

third person to prove the truth of the matter asserted is inadmissible hearsay and cannot be considered on a motion for summary judgment.").[4] Moreover, such testimony is not the type of "clear and convincing" evidence of gross negligence necessary to sustain a punitive damages claim. *Valladares v. Bank of Am. Corp.*, 197 So.3d 1, 11-12 (Fla. 2016) (observing punitive damages are reserved for truly "culpable conduct" "equivalent to the conduct involved in criminal manslaughter."); *Cleveland Clinic Fla. Health v. Oriolo*, 357 So. 3d 703, 706 (Fla. 4th DCA 2023) ( "[a]llegations of misfeasance or malfeasance … cannot without more be converted into a claim for punitive damages simply by labelling them as 'grossly' negligent.").

Finally, a jury could not reasonably conclude that AMA's alleged failure *after-the-fact* to investigate the incident or determine whether protocols were followed to prevent similar incidents constitutes knowing ratification or condoning of the alleged negligence. *See* Response at 20. "[A]ctions taken after the happening of a tortious act are not admissible on the issue of punitive damages, nor can those subsequent actions form the basis for bringing such a damage claim." *Oriolo*, 357 So.3d at 707. Because "after the fact evidence" is the only support Plaintiff proffers to establish ratification by AMA, Plaintiff's punitive damages claim fails as a matter of law. *Id.*

## III.  The Use of Yellow Flags and Other Safety Precautions In Lieu of a Red Flag is a Risk Inherent to Supercross That Plaintiff Waived or Assumed.

---

[4] Juxtaposed to Williams' confused and jumbled testimony is the fact that *the medical personnel actually attending to Plaintiff have admitted that they knew they could request a red flag, **but did not do so***. **Ex. 3** Metiva, 89:10-13; 114:25-115:7; 126:11-16; 196:18-197:8; **Ex. 4** Combs, 105:16-22; **Ex. 5** Bodnar, 90:7-91:20; 172:11-25; **Ex. 2**, 137:21-140:16. Nothing otherwise suggested the need for a red flag. [DE 294 at 24].

Plaintiff argues that even if the releases are enforceable, (1) according to *Ashcroft v. Calder*, 492 So.2d1309, 1311 (Fla. 1986), "express assumption of risk waives only risks inherent in the sport itself;" and (2) a fact dispute exists concerning whether the "specific risks" encountered were inherent or extrinsic to the sport. Response at 15. First, Plaintiff's assertion that, under *Ashcroft*, express assumption of risk bars solely risks inherent in the sport, *applies only to noncontractual assumption of risk and not to written releases.* Florida law enforces releases, and the contractual releases ratified by Plaintiff are broad and cover all the conduct alleged. [DE 294 at § I; DE 294-4, 5, and 6].

Second, cases cited by Plaintiff suggesting that stopping for an emergency during an untimed practice is "extrinsic" to Supercross, do not apply here. Response at 16. Two of the cases, *Del Santo* and *Zavaras*, address the failure of a race organizer to throw *any flag at all* when a rider falls on the track. In stark contrast, five yellow flags were displayed immediately after Plaintiff's crash. [*See* DE 294 at 24]. Plaintiff's reliance on *Hass* and *Classen* for the failure to provide sufficient medical care at sporting events (a marathon and boxing match, respectively) is equally misplaced, because Plaintiff stipulates AMA is not vicariously liable for the Medic Rig Defendants.

Third, Plaintiff's claim that he did know or "accept the risk" that AMA officials would not display a red flag – versus the five yellow flags *immediately* displayed in addition to other on-track safety measures – does not prevent summary judgment regarding whether his releases were effective or that he assumed this risk (yellow flags over red) as simply part of racing. Plaintiff *knew* that the "sport of Supercross was

inherently dangerous and that he could crash and get hurt." [DE 294 at 16, n. 25].[5]
Whether Plaintiff, a professional motocross racer, could have precisely foreseen that
only yellow flags (versus red flags) would be displayed when he crashed does not mean
that such alleged negligence was unforeseeable to Plaintiff or extrinsic to the risks of
racing. *See, e.g.*, *Pruett v. Am. Motorcycle Ass'n*, 1995 WL 302426, at *1 (7th Cir. May
17, 1995) (sustaining summary judgment against injured motorcycle racer who
claimed racing officials inadequately administered "warnings to participants in the
race that another racer ha[d] fallen," because "experienced motorcycle racers should
be aware of the risks attendant to the sport of motorcycle racing").[6]

Finally, AMA's alleged failure to stop the race instead of yellow flagging did
not violate a duty to red flag the race because no such duty exists in Supercross as a
matter of law. In *Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1084 (Cal.
Ct. App. 2011), relied on here by Plaintiff, the court found that the track operator's
failure to display *any warning flag* when the plaintiff fell on a motocross track and was
subsequently hit by other riders was a breach of duty and not within the scope of the

---

[5] As discussed in the Motion at 10, n. 7, Florida law imputes to Plaintiff the knowledge of the releases
he signed, including the risks described therein because he was willfully ignorant by signing them
without reading or asking for anyone's assistance. Plaintiff relies on *Frankenmuth Mut. Ins. Co. v.
Magaha*, 769 So.2d 1012, 1022 (Fla. 2000), to assert that the "doctrine of constructive knowledge does
not apply to bring about ratification." Response at 11. But *Frankenmuth* makes that statement only in
the context of a principal who ratified the unauthorized act of its agent. In contrast, a principal who
was "willfully ignorant or purposefully refrained from seeking information," will suffice to
demonstrate knowledge of the agent's unauthorized act. *Id.*

[6] *Pruiett* observed further: "because of his experience as a racer, he expects adequate medical care
facilities and safety precautions at every race. Likewise, he should expect that negligence on the part
of the organizers of a motorcycle race regarding the medical care facilities and safety precautions
provided could result in a serious injury to anyone who participated in that race." *Pruett*, 1995 WL
302426 at *3.

PD.49644410.1

plaintiff's assumption of risk. Applying the assumption of risk doctrine to motocross, the court evaluated the "fundamental nature of the sport" and sought to determine whether the duty that plaintiff sought to impose "would [impermissibly] require that an integral part of the sport be abandoned, or would discourage vigorous participation in sporting events." *Id.* at 1082-83 The court found that "a warning system such as caution flaggers, would not alter the sport, because it would not prevent riders from jumping and traveling at high speeds; rather, it would provide the riders with information [to] alter their course as necessary" and "assist in minimizing the risk of riders colliding…." *Id.* at 1084-85.

Unlike in *Rosencrans*, where officials threw no flags whatsoever, AMA fulfilled *its only duty* to control the track when five yellow flags were immediately displayed, warning riders of the "serious hazard" and to proceed with "extreme caution." [DE 294 at 24]. Nothing more was required. Plaintiff's insistence that AMA immediately throw a red flag any time a fallen rider *might* require assistance exiting the track would fundamentally alter the sport of Supercross because the races would be halted so often they effectively could not be run.[7] Imposing such a new and onerous duty would impermissibly "require that an integral part of the sport be abandoned, or would discourage vigorous participation." *Rosencrans*, 192 Cal. App. 4th at 1082-83.

---

[7] In his Motion for Partial Summary Judgment, Plaintiff contends that "the danger can be mitigated only by using special precautions, such as stopping the racetrack [when a rider falls] to ensure a careful medical intervention as opposed to a rapid extraction." [DE 299 at 14]. But stopping a race every time a rider falls and cannot immediately get off the track would impermissibly alter the sport of Supercross, because riders fall frequently during practices and races – on average 100 times each day of Supercross practice and racing. **Ex. 6** Pelletier Declaration.

PD.49644410.1

Dated: May 29, 2025

/s/ Michael S. Hooker
Michael S. Hooker  |  FBN 0330655 (LEAD)
A. Brian Albritton  |  FBN 777773
Caroline Catchpole Spradlin  |  FBN 1003631
**PHELPS DUNBAR LLP**
100 South Ashley Drive, Suite 2000
Tampa, FL  33602-5311
Phone:  813-472-7550; Fax:  813-472-7570
E-mail:  michael.hooker@phelps.com
brian.albritton@phelps.com
caroline.spradlin@phelps.com
**COUNSEL FOR AMERICAN MOTORCYCLE ASSOCIATION**

## CERTIFICATE OF SERVICE

We hereby certify that on May 29, 2025, we electronically filed the foregoing using the Court's CM/ECF system, thereby serving all registered users in this case.

/s/ Michael S. Hooker

PD.49644410.1