## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BRIAN MOREAU,

     Plaintiff,

v.                                 CASE No. 8:22-cv-01295-TPB-CPT

FELD MOTOR SPORTS, INC. *et al.*,

     Defendants.

_____/

## DEFENDANT FELD MOTOR SPORTS, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's June 6, 2025 Endorsed Order, Defendant Feld Motor Sports, Inc. ("FMS") submits this supplemental brief to address "Plaintiff's arguments in opposition to summary judgment concerning the applicability of § 549.09, F.S. to the waivers at issue in this case."  ECF No. 337.

## I.    Section 549.09 Does Not Preclude Moreau's Waiver of All His Pending Claims Against the Defendants in the Release

At common law in Florida, releases may waive claims for negligence (gross or otherwise) and vicarious liability.  Section 549.09 did not alter these common law rules.  Accordingly, Moreau's claim is barred by the FMS Release and the Court should enter summary judgment in favor of Defendants on Plaintiff's claims.

### A.    Section 549.09 Does Not Preclude Moreau's Waiver of His Pending Claims for Gross Negligence Against The Medic Rig Defendants in the Release

Under Florida law, "[w]hether a statutory remedy is exclusive or merely cumulative depends upon the legislative intent as manifested in the language of the statute." *Thornber v. City of Ft. Walton Beach*, 568 So. 2d 914, 918 (Fla. 1990).

"[A] statute enacted in derogation of the common law must be strictly construed and . . .even where the Legislature acts in a particular area, the common law remains in effect in that area unless the statute specifically says otherwise." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077–78 (Fla. 2001). "The presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard." *Thornber*, 568 So. 2d at 918 (citations omitted). "Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law." *Id.* (citations omitted).

At common, exculpatory clauses which release a party from gross negligence "are valid and enforceable when clear and unequivocal." *Theis v. J & J Racing Promotions*, 571 So. 2d 92, 94 (Fla. 2d DCA 1990) *rev. denied*, 581 So. 2d 168 (Fla. 1991) (citations omitted); *Borden v. Phillips*, 752 So. 2d 69, 73 (Fla. 1st DCA 2000) (same). The Legislature acted against this backdrop when it passed § 549.09.

Section 549.09 is silent on whether it was intended as the exclusive path for releases in the context of motorsports such that it displaced the common law. Relevant here, the statute provides:

> Any person who operates a closed-course motorsport facility may require, as a condition of admission to any nonspectator part of such facility, the signing of a liability release form. The persons or entities owning, leasing, or operating the facility or sponsoring or sanctioning the motorsport event shall not be liable to a nonspectator or her or his heirs, representative, or assigns for negligence which proximately causes injury or property damage to the nonspectator within a nonspectator area during the period of time covered by the release.

Fla. Stat. § 549.09(2). "Negligence" in this context "means all forms of negligence, whether misfeasance or nonfeasance, and failure to warn against an existing or future dangerous condition, but does not include gross negligence, recklessness, or willful and wanton conduct. *Id.* § 549.09(1)(e).

Nothing in the statute "unequivocally states" that § 549.09 was intended to displace the common law rule. *Thornber*, 568 So. 2d at 918. Nor does anything in the Act by which § 549.09 was passed. *See* Ch. 91-104, 1991 Fla. Laws. Without such an express statement, the common law rule persists. *See Peninsular Supply Co. v. C.B. Day Realty of Fla., Inc.*, 423 So. 2d 500, 502 (Fla. 3d DCA 1982) ("Abrogations by implication are not favored.") (citing *Tamiami Trail Tours, Inc. v. City of Tampa*, 31 So. 2d 468 (Fla. 1947)). And, under the common law, Moreau waived all claims for negligence, gross or simple, when he signed the FMS release.

Displacing the common law in this area would come with perverse results. If § 549.09 invalidates any release subject to its terms as to claims for gross negligence, contrary to the common law, then every release within its purview carries with it an implied exception for gross negligence claims. That exception would apply regardless of the contracting parties' intent and could be invoked merely by pleading gross, rather than simple, negligence. But this unexpected outcome would only apply to releases that fall under § 549.09. A release in *any* other context, no matter the risks inherent in the activity, would not be subject to this carveout. Such a result would wreak havoc on the settled expectations of Florida's entertainment and tourism industries.

**B.    Section 549.09 Does Not Preclude Moreau's Waiver of Vicarious Liability Claims Against FMS in the Release**

Even if this Court disagrees with that statutory interpretation, the FMS Release is still enforceable as to Plaintiff's remaining theory of vicarious liability brought against FMS. That is true irrespective of whatever direct claims of (gross) negligence Moreau has pleaded as to the Medic Rig Defendants.

Two Florida courts have held that a waiver of liability that is authorized under the statute may not waive claims for gross negligence. *See MacGregor v. Daytona Int'l Speedway, LLC*, 263 So. 3d 151 (Fla. 5th DCA 2019); *Hager v. Live Nation Motor Sports, Inc.*, 665 F. Supp. 2d 1290, 1294 (S.D. Fla. 2009). And that exclusion, as explained above, runs contrary to the common law rule that exculpatory clauses which release a party from gross negligence "are valid and enforceable when clear and unequivocal." *Theis*, 571 So. 2d at 94.

But § 549.09 permits the release of indirect claims regardless of this specific limitation on the types of negligence claims that may be released. The common law in Florida allows a party to contractually waive claims of vicarious liability. *See, e.g.*, *Schauenberg v. Key West Tours, Inc.*, 2009 WL 10667453, at **1, 4–5 (S.D. Fla. Aug. 6, 2009) (granting summary judgment on vicarious liability to defendant jet ski rental service operator based on contractual release); *Altman v. Pakh*, 2011 WL 10944742, at **1, 5 (Fla. 15th Cir. Ct. Dec. 2, 2011) (granting summary judgment to defendants, a hockey league and league officials, on negligence, gross negligence, and vicarious liability claims where plaintiff signed broad contractual release as a condition of joining hockey league). Section 549.09

4

says nothing about vicarious liability or indirect claims at all that might upset this background rule.  Absent a clear statement otherwise, "the common law remains in effect." *Morsani*, 790 So. 2d at 1077–78.

Moreover, the limitation on waivers for gross negligence in § 549.09 may coexist with the release of liability for vicarious liability.  A direct claim of negligence (in whatever form) is legally distinct from the concept of vicarious liability because a "**vicariously liable party has not breached any duty to the plaintiff**; its liability is based solely on the legal imputation of responsibility for another party's tortious acts." *Dabasse v. Reyes*, 963 So. 2d 288, 291 (Fla. 2d DCA 2007) (citation omitted and emphasis added).[1]  The doctrine of vicarious liability thus "takes a party that is free of legal fault and visits upon that party the negligence of another." *Prager v. FMS Bonds, Inc.*, 2010 WL 2950065, at *9 (S.D. Fla. July 26, 2010) (citation omitted).  Where the distinction between negligence and gross negligence is one of degree, the distinction between negligence (gross or otherwise) and vicarious liability is one of kind.  Because of this distinction, the statutory scheme for a Motorsport nonspectator liability release does not conflict with the common law rule that vicarious liability may be released.

---

[1] In explaining the "very different concepts of direct and vicarious liability," the Eleventh Circuit has likewise explained that, "[u]nlike a party that is directly liable for a tort, a party that is vicariously liable 'has not committed any breach of duty to the plaintiff but is held liable simply as a matter of legal imputation of responsibility for another's tortious acts.'" *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) (quoting Restatement (Third) of Torts: Apportionment Liab. § 13 cmt. b (2000)).  The Eleventh Circuit in that case also discussed how "[a] plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both," and how that decision may lead to different results. *Id.* at 1170.

Taken together, § 549.09 allows FMS to require that Plaintiff execute a waiver for direct claims of liability against it, while the common law equally allows indirect claims to be released in contractual waivers—just as Plaintiff did here in the FMS Release.  *See* Ex. 1, FMS Release.  Before he ever set foot in the stadium as a credentialed, professional motorcycle rider, Plaintiff unconditionally released, waived, and discharged FMS of "ALL LIABILITY" and for "ANY CLAIM OR DEMAND ON ACCOUNT OF DEATH OR INJURY TO PERSON OR PROPERTY, ARISING OUT OF OR RELATED TO ANY EVENT, WHETHER CAUSED IN WHOLE OR IN PART, BY THE SOLE OR CONCURRENT NEGLIGENCE OF THE RELEASEES OR OTHERWISE."[2]  *Id.*, ¶ 3.  In the AMA Release, Plaintiff again released, waived, discharged, and covenanted not to sue the promoters (and others) "from all liability" and for "all claims, demands, losses, or damages" on account of any injury.[3]  Ex. 2, ¶ 3.  Section 549.09 changes none of this.

Plaintiff is now left without any legally viable claim against FMS, having brought only a vicarious liability claim against FMS in the Third Amended Complaint ("TAC") and dropped his direct claim against FMS in doing so.  *See* ECF No. 316 (detailing Plaintiff's shifting theories of liability against FMS throughout the case); *see also* ECF No. 330 (further detailing Plaintiff's abandonment of his respondeat superior

---

[2] "Releases containing this language have been interpreted as including gross negligence, and are enforceable."  *Hager*, 665 F. Supp. 2d at 1293 (citing *Borden*, 752 So.2d at 73).

[3] In the Releases, Moreau further agreed to indemnify the Releasees and hold them harmless from any claim brought by himself for any loss, liability, or damage arising out of the Event, whether caused by their negligence or otherwise.  Ex. 1, FMS Release, ¶ 4; Ex. 2, AMA Release, ¶ 4.

and actual agency theories of vicarious liability against FMS). The FMS Release covers Plaintiff's remaining indirect claim and should end this case as to FMS.[4]

## II.    The Releases Extend to Claims Against the Medic Rig Defendants

Section 549.09 refers to the nonliability of "persons or entities owning, leasing, or operating the facility or sponsoring or sanctioning the motorsport event," but the statutory scheme has not changed the common law in Florida as to the scope of contractual waivers of liability. Again, nothing in § 549.09 explicitly states that it is intended to change the common law, nor is the statute explicit and clear in that regard. Section 549.09 may also coexist with the common law rule in Florida that "[a] waiver that identifies parties by capacity is sufficient to absolve those parties from liability as a matter of law." *Banfield v. Louis*, 589 So. 2d 441, 445 (Fla. 4th DCA 1991). Nothing is repugnant by this congruence.

Section 549.09 cannot legitimately be read to abdicate the rights of the Medic Rig Defendants to be protected from liability under a contractual waiver, let alone every other third-party contractor who may enter the stadium and assists with the show, whether it be vendors, security guards, or the like. By signing the FMS Release, Moreau released "rescue personnel, trauma doctors and other medical personnel, [and] any persons in any Restricted Area." Ex. 1. This Release should extend to the Medic Rig Defendants under the common law principles that remain in effect.

---

[4] Even setting the Releases aside, Plaintiff still may not proceed with any claims of gross negligence or otherwise because he expressly assumed the risk of injury in participating in Supercross, which is unquestionably a contact sport. *See* ECF No. 316 at 16-19.

For these reasons, the Court should enforce the FMS Release and enter summary judgment in favor of FMS and against Plaintiff.

Dated: June 11, 2025              Respectfully submitted,

                                 **BUCHANAN INGERSOLL & ROONEY PC**

                                 /s/*David L. Gordon*
                                 Gretchen L Jankowski (admitted *pro hac vice*)
                                 Matthew C. Pilsner (admitted *pro hac vice*)
                                 Union Trust Building
                                 501 Grant Street, Suite 200
                                 Pittsburgh, PA 15219
                                 Tel.: (412) 562-1417
                                 Email: gretchen.jankowski@bipc.com
                                 Email: matthew.pilsner@bipc.com

                                 Richard G. Salazar
                                 Florida Bar No: 899615
                                 401 East Jackson St., Suite 2400
                                 Tampa, FL 33602
                                 Tel: (813) 222-8180
                                 Email: richard.salazar@bipc.com

                                 David L. Gordon (admitted *pro hac vice*)
                                 700 Alexander Park Suite 300
                                 Princeton, NJ 08540-6340
                                 Tel: (609) 987-5767
                                 Email: david.gordon@bipc.com

                                 *Counsel for Defendant Feld Motor Sports, Inc.*