UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN MOREAU,

    Plaintiff,

v.                                                    Case No. 8:22-cv-1295-TPB-CPT

FELD ENTERTAINMENT, INC.,
FELD MOTOR SPORTS, INC.,
THE MEDIC RIG, LLC,
JOHN A. BODNAR, M.D.,
JAMES KENNEDYE, M.D.,
AMY METIVA, and SCOTT COMBS,

    Defendants.
_____/

**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court upon several motions:

> "Feld Motor Sports, Inc.'s Motion for Summary Judgment and Incorporated Memorandum of Law in Support" (Doc. 292);
>
> "Defendants, The Medic Rig, LLC, John A. Bodnar, M.D., James Kennedye, M.D., Amy Metiva, and Scott Combs', Motion for Final Summary Judgment and Memorandum of Law in Support" (Doc. 295); and
>
> "Plaintiff's Motion for Partial Summary Judgment" (Doc. 299).

The parties filed responses in oppositions and replies. *See* (Docs. 317; 319; 320; 330; 332). After reviewing the motions, responses, replies, court file, and record, the Court finds as follows:

## Background

Plaintiff Brian Moreau, then 18 years of age and a citizen of France, was a professional motocross rider that sustained very serious injuries at an event in Tampa Florida. In 2019, he moved to the United States to join the Troy Lee Designs Red Bull KTM Racing Team to compete in the 250SX Class of the Supercross Championship. The first race of the 2020 Supercross Championship Series was held at Raymond James Stadium in Tampa, Florida, on February 15, 2020. Prior to the race, riders were permitted to participate in a "free practice" session on the racetrack. During his first lap around the track, Plaintiff crashed and fell from his motorcycle headfirst onto the middle of the racetrack. A flagger stationed nearby began waving a yellow flag to caution oncoming riders, but no one made any effort to "red flag" or stop the practice session.

Shortly after the crash, two members of the Alpinestars Mobile Medical Unit (believed to be Defendants Amy Metiva and Scott Combs) arrived on the scene to attend to Plaintiff. Plaintiff immediately and repeatedly informed the crewmembers that he was injured and experiencing unusual sensations, including having difficulty feeling his legs. It is alleged that no one attempted to stabilize or immobilize Plaintiff's spine, place a cervical collar on him, or ensure that his helmet was properly and carefully removed. Instead, the two crewmembers roughly lifted Plaintiff up by grabbing his arms and carried him off the racetrack. The crewmembers proceeded to carry Plaintiff over to the side of the racetrack and toward a medical mule by lifting his legs. Around that time, a third crewmember – Dr. Kennedye – arrived to help place Plaintiff on a medical mule and remove his helmet. Plaintiff was driven to an

onsite ambulance where paramedics with Tampa Fire Rescue recognized the serious nature of Plaintiff's reported injuries and placed a cervical collar and rigid body split on him before taking him to Tampa General Hospital. Plaintiff sustained catastrophic permanent injuries and has been rendered a paraplegic.

On June 4, 2022, Plaintiff filed the instant lawsuit, asserting negligence claims against several defendants including the organizers and promoters of the Supercross event and various medical professionals involved in the incident. On March 19, 2024, Plaintiff filed his operative third amended complaint. Defendants Feld Motor Sports, Inc., The Medic Rig, LLC, John A. Bodnar, M.D., James Kennedye, M.D., Amy Metiva, and Scott Combs now move for summary judgment, and Plaintiff moves for partial summary judgment.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is only defeated by the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's

evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

### *Defense Motions for Summary Judgment*

<u>Releases – Negligence and Gross Negligence Claims</u>

Plaintiff's claims against Defendants arise from his participation in the 2020 Supercross. Among other things, Defendants argue that Plaintiff executed a contract and assumption of risk in order to be issued a required race credential. According to Defendants, these documents are enforceable and completely bar Plaintiff's negligence claims against them. The documents at issue were signed before Plaintiff's eighteenth birthday. Plaintiff participated in the Supercross event shortly after turning eighteen.

Defendants assert that Plaintiff ratified the agreements by participating in the Supercross event, and that had he refused to execute the contract and assumption of risk, he would not have been permitted to participate in the 2020 Supercross.

It is undisputed that Plaintiff signed the FMS release before a notary on January 2, 2020, in consideration for being allowed to (a) compete or participate in the events produced or promoted by Feld Motor Sports during the 2020 Supercross season, including motorcycle shows; and (b) enter any restricted area requiring authorization, credentials, or permission to enter or where admission of the general public is restricted, including but not limited to, the competition and pit areas.[1]  In signing the release, Plaintiff acknowledged that he understood the inherently dangerous nature of participating in the sport of Supercross, and that he assumed full responsibility for any risk of injury related to the Supercross events.  He specifically released, waived, and discharged Feld Motor Sports and "rescue personnel, trauma doctors and other medical personnel" from all liability for any and all loss or damage on account of death or injury arising out of the event, including negligent rescue operations.

In addition to the FMS release, Plaintiff earlier executed two agreements with the American Motorcycle Association ("AMA"), including (1) the minor's release and waiver of liability and indemnity with accompanying assumption of risk acknowledgement, and (2) the AMA racing credential terms and conditions.  The AMA release, like the FMS release, provided that Plaintiff would assume full responsibility for and risk of bodily injury due to negligence, and the broad release extended to promotors such as Feld Motor Sports.  As with the FMS release, these documents

---

[1] Plaintiff turned eighteen years old on January 29, 2020.

permitted Plaintiff to obtain the necessary credential to participate in AMA-sanctioned events, and without them, he would not be permitted to participate.

Plaintiff primarily argues that the various releases, including the FMS release, are unenforceable because they are void. For instance, he complains that the release was not signed by a parent or natural guardian, and that the release was not printed in 8-point type or larger. *See* §§ 549.09; 744.301, *F.S.* But these types of issues would not render the waivers *void* – it would only make them *voidable*. *See QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*, 94 So.3d 541, 554 (Fla. 2012) (holding that insurer's failure to comply with the language and type-size requirements of § 627.701(4)(a) did not render a noncompliance hurricane deductible provision in an insurance policy void and unenforceable). And "it is basic hornbook law that a minor can ratify an otherwise voidable contract upon reaching the age of majority through either an affirmative act, or failure to disaffirm the contract within the period of the statute of limitations. *Valldejuli v. Soc. Sec. Admin.*, No. GCA 94-10051-MMP, 1994 WL 912253, at *2 n.4 (N.D. Fla. Dec. 20, 1994) (citing 25 Fla. Jur. 2d §§ 445-446).

To ratify an agreement, an individual must engage in "conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or voidable." *Gibson v. Lynn University, Inc.*, 504 F. Supp. 1335, 1343 (S.D. Fla. Nov. 29, 2020) (quoting *Citron v. Wachovia Mortg. Corp.*, 9922 F. Supp. 2d 1309, 1321-22 (M.D. Fla. 2013)); *see also Zurstrassen v. Stonier*, 786 So. 2d 65, 71 (Fla. 4th DCA 2001) ("Ratification occurs where a party with full knowledge of all the material facts makes an affirmative showing of his or her

express or implied intention to adopt an act or contract entered into without authority.").

The Court previously denied a motion to dismiss concerning the release waivers after finding that it could not at that stage of the proceedings conclude that Plaintiff ratified the agreements – the third amended complaint did not clearly establish, on its face, that Plaintiff, acting "with full knowledge of all the material facts," affirmatively showed his "express or implied intention to adopt" to the contractual release. But at summary judgment, the record evidence shows that Plaintiff, acting with full knowledge of all the material facts, affirmatively showed his intention to adopt the contractual releases by participating in the Supercross events.

If Plaintiff had wanted to disaffirm the agreements, he would have needed to repudiate the contracts, return the credential, and not participate in the Supercross events. *See Putnal v. Walker*, 55 So. 844, 846 (Fla. 1911) ("[W]here the infant, upon his arrival at majority, or at the time he seeks disaffirmance, still has the consideration received, or any part thereof, he must, upon his disaffirmance, return it, for the law will not allow him to repudiate his contract and at the same time retain its fruits as his own."). Instead, the day before the incident, Plaintiff participated in a press day, which required use of a credential to access the event. On Saturday, he walked the track before the race, again using his required credential to enter the stadium and access the pits. He was later participating in the free, untimed practice session – which required a credential to access – when he crashed.

These affirmative actions, which required use of the credential, conclusively show Plaintiff's intent to be bound by the terms of the agreements so that he could

participate in the Supercross event.  Plaintiff tries to manufacture factual disputes by claiming a language barrier, limited education, and general lack of understanding.  But Florida law imputes knowledge of the contract's contents to him because "one who signs a contract is presumed to know its contents." *Sutton v. Crane*, 101 So. 2d 823, 825 (Fla. 2d DCA 1958).  Consequently, the Court concludes that the releases are generally enforceable because they were ratified by Plaintiff after turning the age of majority.

That being said, the Court must also consider the application of § 549.09, *F.S.*, which specifically pertains to releases involving motor spots.  First, § 549.09, *F.S.* permits the release of negligence claims, but not claims for gross negligence.  So while the releases will bar Plaintiff's ordinary negligence claims, the releases will not necessarily bar Plaintiff's claims for gross negligence.[2]  Second, contrary to Plaintiff's argument, the Court does not read § 549.09, *F.S* to permit liability waivers *only* for those persons or entities owning, leasing, or operating the facility or sponsoring or sanctioning the motorsport event.  Although it allows these types of waivers, it does not explicitly disallow others.  The Court therefore finds Plaintiff's argument that the liability waivers do not cover the medical rescue defendants by operation of § 549.09, *F.S.* to be unpersuasive.  Alternatively, even if the statute only permitted waivers for those certain enumerated persons, the Court finds that the medical defendants would be included as persons or entities operating the facility.

---

[2] "[I]n close cases, the question of whether conduct amounts to gross negligence is a question that should be left to the jury." *Hager v. Live Nation Motor Sports, Inc.*, 665 F. Supp. 2d 1290, 1294 (S.D. Fla. 2009).

To summarize – the Court finds that the releases are enforceable by *all* Defendants to bar Plaintiff's claims for simple negligence, but the releases do not bar Plaintiff's claims for gross negligence. Whether Defendants' conduct amounted to gross negligence is an issue that must be determined by a jury.

<u>Vicarious Liability Claims Against Feld Motor Sports</u>

Feld argues that Plaintiff has no claim for vicarious liability against it under either a respondeat superior theory or agency theory. It appears that Plaintiff only proceeds on an apparent agency theory as he has failed to address Feld's arguments concerning respondeat superior and actual agency. *See Martelli v. Knight*, 2020 WL 3440582, at *8 (M.D. Fla. June 23, 2020), *aff'd*, 855 F. App'x 621 (11th Cir. 2021) ("The Eleventh Circuit has repeatedly stated that failure to defend a claim on summary judgment results in the claim being abandoned.").

To establish apparent agency, a party must prove three elements: "(1) a representation by the purported principal; (2) a reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation." *Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 121 (Fla. 1995). Representations can be made by actions or words. *Roessler v. Novak*, 858 So.2d 1158, 1161 (Fla. 2d DCA 2003).

Feld has failed to meet its burden to establish that it is entitled to relief on Plaintiff's claims based on apparent agency. The cases cited, such as *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19 (Fla. 2d DCA 2011), are factually and legally distinguishable.[3] Apparent agency will therefore be an issue for the jury, unless of

---

[3] Notably, *Jackson Hewitt, Inc.* involved a franchisor-franchisee relationship.

course Plaintiff fails to present sufficient evidence at trial to support his agency theory. In such circumstances, Defendants may seek a directed verdict or other remedy.

### Punitive Damages

Defendants move for summary judgment on Plaintiff's request for punitive damages. Based on the current record before the Court, Defendants have not met their burden in showing that they are entitled to judgment as a matter of law on the punitive damage claims asserted in this case. As previously explained, Plaintiff generally alleges facts that could rise to the level of gross negligence, and he will be permitted to present his gross negligence case to the jury. The motions for summary judgment are denied as to this ground. The Court notes that pursuant to Florida law, Plaintiff will be required to prove punitive damages by clear and convincing evidence, and the requirements and standards for establishing punitive damages against individuals and corporations are different.

### *Plaintiff's Motion for Partial Summary Judgment on Affirmative Defenses*

### Good Samaritan Act Affirmative Defense

Plaintiff argues that summary judgment should be granted in favor of Plaintiff on Defendant's affirmative defenses under Florida's Good Samaritan Act, § 768.13(2)(b)(1), *F.S.* This statute provides

> Any health care provider, including a hospital licensed under chapter 395, providing emergency services pursuant to obligations imposed by 42 U.S.C. s. 1395dd, s. 395.1041, s. 395.401, or s. 401.45 shall not be held liable for any civil damages as a result of such medical care or treatment unless such damages result from providing, or failing to provide, medical care or treatment under circumstances

> demonstrating a reckless disregard for the consequences so as to affect the life or health of another.

No Defendants specifically responded in opposition to Plaintiff's argument concerning § 768.13(2)(b)(2), *F.S.*  As such, the Court will grant the motion as to this ground to the extent that Defendants will not be permitted to rely on § 763.13(2)(b)(1) as to their affirmative defenses.  The Medic Rig and the individual defendants opposed Plaintiff's motion as to the applicability of § 768.13(2)(a), *F.S*, and Plaintiff did not address the opposition in his reply.  The Court agrees that it appears there remains factual issues regarding the applicability of § 786.13(2)(b), including whether Plaintiff objected to medical care.  Therefore, the Court declines to grant summary judgment on the affirmative defense in full.

<u>Vicarious Liability Affirmative Defense and Inherently Dangerous Activities Doctrine</u>

Plaintiff seeks summary judgment as to Feld's and The Medic Rig's affirmative defenses that they cannot be vicariously liable for the alleged negligent acts of their independent contractors.  Plaintiff bases this argument on the inherently dangerous activities doctrine.  "This doctrine states that a party who 'employs an independent contractor to do work involving special danger to others which the employer knows . . . to be inherent in or normal to the work . . . is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.'"  *Id*.  There is no precise definition for "inherently dangerous."  *See Clark v. Container Corp. of America, Inc.*, 936 F.2d 1220, 1225 (11th Cir. 1991).  "Generally, work that is of such a nature that 'injury would probably result . . . unless

it was performed with due care'" is considered to be inherently and intrinsically dangerous." *Id.*

Plaintiff identifies the "inherently dangerous activity" as the Supercross event.[4] But Feld and The Medic Rig employed the medical defendants to do medical work for racers at the Supercross event, and medical treatment – even emergency medical treatment – does not appear to be inherently dangerous even if the Supercross event itself may be. The cases in which the inherently dangerous activities doctrine has been applied are not remotely similar to the circumstances here. *See Fla. Power & Light Co. v. Price*, 170 So. 2d 293, 298 (Fla. 1964) (wires charged with high voltage electricity); *Channell v. Musselman Steel Fabricators, Inc.*, 224 So. 2d 320, 321-22 (Fla. 1969) (steel beams being used in construction of building when cable of equipment lifting load of steel snapped); *American Home Assur. Co. v. National Railroad Passenger Corp.*, 908 So. 2d 459, 468 (Fla. 2005) (transportation of 82-ton turbine to power plant for generation of electricity); *Baxley v. Dixie Land & Timber Co.*, 521 So. 2d 170, 171 (Fla. 1st DCA 1988) (cutting, loading, and delivery of logs); *see also Clark*, 936 F.2d at 1225 (highly pressurized jet of water). At best, whether the provision of emergency medical services constitutes an inherently dangerous activity would be a genuine issue of material fact, making summary judgment in favor of Plaintiff inappropriate. The motion is denied as to this ground.

---

[4] He appears to alternatively posit that The Medic Rig's work of providing emergency medical services to injured riders on an active racetrack is inherently dangerous, and possibly that AMA and/or Feld's work of maintaining ultimate control over the racetrack was inherently dangerous.

Accordingly, it is

        **ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Feld Motor Sports, Inc.'s Motion for Summary Judgment and Incorporated Memorandum of Law in Support" (Doc. 292) is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

2. "Defendants, The Medic Rig, LLC, John A. Bodnar, M.D., James Kennedye, M.D., Amy Metiva, and Scott Combs', Motion for Final Summary Judgment and Memorandum of Law in Support" (Doc. 295) is **GRANTED IN PART** AND **DENIED IN PART**, as set forth herein.

3. "Plaintiff's Motion for Partial Summary Judgment" (Doc. 299) is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

    **DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 30th day of July, 2025.

                                         TOM BARBER
                                         UNITED STATES DISTRICT JUDGE