## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BRIAN MOREAU,**

    **Plaintiff,**

**v.**                                                                                       **CASE NO. 8:22-cv-01295-TPB-CPT**

**FELD MOTOR SPORTS, INC.** *et al.*,

    **Defendants.**

_____/

### DEFENDANT FELD MOTOR SPORTS, INC.'S TRIAL BRIEF

At the close of Plaintiff's case-in-chief, judgment as a matter of law will be appropriate on each of Plaintiff's remaining claims. No ordinary negligence claims remain in this case: they are barred under Florida law by the waivers and releases that Plaintiff signed before he raced. ECF No. 400 at 4-9. Plaintiff now has only a vicarious claim against Feld Motor Sports, Inc. ("FMS") based on the theory of apparent agency for gross negligence—a claim that was not pled against FMS and may not even exist under Florida law. Plaintiff will have to satisfy the heightened evidentiary standard of gross negligence by The Medic Rig LLC or the individual defendants ("TMR Defendants") and then somehow impute that conduct to FMS. But Plaintiff will be unable to do so because each of his claims is based on a misunderstanding of Florida law. This case should never go to a jury.

    **A.**    **Plaintiff cannot show his reliance on a legally cognizable representation by FMS to create an apparent agency relationship.**

The only theory of liability left against FMS is for Plaintiff to demonstrate that the TMR Defendants were somehow FMS's apparent agents.

"[A]pparent agency exists only if each of three elements are present: (a) a representation by the purported principal [FMS in this case]; (b) a reliance on that representation by a third party [Plaintiff in this case]; and (c) a change in position by the third party in reliance on the representation." *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995). "Apparent authority does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself; instead, apparent authority exists only where the principal creates the appearance of an agency relationship." *Izquierdo v. Hialeah Hosp., Inc.*, 709 So. 2d 187, 188 (Fla 3d DCA 1998) (citation omitted).

Plaintiff's sole basis for claiming agency against FMS is legally deficient. He says that the TMR Defendants were FMS's agents because a Feld Entertainment logo was used at the event, including alongside other unrelated logos on the medics' uniforms, and there was "SX Supercross" branding in the Stadium. *See* ECF No. 319 at 16. Because of this branding—none of which said "Feld Motor Sports"—Plaintiff claims that he "believed [FMS] was responsible for the . . . medics." *Id.* at 17.

This argument has always been fatally flawed as a matter of law. An independent contractor's use of logos or branding is not a representation on behalf of the principal that can create the appearance of agency. *See Bransford*, 648 So. 2d at 120–21; *Ferrer v. Jewelry Repair Enter., Inc.*, 310 So. 3d 428, 429–30 (Fla. 4th DCA 2021). Even in the context of medical services, an independent doctor's mere use of a hospital's logo "fails to meet even the minimum **level** of representation necessary" to

establish apparent agency on behalf of the hospital. *Chinetti v. Armotrading II, M.D.*, 2018 WL 6932924, at *2 (Fla. 9th Cir. Ct. Aug. 15, 2018) (emphasis in original).[1] So Plaintiff cannot satisfy the first required element of apparent agency.

Perhaps recognizing this problem, Plaintiff recently advanced a new category of evidence in support of apparent agency: that FMS's request that TMR develop an emergency action plan to show that "FMS exercised—or appeared to exercise—control over the medical response."[2] ECF No. 372 at 2. But this new theory cannot satisfy the second element of apparent authority: Plaintiff must prove he *relied* on a *representation* of the principal. *Bransford*, 648 So. 2d at 121. This Plaintiff cannot do. He first learned about this document when it was produced in discovery—years after his crash. Obviously, Plaintiff must know about something before he can rely upon it.

In addition, Plaintiff has argued that he "believed [FMS] was responsible for the . . . medics" because "[t]hat had been his experience at professional events in Europe." ECF No. 319 at 17.[3] He claims that "no one ever told him otherwise," so FMS should be liable based on Plaintiff's assumptions. *Id.* But Plaintiff's "subjective understanding[s]" and uncorrected assumptions cannot create an apparent agency

---

[1] In its summary judgment order, the Court noted that apparent agency cases involving a franchisor-franchisee relationship were distinguishable. ECF No. 400 at 9. But Florida courts routinely apply the reasoning of apparent agency decisions from the franchisor-franchisee context in other factual scenarios, including by holding that the use of a hospital logo does not render an independent doctor the hospital's apparent agent. *See, e.g.*, *Chinetti*, 2018 WL 6932924, at *2.

[2] There is no evidence that FMS ever approved or made official this proposed emergency action plan, nor that this plan was ever published to anyone else, including Plaintiff or any other rider in the sport.

[3] There is no independent evidence that Plaintiff's purported belief about the European system is (a) correct, or (b) based on any similarity between laws or regulations in Florida and Europe.

relationship, again as a matter of law. *See Izquierdo*, 709 So. 2d at 188 (rejecting argument that apparent agency created where plaintiff was not told doctor was not hospital's agent); *Carroll v. Diamond Resorts Mgmt. Inc.*, 2015 WL 11202373, at *8 (S.D. Fla. Oct. 19, 2015) (holding that an alleged principal's failure to affirmatively disclaim or disavow an agency relationship cannot support a vicarious claim). "Only [FMS's] actions could have created this apparent authority." *Izquierdo*, 709 So. 2d at 188.

Finally, even if Plaintiff could show a representation by FMS, he cannot show that he changed his position "in reliance on the representation." *Bransford*, 648 So. 2d at 121. Plaintiff has never suggested that he would have done anything differently but for the logos, so his claim must fail. *See Johns Hopkins All Children's Hosp. v. Kowalski*, — So. 3d — , 2025 WL 3019111, at *15 (Fla. 2d DCA Oct. 29, 2025) (reversing denial of directed verdict where plaintiffs "presented no evidence that they materially changed their position . . . on the basis of [doctor] being an apparent agent of [hospital]"); *Moore v. Toub*, 2023 WL 12023737, at *2 (Fla. 7th Cir. Ct. Dec. 13, 2023) (granting summary judgment where there was "no evidence that [decedent] relied on any alleged representation by [hospital] regarding [defendant's] agency or changed her position based on such a representation").

### B. Providing emergency medical care at a Supercross event is not an inherently dangerous activity.

Plaintiff alternatively claims that FMS is liable for the negligence of the TMR Defendants under the inherently dangerous activities doctrine ("IDA Doctrine"). *See* ECF No. 319 at 12. Plaintiff is wrong about the law, yet again.

4

Under the IDA Doctrine, a principal is liable for the negligence of an independent contractor who is engaged to perform an inherently dangerous (or ultra-hazardous) activity. *Fla. Power & Light Co. v. Prive*, 170 So.2d 293, 298 (Fla. 1964). This theory is often framed as one of non-delegable duty. *See Pope v. Winter Park Health. Grp., Ltd.*, 939 So. 2d 185, 188 (Fla. 5th DCA 2006) ("[N]on-delegable duties typically arise out of the performance of ultra-hazardous activity."). But unlike vicarious claims based on actual or apparent agency, "liability for the breach of a nondelegable duty arises from direct—instead of imputed—liability." *Armiger v. Associated Outdoor Clubs, Inc.*, 48 So. 3d 864, 874 (Fla. 2d DCA 2010).

The precise contours of Plaintiff's latest theory have always been uncertain, as this Court recently observed. ECF No. 400 at 11–12 & n.4. Initially, Plaintiff indicated that Supercross itself was inherently dangerous. ECF No. 319 at 12. But in his proposed jury instructions, he clarified his claim: FMS had a nondelegable duty to provide non-negligent medical care because providing emergency medical services at a Supercross event is inherently dangerous. ECF No. 358 at 47.

Plaintiff cannot prevail on this theory for at least two independent reasons. To start, Plaintiff never pleaded an IDA Doctrine claim in any of the four iterations of his complaint. Indeed, Plaintiff intentionally abandoned all of his direct claims against FMS in lieu of his various theories of vicarious liability (of which now only one remains). The Court should not permit Plaintiff to present this new, untimely theory of direct liability to the jury. *See Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1338 (11th Cir. 2024) (a plaintiff may not raise new claims at the summary judgment stage).

5

In addition, Florida law does not recognize a common-law "non-delegable duty . . . to provide non-negligent care," even in the context of a hospital's emergency room. *Tabraue v. Doctors Hosp., Inc.*, 272 So. 3d 468, 472 (Fla. 3d DCA 2019). A non-delegable duty on behalf of a medical provider can be created only by "a statute, regulation, or contract," none of which are implicated here. *Id.* at 471; *see also Moore*, 2023 WL 12023737, at *2 ("Florida common law does not impose a non-delegable duty on hospitals to provide non-negligent physician services.") (citing *Pope*, 939 So. 2d at 187). This Court has likewise recognized that "[t]he cases in which the inherently dangerous activities doctrine has been applied are not remotely similar to the circumstances here." ECF No. 400 at 12 (collecting cases). Plaintiff should not be permitted to argue the IDA Doctrine to the jury.

### C. Plaintiff has no standalone claim for which FMS may be liable.

The releases that Plaintiff freely executed, as this Court recently held, bar his claims for simple negligence, but not gross negligence. But as a Court in this District has recently recognized, "there is ample case law indicating that gross negligence is not a standalone count, but rather a legal standard that must be met when seeking punitive damages under Fla. Stat. § 768.72(2)." *Robinson*, v. *3M Company*, 2025 WL 2061706, at *16 (M.D. Fla. July 23, 2025).[4] That ruling alone should end this case.

---

[4] Those courts that recognize a "claim" for gross negligence in limited circumstances as a mechanism to pierce a statutory immunity also recognize that the extraordinary burden of proving such a "claim" will often justify judgment as a matter of law. *See Greathouse v. Ceco Concrete Constr., L.L.C.*, 2007 WL 624550, at *9 (N.D. Fla. Feb. 23, 2007) (collecting cases).

For claims of vicarious liability "there must be an underlying claim through which [a plaintiff] can hold one of the defendants liable." *Christrikes Custom Motorcycles, Inc. v. Teutul*, 2016 WL 3406391, at *4 (M.D. Fla. June 21, 2016). As one Florida federal district court has explained, "[o]f paramount importance in finding vicarious liability is that the underlying alleged tortfeasor actually be found liable of tortious acts. If the alleged tortfeasor is not liable, no liability can be imputed upwards." *Fontanez v. Lamberti*, 2011 WL 4499016, at *15 (S.D. Fla. Sept. 27, 2011).

Here, FMS cannot be held vicariously liable for any simple negligence by its co-Defendant because they are all covered by the FMS Release. Nor can FMS be held to be vicariously liable for Plaintiff's "claim" of gross negligence because it is not a claim at all. So Plaintiff has nothing left, and judgment as a matter of law is thus appropriate.

### D. The releases bar Plaintiff's vicarious liability claim against FMS.

In ruling that § 549.09 permits the release of claims for simple but not gross negligence, the Court did not squarely address whether the FMS Release is still enforceable as to Plaintiff's theory of vicarious liability brought against FMS. And when this argument is considered at trial, judgment as a matter of law should be entered on the sole remaining claim against FMS.

Section 549.09 permits the release of indirect claims regardless of any specific limitation on the types of negligence claims that may be released. The common law in Florida allows a party to contractually waive claims of vicarious liability. *See, e.g.*, *Schauenberg v. Key West Tours, Inc.*, 2009 WL 10667453, at **1, 4–5 (S.D. Fla. Aug. 6, 2009) (granting summary judgment on vicarious liability to defendant jet ski rental

7

service operator based on contractual release); *Altman v. Pakh*, 2011 WL 10944742, at **1, 5 (Fla. 15th Cir. Ct. Dec. 2, 2011) (granting summary judgment to defendants, a hockey league and its officials, on negligence, gross negligence, and vicarious liability claims where plaintiff signed contractual release as a condition of joining a league). Section 549.09 says nothing about vicarious liability or indirect claims at all that might upset this rule. Absent a clear statement otherwise, "the common law remains in effect." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077–78 (Fla. 2001).

Taken together, § 549.09 allows FMS to require that Plaintiff execute a waiver for direct claims of liability against it, while the common law equally allows indirect claims to be released in contractual waivers—just as Plaintiff did here. Before he ever set foot in the stadium as a professional motorcycle rider, Plaintiff unconditionally released, waived, and discharged FMS from **all liability**. Section 549.09 changes none of this. Plaintiff is now left without any legally viable claim against FMS, having brought only a vicarious liability claim against FMS in the Third Amended Complaint ("TAC") and dropped his direct claim against FMS in doing so. The FMS Release covers Plaintiff's remaining indirect claim and should end this case as to FMS.

E. **No evidence exists to find FMS liable for punitive damages.**

"[P]unitive damages are reserved for truly 'culpable conduct,'" and the requisite level of negligence for those damages is "equivalent to the conduct involved in criminal manslaughter." *Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 706 (Fla. 4th DCA 2023). Indeed, "[a]llegations of misfeasance or malfeasance, or breaches of a professional standard of care, cannot without more be converted into a

8

claim for punitive damages simply by labelling them as 'grossly' negligent." *Id.* This is a high standard. *See Fla. Power & Light Co. v. Dominguez*, 295 So. 3d 1202, 1206 (Fla. Dist. Ct. App. 2019) (collecting cases reversing awards of punitive damages).

In the case of vicarious liability, however, punitive damages may be imposed only if an agent's conduct meets that high standard ***and***, as relevant here, that the officers, directors, or managers of the principal *condoned, ratified, or consented* to such conduct. Fla. Stat. § 768.72(3)(b). "[B]efore one may infer that a principal ratified an unauthorized act of his agent, the evidence must demonstrate that the principal was fully informed—beyond having simple constructive knowledge—and that he approved of the act." *Kowalski*, 2025 WL 3019111, at *15 (citation omitted). And "actions taken after the happening of a tortious act are not admissible on the issue of punitive damages, nor can those subsequent actions form the basis for bringing such a damage claim." *Id.* (citation omitted).

Moreau has no evidence—much less clear and convincing evidence—that FMS or any of its officers, directors, or managers had anything to do with the Plaintiff's removal from the track, let alone condoned, ratified, or consented to such conduct. After all, FMS has no role in those on-track functions at any race, including the 2020 Tampa Event. The testimony of two FMS witnesses about their personal opinions five years after the crash is legally irrelevant and does not provide Moreau with any support, as he claimed at summary judgment. ECF No. 319 at 20. The jury should not be instructed on punitive damages as to FMS.

### F. Plaintiff's remaining damages are only for pain and suffering.

Plaintiff is no longer seeking damages for (1) economic loss, ECF No. 167 at 18, n.10, and (2) medical expenses, ECF No. 359 at 4. He therefore cannot recover for lost income or past or future medical care and life care needs.[5] To prevent jury confusion, the Court should instruct that Plaintiff is *not* seeking these damages.

Dated: December 9, 2025       Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ *Gretchen L. Jankowski*
Gretchen L. Jankowski (admitted *pro hac vice*)
Matthew C. Pilsner (admitted *pro hac vice*)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel.: (412) 562-1417
Email: gretchen.jankowski@bipc.com
Email: matthew.pilsner@bipc.com

Richard G. Salazar
Florida Bar No: 899615
401 East Jackson St., Suite 2400
Tampa, FL 33602
Tel: (813) 222-8180
Email: richard.salazar@bipc.com

David L. Gordon (admitted *pro hac vice*)
700 Alexander Park Suite 300
Princeton, NJ 08540-6340
Tel: (609) 987-5767
Email: david.gordon@bipc.com

*Counsel for Defendant Feld Motor Sports, Inc.*

---

[5] Plaintiff will continue to receive disability payments from the French government, as well as statutory health insurance as a French citizen that will cover his medical needs.