## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BRIAN MOREAU**

    **Plaintiff,**

**vs.**            **Case No. 8:22-cv-01295**

**FELD MOTOR SPORTS, INC., et al.,**

    **Defendants.**

_____

### JOINT REVISED PROPOSED JURY INSTRUCTIONS

Plaintiff Brian Moreau and Defendants Feld Motor Sports, Inc., The Medic Rig, LLC, John A. Bodnar, M.D., James Kennedye, M.D., Amy Metiva, and Scott Combs, through their respective counsel, hereby submit the enclosed revised proposed preliminary and final jury instructions for the trial in this matter.

## PRELIMINARY JURY INSTRUCTIONS

## Joint Instruction No. 1 (*parties only dispute description of case*) - General Preliminary Instruction

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence:</u>

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection

to a question, you must ignore the question and not guess what the answer might

have been.

Sometimes I may disallow evidence – this is also called "striking" evidence

– and order you to disregard or ignore it. That means that you must not consider

that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you

that I have admitted an item of evidence for a limited purpose, you must consider

it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and

which testimony not to believe. You may believe everything a witness says, part of

it, or none of it. When considering a witness's testimony, you may take into

account:

• the witness's opportunity and ability to see, hear, or know the things

the witness is testifying about;

• the witness's memory;

• the witness's manner while testifying;

• any interest the witness has in the outcome of the case;

• any bias or prejudice the witness may have;

• any other evidence that contradicts the witness's testimony;

• the reasonableness of the witness's testimony in light of all the

evidence; and

• any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

<u>Description of the case:</u>

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions.

**Plaintiff's Proposed Description of the Case:**

The Plaintiff, Brian Moreau, is a former professional motocross rider from France. In February 2020, he crashed his motorcycle during a practice session at Defendant Feld Motor Sports, Inc.'s Supercross event at Raymond James Stadium in Tampa. Mr. Moreau claims that Defendants The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, and Scott Combs were grossly negligent in providing, directing, and supervising his medical care after the crash, and that their conduct aggravated his injuries.

Mr. Moreau also claims that Defendant Feld Motor Sports, Inc. is responsible for that conduct because Feld caused or allowed him to believe that The Medic Rig's personnel were acting on Feld's behalf, and because Feld engaged The Medic Rig to perform work that was inherently dangerous.

The Defendants deny Brian Moreau's claims. The Defendants contend that Supercross is a dangerous sport, that Brian Moreau's own negligence in the original crash caused his injuries, and that the medical care provided after the crash did not cause or aggravate those injuries.

**Defendants' Proposed Description of the Case:**

The Plaintiff, Brian Moreau, claims that Defendants The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, and Scott Combs provided grossly negligent medical care to him after he crashed his motorcycle during a practice session at the Supercross motorcycle race held in Tampa, Florida in February 2020, which I'll refer to as the 2020 Tampa Supercross. The Plaintiff also claims that Defendant Dr. Bodnar was grossly negligent in failing to adequately supervise alleged grossly negligent medical care that was provided to Plaintiff after he crashed at the 2020 Tampa Supercross. Plaintiff claims that this alleged grossly negligent medical care caused him to become paralyzed.

The Plaintiff also asserts two separate vicarious (or indirect) liability claims against Defendants The Medic Rig, LLC and Feld Motor Sports, Inc. Vicarious or indirect liability means that a person can be held responsible for the negligent actions of some other person based on their relationship, even though the person being held indirectly responsible did nothing wrong. First, the Plaintiff claims that The Medic Rig is indirectly liable for the alleged gross negligence of its crewmembers, Dr. Bodnar, Dr. Kennedye, Ms. Metiva, and Mr. Combs. Second, the Plaintiff claims that Feld Motor Sports, Inc., is indirectly liable for the alleged gross negligence of The Medic Rig, Dr. Bodnar, Dr. Kennedye, Ms. Metiva, and/or Mr. Combs, because he contends that they were the apparent agents of Feld Motor Sports.

6

The Defendants deny the Plaintiff's claims. They claim that the Plaintiff's crash caused his injury. The Defendants also claim that the Plaintiff expressly released his claims against the Defendants when he signed contracts containing releases of liability with Defendants Feld Motor Sports and the American Motorcycle Association before participating in the 2020 Tampa Supercross. On this last defense, I have already determined that these contracts bar any claims Plaintiff had for simple negligence but that they do not bar his claims for gross negligence. It will be for you to decide if one of the Individual Defendants or The Medic Rig acted with gross, rather than simple, negligence.

Burden of proof:

Plaintiff has the burden of proving his case by what the law calls a "preponderance of the evidence." That means he must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Plaintiff and the evidence favoring the Defendants on opposite sides of balancing scales, Plaintiff needs to make the scales tip to his side. If Plaintiff fails to meet this burden, you must find in favor of the Defendants.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," the Defendants have the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts the Defendants must prove for any affirmative defense. After considering all the evidence, if you decide that the Defendants have successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, encrypted-communication applications, the Internet – including social-networking websites and apps, or any other similar technology, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully

listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Plaintiff will present his witnesses and ask them questions. After Plaintiff questions the witness, the Defendants may ask the witness questions – this is called "cross-examining" the witness. Then the Defendants will present their witnesses, and Brian Moreau may cross-examine them. There may also be instances during the trial where both Plaintiff and Defendants present affirmative evidence from the same witnesses, as opposed to "cross-examining" them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, I'll give you instructions on the law, and then the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you.

You'll then go to the jury room to deliberate.

**Authority**

**Eleventh Cir. Pattern Jury Instr. (Civil) 1.1 (Sept. 2025)**

**Plaintiff's Objections:**

Plaintiff objects to instructing the jury on the affirmative defenses. First, the Good Samaritan statute, § 768.13(2)(a), only applies where, among other things, "*the person acts as an ordinary reasonably prudent person would have acted under the same or similar circumstances.*" § 768.13(2)(a), Fla. Stat. (emphasis added). Given Plaintiff can only prevail if the jury finds gross negligence, this affirmative defense is moot.

Second, as to comparative negligence, the Court has ruled that "Defendants will not be permitted to specifically argue comparative fault as to the aggravation *unless Defendants can point to any alleged fault or negligence of Plaintiff during the course of treatment* (such as failing to disclose relevant information, refusing treatment, or otherwise interfering with diagnosis or care)." Order on Pl.'s MIL [DE 401 at 2] (emphasis added).

Third, as to assumption of risk, the Court has ruled "that Defendants cannot argue that Plaintiff's voluntary participation in a dangerous sport constitutes an assumption of the risk of injury that completely bars Plaintiff's claims." *See* Order on Pl.'s MIL [DE 401 at 1]. Although Defendants may argue "that Supercross is a dangerous sport and that Plaintiff's own negligence in the original accident is a cause of Plaintiff's injuries, and that the subsequent medical treatment did not cause his injuries[,]" *id.* at 1-2, that is a causation argument—not an affirmative defense.

<u>Fourth</u>, as to express release of liability, the Court has ruled "that Defendants cannot argue that the releases bar Plaintiff's claims for gross negligence." *See* Order on Pl.'s MIL [DE 401 at 2]. This affirmative defense is moot. At most, Defendants "are permitted to argue and clarify for the jury that the releases bar Plaintiff's simple negligence claims."

**Defendants' Objections:**

FMS objects to Plaintiff's description of the case insofar as it purports to impose liability under an apparent agency theory on FMS if FMS merely "allowed" Plaintiff to believe that the TMR Defendants were its apparent agents. Plaintiff's "subjective understanding[s]" and uncorrected assumptions cannot create an apparent agency relationship, again as a matter of law. *See Izquierdo v. Hialeah Hosp., Inc.*, 709 So. 2d 187, 188 (Fla 3d DCA 1998) (rejecting argument that apparent agency created where plaintiff was not told doctor was not hospital's agent); *Carroll v. Diamond Resorts Mgmt. Inc.*, 2015 WL 11202373, at *8 (S.D. Fla. Oct. 19, 2015) (holding that an alleged principal's failure to affirmatively disclaim or disavow an agency relationship cannot support a vicarious claim). "Only [FMS's] actions could have created this apparent authority." *Izquierdo*, 709 So. 2d at 188.

FMS further objects to Plaintiff's description of the case because Plaintiff purports to assert a claim under the IDA Doctrine. Plaintiff brought only a vicarious liability claim against FMS against FMS in the TAC and dropped his direct claim against FMS in doing so. *See* ECF No. 316 (detailing Plaintiff's shifting

theories of liability against FMS throughout the case); *see also* ECF No. 330 (further detailing Plaintiff's abandonment of his respondeat superior and actual agency theories of vicarious liability against FMS).  Plaintiff's request for this instruction on this new theory attempts to again amend his pleading (for the fifth time) and revert to a distinctly direct liability claim, now under the IDA Doctrine. *See Armiger v. Associated Outdoor Clubs, Inc.*, 48 So. 3d 864, 874 (Fla. 2d DCA 2010) (explaining that the "concepts of nondelegable duty and vicarious liability are frequently confused and conflated," with liability for the breach of a nondelegable duty aris[ing] from direct—instead of imputed—liability").

Further, the Court's ruling on Plaintiff's motion for summary judgment indicates that the IDA Doctrine does not apply to these circumstances: the Court explained that "Feld and The Medic Rig employed the medical defendants to do the medical work for the racers at the Supercross event, and medical treatment— even emergency medial treatment—does not appear to be inherently dangerous even if the Supercross event itself may be."  ECF No. 400 at 12.  Indeed, Plaintiff's claim under the IDA Doctrine is foreclosed by Florida law, which does not recognize a common-law "non-delegable duty . . . to provide non-negligent care." *Tabraue v. Doctors Hosp., Inc.*, 272 So. 3d 468, 472 (Fla. 3d DCA 2019); *see also Moore v. Toub*, 2023 WL 12023737, at *2 (Fla. 7th Cir. Ct. Dec. 13, 2023) ("Florida common law does not impose a non-delegable duty on hospitals to provide non-negligent physician services.") (citing *Pope*, 939 So. 2d at 187).

FMS and the TMR Defendants further object to Plaintiff's description of the case to the extent it omits the TMR Defendants' affirmative defense under the Good Samaritan Immunity statute.

**Joint Instruction No. 2 - Official English Translation/Interpretation**

You may hear or see languages other than English during this trial.

You must consider evidence provided through only the official court interpreters. It is important that all jurors consider the same evidence. So even if some of you know French, you must accept the English interpretation provided and disregard any different meaning.

**Authority**

**Eleventh Cir. Pattern Jury Instr. (Civil) 1.3 (Sept. 2025)**

**Joint Instruction No. 3 - Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.

- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

## Authority

**Eleventh Cir. Pattern Jury Instr. (Civil) 1.4 (Sept. 2025)**

**Joint Instruction No. 4 - Interim Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**Authority**

**Eleventh Cir. Pattern Jury Instr. (Civil) 1.5 (Sept. 2025)**

**Plaintiff's Instruction No. 5 - Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case. The parties have agreed that the following facts are true:

- [List facts]

- Defendant Feld Motor Sports, Inc. is the owner, operator, organizer, and promoter for the sport of Supercross, including in 2020 for the Monster Energy AMA Supercross Series, an FIM World Championship. [DE 359 at 23, ¶3].

- Feld Motor Sports contracted with Defendant The Medic Rig, LLC for The Medic Rig to (a) provide a mobile medical facility during the seasons of the Monster Energy Supercross events, and (b) for The Medic Rig to supply FMS professional services, including providing licensed physicians at FMS-produced Supercross races provide medical care to riders, crew, and staff as needed. [DE 359 at 23, ¶4].

- Defendants Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, and Scott Combs were agents of The Medic Rig, LLC, and were acting within the scope of their agency at the time and place of the incident. [DE 359 at 24, ¶10].

## Authority

**Eleventh Cir. Pattern Jury Instr. (Civil) 2.1 (Sept. 2025)**

FMS and TMR Defendants object to Plaintiff's selective presentation of stipulated facts in this proposed instruction. At the December 15, 2025, Pretrial Conference, the Court stated that it would not read the parties' stipulated facts into the record but would provide those facts to the jurors in a separate document for them to take into the jury room during deliberations. *See* December 15, 2025, Hr'g Tr. at 5:9–6:9. Plaintiff's selective presentation of the parties' stipulations here attempts to circumvent the Court's preference.

**Defendants' Proposed Instruction No. 6 - Stipulations**

Sometimes the parties have agreed that certain facts are true.  This agreement is called a stipulation.  You must treat these facts as proved for this case. The parties have agreed that a number of facts are true.  You will receive a list of each of these facts to take back with you into the jury room for your deliberations.

**<u>Authority</u>**

**Eleventh Cir. Pattern Jury Instr. (Civil) 2.1 (Sept. 2025) (modified)**

**Joint Instruction No. 7 - Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

**Authority**

**Eleventh Cir. Pattern Jury Instr. (Civil) 2.2 (Sept. 2025)**

**Plaintiff's Proposed Instruction No. 8 - Judicial Notice**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted that:

1. As of February 15, 2020, Feld Motor Sports, Inc. had a federally registered service mark for "SX"; and

2. As of that same date, Feld Motor Sports, Inc. had a pending federal trademark application for "SX SUPERCROSS".

I've accepted these facts as proved even though no one introduced evidence to prove them. You must accept them as true for this case.

**<u>Authority</u>**

**Eleventh Cir. Pattern Jury Instr. (Civil) 2.5 (Sept. 2025); Fed. R. Evid. 201**

FMS and the TMR Defendants object to the use of judicial notice when Plaintiff may attempt to elicit this testimony from a fact witness, or could have presented evidence of a certified copy of the trademark registrations. The Court has already denied Plaintiff's motion for judicial notice in lieu of his presentation of this evidence through trial testimony. Oral Order, ECF No. 417; Dec. 15, 2025, Hr'g Tr. at 32:18–25. FMS further objects that these proposed facts are not relevant to the case. *See Mobil Oil Co. v. Bransford*, 648 So. 2d 119, 120–21 (Fla. 1995); *Chinetti v. Armotrading II, M.D.*, 2018 WL 6932924, at *2 (Fla. 9th Cir. Ct. Aug. 15, 2018).

**Joint Instruction No. 9 - Use of Interrogatories**

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**Authority**

**Eleventh Cir. Pattern Jury Instr. (Civil) 2.6 (Sept 2025)**

**Joint Instruction No. 10 - In-Trial Instructions on News Coverage**

Reports about this trial or about this incident may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

**<u>Authority</u>**

**Eleventh Cir. Pattern Jury Instr. (Civil) 2.7 (Sept. 2025)**

**FINAL JURY INSTRUCTIONS**

## Joint Instruction No. 11 - Introduction

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will hear closing arguments from the lawyers for each side, and then you will go to the jury room and begin your discussions, sometimes called deliberations.

## Authority

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.1 (Sept. 2025)**

**Joint Instruction No. 12 - The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**Authority**

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.2.2 (Sept. 2025)**

**Joint Instruction No. 12 - Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**Authority**

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.3 (Sept. 2025)**

**Joint Instruction No. 13 - Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must

accept all the evidence as true or accurate. You should decide whether you believe

what each witness had to say, and how important that testimony was. In making

that decision you may believe or disbelieve any witness, in whole or in part. The

number of witnesses testifying concerning a particular point doesn't necessarily

matter.

To decide whether you believe any witness I suggest that you ask yourself a

few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately

   observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and

   answer them directly?

7. Did the witness's testimony differ from other testimony or other

   evidence?

<u>**Authority**</u>

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.4 (Sept. 2025)**

**Joint Instruction No. 14 - Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**<u>Authority</u>**

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.5.1 (Sept. 2025)**

**Defendants' Proposed Instruction No. 15 - Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**Authority**

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.6.1**

**Plaintiff's Proposed Instruction No. 16 - Expert Witness – When Expert Fees Represent a Significant Portion of the Witness's Income**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

**<u>Authority</u>**

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.6.2 (Sept. 2025)**

**Joint Instruction No. 17 – Responsibility for Proof – Plaintiff's Claims
– Preponderance of the Evidence**

In this case it is the responsibility of the Plaintiff to prove every essential part of his claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff.

You should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claims by a preponderance of the evidence, you should find for the Defendants as to that claim.

**<u>Authority</u>**

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.7.1 (Sept. 2025)**

**Defendants' Proposed Instruction No. 18 - Responsibility for Proof –
Affirmative Defenses – Preponderance of the Evidence**

In this case, the Medic Rig, Dr. John Bodnar, Dr. James Kennedye, Ms. Amy
Metiva, and Mr. Scott Combs assert the affirmative defense of Good Samaritan
immunity. Even if the Plaintiff proves his claims by a preponderance of the
evidence, the Defendants can prevail in this case, in whole or in part, if they prove
an affirmative defense by a preponderance of the evidence.

I caution you that the Defendants do not have to disprove the Plaintiff's
claims, but if the Defendants raise an affirmative defense, the only way they can
prevail on that specific defense is if they prove that defense by a preponderance of
the evidence.

**Authority**

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.7.2**

Plaintiff objects. Section § 768.13(2)(a) only applies where, among other
things, "*the person acts as an ordinary reasonably prudent person would have
acted under the same or similar circumstances.*" § 768.13(2)(a), Fla. Stat.
(emphasis added). Given Plaintiff can only prevail if the jury finds gross
negligence, this affirmative defense is moot.

Plaintiff further objects to referring to this defense as the "Good Samaritan"
defense as prejudicial and misleading in front of the jury. This was a medical team
at a professional sporting event treating a professional athlete. They were all paid,
except for Scott Combs, who was a volunteer.

33

## Defendants' Proposed Instruction No. 19 - Plaintiff's Direct Claims

For Plaintiff's direct claims, you must decide whether Plaintiff has proven by a preponderance of the evidence that The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, or Sean Combs were grossly negligent in the provision of medical services to Plaintiff and if Dr. Bodnar was grossly negligent in supervising their provision of medical services to Plaintiff.

If you find by a preponderance of the evidence that The Medic Rig, LLC, Dr. Bodnar, Dr. Kennedye, Ms. Metiva, or Mr. Combs were grossly negligent in the provision of medical services to Plaintiff, you must then decide whether the Plaintiff has proved by a preponderance of the evidence that the gross negligence you found was a legal cause of the Plaintiff's injury.

## Authority

## Fla. Standard Jury Instr. (Civil) 401.18 (modified)

Plaintiff objects to deviating from the Florida Supreme Court's standard jury instructions, which lay out a step-by-step framework for the jury to follow in medical malpractice cases involving vicarious liability claims. *See* Fla. Standard Jury Instr. (Civil) 402.1 to 402.15 (Nov. 2025).

34

**Plaintiff's Proposed Instruction No. 20 - SUMMARY OF CLAIMS**

The claims and defenses in this case are as follows. Brian Moreau claims that The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, and Scott Combs were grossly negligent in providing, directing, and supervising his medical care after his crash, which caused him harm by aggravating his injuries.

Brian Moreau also claims that Defendant Feld Motor Sports, Inc., is legally responsible for that conduct: (A) because Feld caused or allowed him to believe that The Medic Rig's personnel were acting as Feld's agents; or (B) because Feld engaged The Medic Rig to perform work that was inherently dangerous.

The Defendants deny Brian Moreau's claims. The Defendants contend that Supercross is a dangerous sport, that Brian Moreau's own negligence in the original crash caused his injuries, and that the medical care provided after the crash did not cause or aggravate those injuries.

The parties must prove their claims and defenses by a preponderance of the evidence. I will now define some of the terms you will use in deciding this case.

**Authority**

**Fla. Standard Jury Instr. (Civil) 402.2 (Nov. 2025) (modified)**

FMS objects to this instruction because Plaintiff purports to assert a claim under the IDA Doctrine.  Plaintiff brought only a vicarious liability claim against FMS against FMS in the TAC and dropped his direct claim against FMS in doing so.  *See* ECF No. 316 (detailing Plaintiff's shifting theories of liability against FMS throughout the case); *see also* ECF No. 330 (further detailing Plaintiff's

abandonment of his respondeat superior and actual agency theories of vicarious liability against FMS). Plaintiff's request for this instruction on this new theory attempts to again amend his pleading (for the fifth time) and revert to a distinctly direct liability claim, now under the IDA Doctrine. *See Armiger v. Associated Outdoor Clubs, Inc.*, 48 So. 3d 864, 874 (Fla. 2d DCA 2010) (explaining that the "concepts of nondelegable duty and vicarious liability are frequently confused and conflated," with liability for the breach of a nondelegable duty aris[ing] from direct—instead of imputed—liability").

Further, the Court's ruling on Plaintiff's motion for summary judgment indicates that the IDA Doctrine does not apply to these circumstances: the Court explained that "Feld and The Medic Rig employed the medical defendants to do the medical work for the racers at the Supercross event, and medical treatment—even emergency medial treatment—does not appear to be inherently dangerous even if the Supercross event itself may be." ECF No. 400 at 12. Indeed, Plaintiff's claim under the IDA Doctrine is foreclosed by Florida law, which does not recognize a common-law "non-delegable duty . . . to provide non-negligent care." *Tabraue v. Doctors Hosp., Inc.*, 272 So. 3d 468, 472 (Fla. 3d DCA 2019); *see also Moore v. Toub*, 2023 WL 12023737, at *2 (Fla. 7th Cir. Ct. Dec. 13, 2023) ("Florida common law does not impose a non-delegable duty on hospitals to provide non-negligent physician services.") (citing *Pope*, 939 So. 2d at 187).

FMS further objects that this revised instruction purports to impose liability under an apparent agency theory on FMS if FMS merely "allowed" Plaintiff to

believe that the TMR Defendants were its apparent agents.  Plaintiff's "subjective understanding[s]" and uncorrected assumptions cannot create an apparent agency relationship, again as a matter of law.  *See Izquierdo v. Hialeah Hosp., Inc.*, 709 So. 2d 187, 188 (Fla 3d DCA 1998) (rejecting argument that apparent agency created where plaintiff was not told doctor was not hospital's agent); *Carroll v. Diamond Resorts Mgmt. Inc.*, 2015 WL 11202373, at *8 (S.D. Fla. Oct. 19, 2015) (holding that an alleged principal's failure to affirmatively disclaim or disavow an agency relationship cannot support a vicarious claim). "Only [FMS's] actions could have created this apparent authority." *Izquierdo*, 709 So. 2d at 188.

**Joint Instruction No. 21 - Negligence**

Negligence is the failure to use reasonable care, which is the care that a
reasonably careful person would use under like circumstances. Negligence is doing
something that a reasonably careful person would not do under like circumstances
or failing to do something that a reasonably careful person would do under like
circumstances.  Plaintiff is not asserting a claim for negligence in this case; this
definition is provided to highlight the differences between negligence and gross
negligence.

**<u>Authority</u>**

**Fla. Standard Jury Instr. (Civil) 401.4 (Nov. 2025)**

**Joint Instruction No. 22 - Medical Negligence**

Some of the defendants are physicians or other health care providers. Reasonable care on the part of a physician or health care provider is that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by similar and reasonably careful physicians or health care providers. Negligence on the part of a physician or health care provider is doing something that a reasonably careful physician or health care provider would not do under like circumstances or failing to do something that a reasonably careful physician or health care provider would do under like circumstances. Again, plaintiff is not asserting a claim for negligence in this case; this definition is provided to highlight the differences between negligence and gross negligence.

**Authority**

**Fla. Standard Jury Instr. (Civil) 402.4(a) (Nov. 2025) (modified)**

**Plaintiff's Proposed Instruction No. 23 - Gross Negligence (for Compensatory Damages)**

Gross negligence is that course of conduct which a reasonable and prudent person would know would probably and most likely result in injury to persons. In determining whether a defendant was grossly negligent, you must consider whether:

(1) the circumstances created an imminent or clear and present danger amounting to more than a normal or usual peril;

(2) the defendant had knowledge or awareness of that danger; and

(3) the defendant committed an act or omission that evinces a conscious disregard of the consequences.

Gross negligence does not require proof that the defendant intended to cause harm.

## Authority

***Watson v. Kingdom of Saudi Arabia*, 159 F.4th 1234, 1257 (11th Cir. 2025) (defining gross negligence under Florida law for compensatory damages) (citing *Carraway v. Revell*, 116 So. 2d 16, 22–23 (Fla. 1959) and *Elec. Boat Corp. v. Fallen*, 343 So. 3d 1218, 1220 (Fla. 5th DCA 2022)).**

FMS objects to this instruction because Plaintiff has no gross negligence claim against it.  FMS further objects because Florida does not recognize a standalone gross negligence claim.  *Robinson v. 3M Company*, 2025 WL 2061706, at *16 (M.D. Fla. July 23, 2025).

**Joint Instruction No. 24 - Legal Cause Generally**

Negligence is a legal cause of loss, injury, or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury, or damage, so that it can reasonably be said that, but for the negligence, the loss, injury, or damage would not have occurred.

**<u>Authority</u>**

**Fla. Standard Jury Instr. (Civil) 402.6(a) (Nov. 2025)**

**Joint Instruction No. 25 - Concurring Cause**

To be regarded as a legal cause of loss, injury, or damage negligence need not be the only cause. Negligence may be a legal cause of loss, injury, or damage even though it operates in combination with the act of another or some other cause if the negligence contributes substantially to producing such loss, injury, or damage.

**Authority**

**Fla. Standard Jury Instr. (Civil) 402.6(b) (Nov. 2025)**

**Plaintiff's Proposed Instruction No. 26 – PRELIMINARY ISSUES – VICARIOUS LIABILITY – Apparent Agency**

On Brian Moreau's claim against Feld Motor Sports, Inc., there is a preliminary issue for you to decide. That issue is whether The Medic Rig's personnel—Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, and Scott Combs—were apparent agents of Feld, and were acting within the scope of that apparent authority at the time and place of the incident in this case.

Generally, a corporation is not responsible for the negligence of an independent contractor or of the agents or employees of an independent contractor. An independent contractor is a person or business engaged by another to perform specific work according to their own methods and whose methods of performing the work are not controlled by the corporation engaging them and are not subject to that corporation's right of control. Whether a person or business is an independent contractor is to be determined on the basis of all of the circumstances of the parties' dealings with each other and not on the basis of the labels used by them.

A corporation is, however, responsible for the negligence of an independent contractor if the independent contractor is an apparent agent of that corporation.

The Medic Rig's medical personnel—Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, and Scott Combs—are apparent agents if, by words or conduct, Feld Motor Sports, Inc. caused or allowed Brian Moreau to believe that they were agents of and had authority to act for Feld. A corporation is responsible for the negligence

43

of its independent contractor if, at the time and place of the incident, the independent contractor was an apparent agent of the corporation and was acting within the scope of that apparent authority.

**Authority**

**Fla. Standard Jury Instr. (Civil) 402.9(a)(1) (Nov. 2025) (modified)**

FMS objects to the sequencing of this instruction, as proposed by Plaintiff, because Florida law requires a direct finding of liability as a prerequisite to vicarious liability. *See Christrikes Custom Motorcycles, Inc. v. Teutul*, 2016 WL 3406391, at *4 (M.D. Fla. June 21, 2016) (holding that for vicarious liability "there must be an underlying claim through which the plaintiff can hold one of the defendants liable"); *see also Fontanez v. Lamberti*, 2011 WL 4499016, at *15 (S.D. Fla. Sept. 27, 2011) ("Of paramount importance in finding vicarious liability is that the underlying alleged tortfeasor actually be found liable of tortious acts. If the alleged tortfeasor is not liable, no liability can be imputed upwards."). FMS further objects to Plaintiff's instruction that apparent agency is a "preliminary issue" to be decided before the jury makes findings on the direct claims of liability. As such, FMS submits that the jury should first be instructed on the direct liability claims and the principles of law that control them, before the Court instructs the jury on vicarious liability and Plaintiff's indirect theories of liability.

FMS further objects that this revised instruction eliminates two of the three elements required for a finding of apparent agency under Florda law; namely, Plaintiff's "reliance on that representation" and his "change in position . . . in

44

reliance on the representation." *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995).

FMS further objects that this revised instruction purports to impose liability under an apparent agency theory on FMS if FMS merely "allowed" Plaintiff to believe that the TMR Defendants were its apparent agents. Plaintiff's "subjective understanding[s]" and uncorrected assumptions cannot create an apparent agency relationship, again as a matter of law. *See Izquierdo v. Hialeah Hosp., Inc.*, 709 So. 2d 187, 188 (Fla 3d DCA 1998) (rejecting argument that apparent agency created where plaintiff was not told doctor was not hospital's agent); *Carroll v. Diamond Resorts Mgmt. Inc.*, 2015 WL 11202373, at *8 (S.D. Fla. Oct. 19, 2015) (holding that an alleged principal's failure to affirmatively disclaim or disavow an agency relationship cannot support a vicarious claim). "Only [FMS's] actions could have created this apparent authority." *Izquierdo*, 709 So. 2d at 188.

**Defendants' Proposed Instruction No. 27 - Apparent Agents**

A person may be an apparent agent of another if that other by words or conduct caused a third-party to believe that the person was an agent of and had authority to act for the other and if the third-party justifiably relied upon that belief in dealing with the person as the agent of the other. A person is responsible for the negligence of an apparent agent occurring while the apparent agent is acting within the scope of his or her apparent authority.

**Authority**

**Fla. Standard Jury Instruction 401.14(b)(2)**

This is not the standard apparent agency instruction for medical malpractice cases approved.  Plaintiff objects to deviating from the Florida Supreme Court's standard jury instructions, which lay out a step-by-step framework for instructing the jury on vicarious liability as a preliminary issue and apparent agency in the context of medical malpractice. *See* Fla. Standard Jury Instr. (Civil) 402.9 (Nov. 2025).

**Defendants' Proposed Instruction No. 28 - Assumptions Insufficient**

A person's subjective understandings or assumptions are not enough to create the appearance of agency.  The principal must create the appearance of an agency relationship through words or conduct.

**<u>Authority</u>**

***Izquierdo v. Hialeah Hosp. Inc.*, 709 So. 2d 187, 188 (Fla. 3d DCA 1986); *Carroll v. Diamond Resorts Mgmt. Inc.*, 2015 WL 11202373, at \*8 (S.D. Fla. Oct. 19, 2015)**

Plaintiff objects. This instruction is an incomplete and argumentative statement of law on apparent agency. It lacks the necessary context and balance provided by the standard jury instructions, which fully define apparent agency in the context of medical malpractice. *See* Fla. Standard Jury Instr. 402.9(a)(1) (Nov. 2025).

**Defendants' Proposed Instruction No. 29 - Logos and Branding Insufficient**

The use of the principal's branding or logo is insufficient, on its own, to create the appearance of an agency relationship necessary to establish apparent agency.

**<u>Authority</u>**

***Mobile Oil Co. v. Bransford*, 648 So. 2d 119, 120−21 (Fla. 1995); *Ferrer v. Jewelry Repair Enterprises, Inc.*, 310 So. 3d 428, 429 (Fla. 4th DCA 2021); *Chinetti v. Armotrading II, M.D.*, 2018 WL 6932924, at \*2 (Fla. 9th Cir. Ct. Aug. 15, 2018).**

Plaintiff objects. This instruction is an improper comment on the evidence and is argumentative, instructing the jury on the weight of specific facts. It is an incomplete and misleading statement of law on apparent agency. It also lacks the necessary context and balance provided by the standard jury instructions, which fully define apparent agency in the context of medical malpractice. *See* Fla. Standard Jury Instr. 402.9(a)(1) (Nov. 2025).

**Defendants' Proposed Instruction No. 30 - Justifiable Reliance**

To show that a party justifiably relied on a representation of a purported principle, a party must show that he has changed his position based on that representation and show that he was harmed.

## Authority

***Vermeulen v. Worldwide Holidays, Inc.*, 922 So. 2d 271, 275 (Fla. 3d DCA 2006); *Johns Hopkins All Children's Hosp. v. Kowalski*, — So. 3d — , 2025 WL 3019111, at \*15 (Fla. 2d DCA Oct. 29, 2025); *Moore v. Toub*, 2023 WL 12023737, at \*2 (Fla. 7th Cir. Ct. Dec. 13, 2023)**

Plaintiff objects. This instruction is an incomplete and argumentative statement of law on apparent agency. It lacks the necessary context and balance provided by the standard jury instructions, which fully define apparent agency in the context of medical malpractice. *See* Fla. Standard Jury Instr. 402.9(a)(1) (Nov. 2025).

**Plaintiff's Proposed Instruction No. 31 – PRELIMINARY ISSUE –
VICARIOUS LIABILITY – Inherently Dangerous Activities**

There is another preliminary issue for you to decide on Brian Moreau's claim
against Feld Motor Sports, Inc.

That issue is whether The Medic Rig, LLC's work of providing emergency
medical services to injured riders on an active Supercross racetrack was an
inherently dangerous activity.

A party who engages an independent contractor to do work involving a
special danger to others, which the party knows to be inherent in or normal to the
work, is subject to liability for physical harm caused to such others by the
contractor's failure to take reasonable precautions against such danger.

An activity is inherently dangerous if the danger inheres in the performance
of the work, such that in the ordinary course of events its performance would
probably, and not merely possibly, cause injury if proper precautions were not
taken.

**Authority**

**Fla. Standard Jury Instr. (Civil) (Nov. 2025), Notes on Use for
401.14b(1) and (2) at p. 91, ¶2 (citing *Florida Power & Light Co. v. Price*,
170 So. 2d 293 (Fla. 1964)); *see also Nat'l R.R. Passenger Corp. v.
Rountree Transp. & Rigging, Inc.*, 286 F.3d 1233, 1253-54 (11th Cir.
2002) (principal "can be held vicariously liable" for a contractor's
negligence under inherently dangerous activities doctrine under
Florida law); *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*,
908 So.2d 459, 468 (Fla. 2005) (principal "was held vicariously liable
for [contractor's subcontractor's] negligence under the inherently
dangerous activities doctrine").**

50

FMS objects to this instruction because Plaintiff purports to assert a claim under the IDA Doctrine.  Plaintiff brought only a vicarious liability claim against FMS against FMS in the TAC and dropped his direct claim against FMS in doing so.  See ECF No. 316 (detailing Plaintiff's shifting theories of liability against FMS throughout the case); *see also* ECF No. 330 (further detailing Plaintiff's abandonment of his respondeat superior and actual agency theories of vicarious liability against FMS).  Plaintiff's request for this instruction on this new theory attempts to again amend his pleading (for the fifth time) and revert to a distinctly direct liability claim, now under the IDA Doctrine.  *See Armiger v. Associated Outdoor Clubs, Inc.*, 48 So. 3d 864, 874 (Fla. 2d DCA 2010) (explaining that the "concepts of nondelegable duty and vicarious liability are frequently confused and conflated," with liability for the breach of a nondelegable duty aris[ing] from direct—instead of imputed—liability").

Further, the Court's ruling on Plaintiff's motion for summary judgment indicates that the IDA Doctrine does not apply to these circumstances: the Court explained that "Feld and The Medic Rig employed the medical defendants to do the medical work for the racers at the Supercross event, and medical treatment—even emergency medical treatment—does not appear to be inherently dangerous even if the Supercross event itself may be."  ECF No. 400 at 12.  Indeed, Plaintiff's claim under the IDA Doctrine is foreclosed by Florida law, which does not recognize a common-law "non-delegable duty . . . to provide non-negligent care." *Tabraue v. Doctors Hosp., Inc.*, 272 So. 3d 468, 472 (Fla. 3d DCA 2019); *see also*

*Moore v. Toub*, 2023 WL 12023737, at *2 (Fla. 7th Cir. Ct. Dec. 13, 2023) ("Florida common law does not impose a non-delegable duty on hospitals to provide non-negligent physician services.") (citing *Pope*, 939 So. 2d at 187).

**Plaintiff's Proposed Instruction No. 32 – BURDEN OF PROOF ON PRELIMINARY ISSUES**

If a preponderance of the evidence does not support Brian Moreau's claim on either of the following issues:

(A) that The Medic Rig, LLC's personnel—Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, and Scott Combs—were apparent agents of Feld Motor Sports, Inc. and were acting within the scope of that apparent authority at the time and place of the incident; <u>or</u>

(B) that The Medic Rig, LLC's work of providing emergency medical services to injured riders on an active Supercross racetrack was an inherently dangerous activity;

then your verdict on Brian Moreau's claim against Feld Motor Sports, Inc. should be for Feld Motor Sports, Inc.

If, however, a preponderance of the evidence supports Brian Moreau's claim on either of these issues, then you shall consider the other issues on Brian Moreau's claim against Feld Motor Sports, Inc.

Regardless of your findings on these issues, you must also consider Brian Moreau's claims against The Medic Rig, LLC, Dr. Bodnar, Dr. Kennedye, Amy Metiva, and Scott Combs.

<u>**Authority**</u>

**Fla. Standard Jury Instr. (Civil) 402.10 (Nov. 2025) (modified)**

FMS objects to this proposed instruction on the basis that the Eleventh Circuit Pattern Jury Instructions provide the appropriate instructions on the burdens of proof in this case, and this instruction is duplicative of and in conflict with those instructions. Eleventh Cir. Pattern Jury Instr. (Civil) 1.1; Eleventh Cir. Pattern Jury Instr. (Civil) 3.7.1, both of which are joint instructions. This proposed instruction does not, for example, make clear that Brian Moreau bears the burden of proof on both his direct and indirect claims.

FMS objects to this instruction because Plaintiff purports to assert a claim under the IDA Doctrine. Plaintiff brought only a vicarious liability claim against FMS against FMS in the TAC and dropped his direct claim against FMS in doing so. *See* ECF No. 316 (detailing Plaintiff's shifting theories of liability against FMS throughout the case); *see also* ECF No. 330 (further detailing Plaintiff's abandonment of his respondeat superior and actual agency theories of vicarious liability against FMS). Plaintiff's request for this instruction on this new theory attempts to again amend his pleading (for the fifth time) and revert to a distinctly direct liability claim, now under the IDA Doctrine. *See Armiger v. Associated Outdoor Clubs, Inc.*, 48 So. 3d 864, 874 (Fla. 2d DCA 2010) (explaining that the "concepts of nondelegable duty and vicarious liability are frequently confused and conflated," with liability for the breach of a nondelegable duty aris[ing] from direct—instead of imputed—liability").

Further, the Court's ruling on Plaintiff's motion for summary judgment indicates that the IDA Doctrine does not apply to these circumstances: the Court

explained that "Feld and The Medic Rig employed the medical defendants to do the medical work for the racers at the Supercross event, and medical treatment— even emergency medical treatment—does not appear to be inherently dangerous even if the Supercross event itself may be."  ECF No. 400 at 12.  Indeed, Plaintiff's claim under the IDA Doctrine is foreclosed by Florida law, which does not recognize a common-law "non-delegable duty . . . to provide non-negligent care." *Tabraue v. Doctors Hosp., Inc.*, 272 So. 3d 468, 472 (Fla. 3d DCA 2019); *see also Moore v. Toub*, 2023 WL 12023737, at *2 (Fla. 7th Cir. Ct. Dec. 13, 2023) ("Florida common law does not impose a non-delegable duty on hospitals to provide non-negligent physician services.") (citing *Pope*, 939 So. 2d at 187).

**Plaintiff's Proposed Instruction No. 33 – ISSUES ON MAIN CLAIMS**

The next issues you must decide on Brian Moreau's claims against Defendants are whether any of the following Defendants—The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, or Scott Combs—was grossly negligent in providing, directing, or supervising medical care to Brian Moreau, and, if so, whether that gross negligence was a legal cause of loss, injury, or damage to Brian Moreau.

**<u>Authority</u>**

**Fla. Standard Jury Instr. (Civil) 402.11 (Nov. 2025) (modified)**

FMS objects to the sequencing of the instructions, as proposed by Plaintiff, because Florida law requires a direct finding of liability as a prerequisite to vicarious liability. *See Christrikes Custom Motorcycles, Inc. v. Teutul*, 2016 WL 3406391, at *4 (M.D. Fla. June 21, 2016) (holding that for vicarious liability "there must be an underlying claim through which the plaintiff can hold one of the defendants liable"); *see also Fontanez v. Lamberti*, 2011 WL 4499016, at *15 (S.D. Fla. Sept. 27, 2011) ("Of paramount importance in finding vicarious liability is that the underlying alleged tortfeasor actually be found liable of tortious acts.  If the alleged tortfeasor is not liable, no liability can be imputed upwards.").  As such, FMS submits that the jury should first be instructed on the direct liability claims and the principles of law that control them, before the Court instructs the jury on vicarious liability and Plaintiff's indirect theories of liability.

**Defendants' Proposed Instruction No. 34 - Plaintiff's Vicarious or Indirect Claims**

For Plaintiff's indirect claims, you must decide whether Plaintiff has proved by a preponderance of the evidence that Feld Motor Sports or The Medic Rig are vicariously or indirectly liable for the negligence of others.

A person can be indirectly liable for the negligence of another if that person was their apparent agent.

**Authority**

**Fla. Standard Jury Instr. (Civil) 401.14 (modified)**

Plaintiff objects to deviating from the Florida Supreme Court's standard step-by-step framework for instructing the jury in medical malpractice cases involving claims of vicarious liability. *See* Fla. Standard Jury Instr. 402.9 to 402.15 (Nov. 2025).

**Defendants' Instruction No. 35 - Employees and Actual Agents**

An agent is a person who is employed to act for another, and whose actions are controlled by his or her principal or are subject to his or her principal's right of control. A principal is responsible for the negligence of its agent or employee if such negligence occurs while the agent or employee is performing services which he or she was employed to perform or while the agent or employee is acting at least in part because of a desire to serve his or her employer and is doing something that is reasonably incidental to his or her employment or something the doing of which was reasonably foreseeable and reasonably to be expected of persons similarly employed.

But a person is not responsible for the negligence of an independent contractor or of the agents or employees of an independent contractor. An independent contractor is a person or business who is engaged by another to perform specific work according to his, her, or its own methods and whose methods of performing the work are not controlled by the person engaging him, her, or it and are not subject to that person's right of control.

**Authority**

**Fla. Standard Jury Instruction 401.14(b)(1)**

Plaintiff objects to a standalone instruction that deviates from the standard jury instructions' step-by-step framework for instructing the jury on vicarious liability as a preliminary issue. Furthermore, Plaintiff is not seeking to hold FMS vicariously liable under an actual agency theory, so this instruction is misleading.

It also lacks the necessary context of the exceptions to the independent contractor

rule, such as apparent agency and the inherently dangerous activities doctrine.

**Plaintiff's Proposed Instruction No. 36 – BURDEN OF PROOF ON MAIN CLAIMS**

If a preponderance of the evidence does not support one or more of Brian Moreau's claims against The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, or Scott Combs, then your verdict should be for that Defendant on those claims.

However, if a preponderance of the evidence supports one or more of Brian Moreau's claims, then your verdict should be for Brian Moreau and against that Defendant on those claims.

**Authority**

**Fla. Standard Jury Instr. (Civil) 402.13 (Nov. 2025) (modified)**

FMS and TMR Defendants object to this proposed instruction on the basis that the Eleventh Circuit Pattern Jury Instructions provide the appropriate instructions on the burdens of proof in this case, and this instruction is duplicative of and in conflict with those instructions. Eleventh Cir. Pattern Jury Instr. (Civil) 1.1; Eleventh Cir. Pattern Jury Instr. (Civil) 3.7.1, both of which are joint instructions. This proposed instruction does not, for example, make clear that Brian Moreau bears the burden of proof on both his direct and indirect claims.

**Defendants' Proposed Instruction No. 37 - Good Samaritan Immunity**

Another affirmative defense that has been raised is known as "Good Samaritan Immunity." The issue for you to decide regarding this defense is whether Dr. John Bodnar, Dr. James Kennedye, Ms. Amy Metiva, and/or Mr. Scott Combs gratuitously and in good faith rendered emergency care or treatment in direct response to an emergency situation at the scene of an emergency outside of a hospital, doctor's office, or other place having proper medical equipment, without objection from Brian Moreau.

If a preponderance of the evidence supports that Dr. Bodnar, Dr. Kennedye, Ms. Metiva, and/or Mr. Combs gratuitously and in good faith rendered emergency care or treatment in direct response to an emergency situation at the scene of an emergency outside of a hospital, doctor's office, or other place having proper medical equipment, without objection from Brian Moreau, the next issue for you to decide is whether Dr. Bodnar, Dr. Kennedye, Ms. Metiva, and/or Mr. Combs acted as ordinary reasonably prudent persons would have acted under the same or similar circumstances; and, if not, whether their actions were a legal cause of any injuries sustained by Brian Moreau.

If a preponderance of the evidence does not support that Dr. Bodnar, Dr. Kennedye, Ms. Metiva, and/or Mr. Combs gratuitously and in good faith rendered emergency care or treatment in direct response to an emergency situation at the scene of an emergency outside of a hospital, doctor's office, or other place having proper medical equipment, without objection from Brian Moreau, then you shall

61

proceed to decide whether Dr. Bodnar, Dr. Kennedye, Ms. Metiva, and/or Mr. Combs were grossly negligent in their care and treatment of Brian Moreau.

**Authority**

**Fla. Standard Jury Instr. 402.16a (modified); Section 768.13(2)(a), Fla. Stat. (2024).**

Plaintiff objects because this defense is moot. Section 768.13(2)(a) only applies where, among other things, "*the person acts as an ordinary reasonably prudent person would have acted under the same or similar circumstances.*" § 768.13(2)(a), Fla. Stat. (emphasis added). Given Plaintiff can only prevail if the jury finds gross negligence, this affirmative defense is moot.

Plaintiff also objects to calling this defense "Good Samaritan Immunity" as misleading and prejudicial.

**Plaintiff's Proposed Instruction No. 38 – COMPENSATORY DAMAGES**

If a preponderance of the evidence supports one or more of Brian Moreau's claims, you should determine and write on the verdict form, in dollars, the total amount of loss, injury, or damage which a preponderance of the evidence shows will fairly and adequately compensate him for his loss, injury, or damage, including any damages that Plaintiff is reasonably certain to incur or experience in the future. You shall consider the following elements:

Any bodily injury sustained by Brian Moreau and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, or loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future. There is no exact standard for measuring such damage. The amount should be fair and just in the light of the evidence.

**<u>Authority</u>**

**Fla. Standard Jury Instr. (Civil) 501.1(b) and 501.2(a) (Nov. 2025)**

**Defendants' Proposed Instruction No. 39 - Compensatory Damages**

If you find that Plaintiff has proved his claim against one or more of the Defendants, then you should determine, in dollars, the total amount which you find by a preponderance of the evidence will fairly and adequately compensate him for his loss, injury, or damage, including any damages that Plaintiff is reasonably certain to incur or experience in the future. You shall consider the following elements:

**<u>Authority</u>**

**Fla. Standard Jury Instr. (Civil) 501.1(b)**

Plaintiff objects. Defendants have omitted the following *italicized* language from the standard instruction in 501.1(b): "[*I]f the greater weight of the evidence supports (claimant's) claim*, you should determine *and write on the verdict form*, in dollars, the total amount *of [loss] [injury] [or] [damage]* which the greater weight of the evidence shows will fairly and adequately compensate [him] for [his] [loss] [injury] [or] [damage], including any damages that (claimant) is reasonably certain to incur or experience in the future." Fla. Standard Jury Instr. (Civil) 501.1(b) (Nov. 2025).

**Defendants' Proposed Instruction No. 40 - Elements of Damages**

Any bodily injury sustained by Plaintiff and any resulting pain and suffering, disability or physical impairment, mental anguish, inconvenience, or loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future. There is no exact standard for measuring such damage. The amount should be fair and just in the light of the evidence.

**Authority**

**Fla. Standard Jury Instr. (Civil) 501.2(a)**

Plaintiff objects. Defendants have omitted "disfigurement" as an element of damages. *See* Fla. Standard Jury Instr. (Civil) 501.2(a) (Nov. 2025).

**Joint Proposed Instruction No. 41 - Comparative Negligence and Multiple Defendants**

In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of Plaintiff or Defendants. The Court in entering judgment will make any appropriate reductions.

**Authority**

**Fla. Standard Jury Instr. (Civil) 501.4 (Nov. 2025)**

**Plaintiff's Proposed Instruction No. 42 – Other Contributing Causes of Damages – Aggravation of Existing Physical Defect**

A medical provider may be legally responsible for injuries or conditions that are caused or worsened by medical treatment, even if the plaintiff's original injury was caused by his own conduct.

If you find that any Defendant caused a bodily injury, and that the injury resulted in an aggravation of Brian Moreau's existing physical defect from his crash, you should attempt to decide what portion of his condition resulted from the aggravation.  If you can make that determination, then you should award only those damages resulting from the aggravation. However, if you cannot make that determination, or if it cannot be said that the condition would have existed apart from the injury, then you should award damages for the entire condition suffered by Brian Moreau.

## Authority

**Fla. Standard Jury Instr. (Civil) 501.5(a) (Nov. 2025) (modified); Order on Pl.'s MIL [DE 401 at 2] ("A medical provider may be legally responsible for injuries or conditions that are caused or worsened by medical treatment, even if Plaintiff's original injury was caused by Plaintiff's own conduct.").**

FMS and the TMR Defendants object to Plaintiff's addition of the first sentence of this jury instruction that "[a] medical provider may be legally responsible for injuries or conditions that are caused or worsened by medical treatment, even if the plaintiff's original injury was caused by his own conduct." This sentence is redundant of the remainder of the jury instruction.

**Defendants' Proposed Instruction No. 43 - Other Contributing Causes
of Damages – Aggravation or Activation of Existing Injury**

You have heard that Plaintiff may have been injured in two events. If you
decide that Plaintiff was injured in an accident, whether or not the Plaintiff was
negligent, and then was later further injured by the negligence of any Defendant,
then you should try to separate the damages caused by the two events and award
Plaintiff money only for those damages caused by the negligent Defendant or
Defendants. However, if you cannot separate some or all of the damages, you must
award Plaintiff any damages that you cannot separate as if they were all caused by
the negligent Defendants.

**Authority**

**Fla. Standard Jury Instr. (Civil) 501.5(a) (modified)**

Plaintiff objects. This is a substantially modified version of instruction
501.5(b) for subsequent injuries/multiple events—it is not the instruction for
aggravation of injuries. As the Notes on Use for 501.5(b) make clear, this
instruction "addresses the situation occurring in *Gross v. Lyons*, 763 So. 2d 276
(Fla. 2000). It is not intended to address other situations." *See* Notes on Use for
501.5(b). In *Gross*, the plaintiff was in a rear-end collision, resulting in back
injuries. 763 So. 2d at 277. Three months later, she had a second car accident. *Id.*
She claimed that she did not suffer any additional injuries from the second accident
and that her damages were from the first accident. *Id*. That is not the case here.

**Plaintiff's Proposed Instruction No. 44 - Mortality Tables**

If you find by a preponderance of the evidence that Brian Moreau has been permanently injured, you may consider his life expectancy. The mortality tables received in evidence may be considered in determining how long Plaintiff may be expected to live. Mortality tables are not binding on you but may be considered together with other evidence in the case bearing on Brian Moreau's health, age and physical condition, before and after the injury, in determining the probable length of his life.

**Authority**

**Fla. Standard Jury Instr. (Civil) 501.6 (Nov. 2025)**

FMS and the TMR Defendants object to this instruction. Plaintiff has affirmatively withdrawn his life care planning experts and has proposed no other avenue for introducing the mortality tables referenced in this instruction into evidence.

**Plaintiff's Proposed Instruction No. 45 - Collateral Source Rule (If Evidence Inadvertently Admitted or Inferred)**

You should not reduce the amount of compensation to which Brian Moreau is otherwise entitled on account of [wages] [medical insurance payments] [or other benefits (specify)] which the evidence shows Brian Moreau received from his [employer], [insurance company], [or some other source].  The court will reduce as necessary the amount of compensation to which Brian Moreau is entitled on account of any such payments.

**<u>Authority</u>**

**Fla. Standard Jury Instr. (Civil) 501.8(a) (Nov. 2025); *see also* Notes on Use for 501.8(1)**

**Joint Instruction No. 46 - Liability of Multiple Tortfeasors –
Comparative Negligence**

Even if you decide that more than one of the Defendants were grossly
negligent, you should determine Brian Moreau's damages in a single total amount,
and write that amount, in dollars, on the verdict form.

**<u>Authority</u>**

**Fla. Standard Jury Instr. (Civil) 501.9(a) (Nov. 2025)**

**Plaintiff's Proposed Instruction No. 47 – PUNITIVE DAMAGES – Non-Bifurcated Procedure**

There is an additional claim in this case that you must decide. If you find for Brian Moreau and against Defendant(s), you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to Feld Motor Sports, Inc. and as a deterrent to others.

**Authority**

**Fla. Standard Jury Instr. (Civil) 503.2(a) (Nov. 2025)**

FMS objects to this instruction because the issue of punitive damages should never be submitted to the jury. Plaintiff has not—and cannot—make his required showing under Florida law. *See Fla. Power & Light Co. v. Dominguez*, 295 So. 3d 1202, 1206 (Fla. Dist. Ct. App. 2019) (collecting cases reversing awards of punitive damages because a party had not shown a "willful and malicious action" that is "equivalent to criminal manslaughter"). Indeed, Florida's courts have repeatedly emphasized that "ordinary breaches of the professional standards of care" are categorically incapable of sustaining a punitive damages award. *Duff v. Racine*, — So. 3d — , 2025 WL 1646730, at *3 (Fla. 4th DCA June 11, 2025); *see Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 706 (Fla. 4th DCA 2023) (evidence showing that providers placed the decedent on a floor level with fewer observation checks, failed to attend to the decedent during various emergency calls, and began intubation without proper supervision, causing the delayed intubation that led to the decedent's death, failed to show more than an

ordinary breach of the standard of professional care and therefore could not sustain a request for punitive damages).

FMS further objects to this instruction because Plaintiff cannot show by clear and convincing evidence that that the officers, directors, or managers of FMS condoned, ratified, or consented to the allegedly negligent conduct of its co-defendants—the only theory on which he has asserted a punitive damages claim against FMS. ECF No. 330 at 6-7; *see also* Fla. Stat. § 768.72(3)(b). Critically, "ratification after the fact" is not sufficient for the imposition of corporate punitive damages. *Johns Hopkins All Children's Hosp., Inc. v. Kowalski*, — So. 3d — , 2025 WL 3019111, at *15 (Fla. 2d DCA Oct. 29, 2025); *see Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 707 (Fla. 4th DCA 2023) (reversing finding of ratification based exclusively on post-tort conduct and observing that "actions taken after the happening of a tortious act are not admissible on the issue of punitive damages, nor can those subsequent actions form the basis for bringing such a damage claim").

FMS further objects to this instruction to the extent it fails to explain to the jurors that they can only begin to assess and/or analyze punitive damages upon a finding that one or more of the TMR Defendants was an apparent agent of FMS.

**Plaintiff's Proposed Instruction No. 48 - Liability for acts of agent where agent is not being sued for punitive damages**

Brian Moreau claims that punitive damages should be awarded against Feld Motor Sports, Inc. for the conduct of The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, and Scott Combs in removing Brian Moreau from the racetrack and sitting him upright on the back of the medical mule without any spinal precautions, and delaying immobilization of his spine—despite visible signs and repeated audible complaints of a potential spinal cord injury. Punitive damages are warranted if you find by clear and convincing evidence that The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, or Scott Combs was personally guilty of gross negligence, which was a substantial cause of loss, injury, or damage to Brian Moreau and that:

(A). Feld Motor Sports, Inc. actively and knowingly participated in such conduct of The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, or Scott Combs; or

(B). the officers, directors, or managers of Feld Motor Sports, Inc. knowingly condoned, ratified, or consented to such conduct of The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, or Scott Combs; or

(C). Feld Motor Sports, Inc. engaged in conduct that constituted gross negligence and that contributed to the loss, damage, or injury to Plaintiff.

Under those circumstances you may, in your discretion, award punitive damages against Feld Motor Sports, Inc. If clear and convincing evidence does not show such conduct by The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, or Scott Combs, punitive damages are not warranted against Feld Motor Sports, Inc.

"Gross negligence" means that the conduct of The Medic Rig, LLC, Dr. John Bodnar, Dr. James Kennedye, Amy Metiva, or Scott Combs was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

"Clear and convincing evidence" differs from the "preponderance of the evidence" in that it is more compelling and persuasive. As I have already instructed you, "preponderance of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case. "Clear and convincing evidence" is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.

**Authority**

**Fla. Standard Jury Instr. (Civil) 503.2(b)(4) (Nov. 2025) (modified to include alleged punitive conduct and change "greater weight of the evidence" to "preponderance of the evidence").**

FMS objects to this instruction because the issue of punitive damages should never be submitted to the jury.  Plaintiff has not—and cannot—make his required showing under Florida law.  *See* Fla. Power & Light Co. v. Dominguez, 295 So. 3d 1202, 1206 (Fla. Dist. Ct. App. 2019) (collecting cases reversing awards of punitive

damages because a party had not shown a "willful and malicious action" that is "equivalent to criminal manslaughter"). Indeed, Florida's courts have repeatedly emphasized that "ordinary breaches of the professional standards of care" are categorically incapable of sustaining a punitive damages award. *Duff v. Racine*, — So. 3d — , 2025 WL 1646730, at *3 (Fla. 4th DCA June 11, 2025); s*ee Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 706 (Fla. 4th DCA 2023) (evidence showing that providers placed the decedent on a floor level with fewer observation checks, failed to attend to the decedent during various emergency calls, and began intubation without proper supervision, causing the delayed intubation that led to the decedent's death, failed to show more than an ordinary breach of the standard of professional care and therefore could not sustain a request for punitive damages).

FMS further objects to this instruction because Plaintiff cannot show by clear and convincing evidence that that the officers, directors, or managers of FMS condoned, ratified, or consented to the allegedly negligent conduct of its co-defendants. ECF No. 330 at 6-7; see also Fla. Stat. § 768.72(3)(b). Critically, "ratification after the fact" is not sufficient for the imposition of corporate punitive damages. *Johns Hopkins All Children's Hosp., Inc. v. Kowalski*, — So. 3d — , 2025 WL 3019111, at *15 (Fla. 2d DCA Oct. 29, 2025); *see Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 707 (Fla. 4th DCA 2023) (reversing finding of ratification based exclusively on post-tort conduct and observing that "actions taken after the happening of a tortious act are not admissible on the issue

of punitive damages, nor can those subsequent actions form the basis for bringing such a damage claim").

FMS further objects to this instruction to the extent it fails to make clear that Plaintiff must also prove, and the jury must find by clear and convincing evidence, that one or more of the TMR Defendants was the apparent agent of FMS to obtain a favorable verdict on punitive damages against FMS. *See* Fla. Stat. § 768.72(3)(a), (b), (c); Fla. Stat. § 768.725.

FMS further objects to this instruction because Plaintiff has not alleged that FMS actively and knowingly participated in the alleged grossly negligence conduct of its co-defendants or that FMS itself engaged in conduct that constituted gross negligence and that contributed to Plaintiff's injury. *See* ECF No. 319 at 18-20; *see also* Fla. Stat. § 768.72(3)(a), (c).

**Plaintiff's Proposed Instruction No. 49 - Closing Punitive Damage
Instruction**

If you decide that punitive damages are warranted against Feld Motor
Sports, Inc., then you must decide the amount of punitive damages, if any, to be
assessed as punishment against Feld Motor Sports, Inc. and as a deterrent to
others. This amount would be in addition to the compensatory damages you have
previously awarded. In making this determination, you should decide any disputed
factual issues by the preponderance of the evidence. "Preponderance of the
evidence" means the more persuasive and convincing force and effect of the entire
evidence in the case.

In determining the amount of punitive damages, if any, to be assessed, you
should consider the following:

(1).   the nature, extent and degree of misconduct and the related
circumstances, including the following:

(A).   whether the wrongful conduct was motivated solely by
unreasonable financial gain;

(B).   whether the unreasonably dangerous nature of the conduct,
together with the high likelihood of injury resulting from the conduct,
was actually known by the managing agent, director, officer, or other
person responsible for making policy decisions on behalf of Feld
Motor Sports, Inc.;

78

(C).    whether, at the time of loss, injury, or damage, the managing

agent, director, officer, or other person responsible for making policy

decisions on behalf of Feld Motor Sports, Inc. had a specific intent to

harm Brian Moreau and the conduct of the managing agent, director,

officer, or other person responsible for making policy decisions on

behalf of Feld Motor Sports, Inc. did in fact harm Brian Moreau, [and]

(2).    the financial resources of Feld Motor Sports, Inc.

[However, you may not award an amount that would financially destroy Feld

Motor Sports, Inc.]*

You may in your discretion decline to assess punitive damages.

## Authority

**Fla. Standard Jury Instr. (Civil) 503.2(c) (Nov. 2025) ) (modified to change references to "greater weight of the evidence" to "preponderance of the evidence").**

FMS objects to this instruction because the issue of punitive damages should

never be submitted to the jury.  Plaintiff has not—and cannot—make his required

showing under Florida law.  *See Fla. Power & Light Co. v. Dominguez*, 295 So. 3d

1202, 1206 (Fla. Dist. Ct. App. 2019) (collecting cases reversing awards of punitive

damages because a party had not shown a "willful and malicious action" that is

"equivalent to criminal manslaughter").  Indeed, Florida's courts have repeatedly

emphasized that "ordinary breaches of the professional standards of care" are

categorically incapable of sustaining a punitive damages award.  *Duff v. Racine*, —

So. 3d — , 2025 WL 1646730, at *3 (Fla. 4th DCA June 11, 2025); *see Cleveland*

*Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 706 (Fla. 4th
DCA 2023) (evidence showing that providers placed the decedent on a floor level
with fewer observation checks, failed to attend to the decedent during various
emergency calls, and began intubation without proper supervision, causing the
delayed intubation that led to the decedent's death, failed to show more than an
ordinary breach of the standard of professional care and therefore could not
sustain a request for punitive damages).

FMS further objects to this instruction because Plaintiff cannot show by
clear and convincing evidence that that the officers, directors, or managers of FMS
condoned, ratified, or consented to the allegedly negligent conduct of its co-
defendants. ECF No. 330 at 6-7; *see also* Fla. Stat. § 768.72(3)(b).  Critically,
"ratification after the fact" is not sufficient for the imposition of corporate punitive
damages. *Johns Hopkins All Children's Hosp., Inc. v. Kowalski*, — So. 3d — , 2025
WL 3019111, at *15 (Fla. 2d DCA Oct. 29, 2025); *see Cleveland Clinic Fla. Health
Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 707 (Fla. 4th DCA 2023) (reversing
finding of ratification based exclusively on post-tort conduct and observing that
"actions taken after the happening of a tortious act are not admissible on the issue
of punitive damages, nor can those subsequent actions form the basis for bringing
such a damage claim").

FMS further objects to this instruction because Plaintiff has not alleged and
cannot prove that FMS engaged in any "wrongful conduct" that "was motivated
solely by unreasonable financial gain."

80

FMS further objects to this instruction because Plaintiff has not alleged and cannot prove that "the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was actually known by the managing agent, director, officer, or other person responsible for making policy decisions on behalf of Feld Motor Sports." Plaintiff has proceeded through this case on only a ratification theory. Again, "ratification after the fact" is not sufficient for the imposition of corporate punitive damages. *Johns Hopkins All Children's Hosp., Inc. v. Kowalski*, — So. 3d — , 2025 WL 3019111, at *15 (Fla. 2d DCA Oct. 29, 2025).

FMS further objects to this instruction because Plaintiff has not alleged and cannot prove that "the managing agent, director, officer, or other person responsible for making policy decisions on behalf of Feld Motor Sports, Inc. had a specific intent to harm Brian Moreau and the conduct of the managing agent, director, officer, or other person responsible for making policy decisions on behalf of Feld Motor Sports, Inc. did in fact harm Brian Moreau." Plaintiff has proceeded through this case on only a ratification theory. Setting aside the legal insufficiency of "ratification after the fact," it is logically impossible for a "managing agent, director, officer, or other person responsible for making policy decisions on behalf of" FMS to have had a specific intent to harm Plaintiff on his own theory. It is likewise logically impossible for that same "managing agent, director, officer, or other person responsible for making policy decisions on behalf of" FMS to have in fact harmed the Plaintiff, again under Plaintiff's own theory.

**Joint Instruction No. 50 - Duty to Deliberate When Only the Plaintiff
Claims Damages**

Of course, the fact that I have given you instructions concerning the issue of
Plaintiff's damages should not be interpreted in any way as an indication that I
believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your
deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering
the evidence with the other jurors. So you must discuss the case with one another
and try to reach an agreement. While you're discussing the case, don't hesitate to
reexamine your own opinion and change your mind if you become convinced that
you were wrong. But don't give up your honest beliefs just because others think
differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your
only interest is to seek the truth from the evidence in the case.

**<u>Authority</u>**

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.8.1 (Sept. 2025)**

## Joint Instruction No. 51 - Election of Foreperson – Explanation of Verdict Form

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain Verdict Form]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

## Authority

**Eleventh Cir. Pattern Jury Instr. (Civil) 3.9 (Sept. 2025)**

Dated: January 4, 2026                    Respectfully submitted,

/s/*Mark A. Schweikert*                    /s/*Gretchen L. Jankowski*

Mark A. Schweikert | FBN 70555            Gretchen L. Jankowski
SCHWEIKERT LAW PLLC                       (admitted *pro hac vice*))
1111 Brickell Avenue, Suite 1550          Matthew C. Pilsner
Miami, Florida 33131                      (admitted *pro hac vice*)
Office: (305) 999-1906                    Buchanan Ingersoll & Rooney PC
Mobile: (305) 926-9452                    Union Trust Building
mark@schweikertlaw.com                    501 Grant Street, Suite 200
                                          Pittsburgh, PA 15219
*Lead Counsel for Plaintiff*              Phone: (412) 562-1417
*and*                                     gretchen.jankowski@bipc.com
Maria A. Dominguez | FBN 0510221          matthew.pilsner@bipc.com
Juan C. Ramos-Rosado | FBN 1002562
Javier F. Micheo Marcial | FBN 1009694    Richard G. Salazar | FBN 899615
DMR LAW LLC                               Buchanan Ingersoll & Rooney PC
1430 South Dixie Hwy., Suite 314          401 East Jackson St., Suite 2400
Coral Gables, FL 33146                    Tampa, FL 33602
Telephone: 305-548-8666                   Phone: (813) 222-8180
m.dominguez@dmrpr.com                     richard.salazar@bipc.com
j.ramos@dmrpr.com
j.micheo@dmrpr.com                        David L. Gordon
                                          (admitted *pro hac vice*)
                                          Buchanan Ingersoll & Rooney PC
                                          700 Alexander Park Suite 300
*Co-Counsel for Plaintiff*                Princeton, NJ 08540-6340
                                          Phone: (609) 987-5767
                                          david.gordon@bipc.com

                                          *Counsel for Feld Motor Sports, Inc.*

[*continued on next page*]

*/s/ David O. Doyle*

David O. Doyle, Jr., | FBN 0084964
Bethany W. Nduka | FBN 1022888
Pearson Doyle Mohre & Pastlis LLP
901 North Lake Destiny Rd., Ste. 305
Maitland, FL 32751
Phone: 407-904-4605
ddoyle@pdmplaw.com
bnduka@pdmplaw.com

*Counsel for John A. Bodnar, M.D., James Kennedye, M.D., Amy Metiva, The Medic Rig, LLC and Scott Combs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2026, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which has served a copy upon any counsel of record for any party who is authorized to receive this Court's notice of electronic filing.

By:    */s/Mark A. Schweikert*
Mark A.  Schweikert, Esq.