UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN MOREAU,

    Plaintiff,

v.                                                     Case No. 8:22-cv-1295-TPB-CPT

FELD ENTERTAINMENT, INC.,
FELD MOTOR SPORTS, INC.,
THE MEDIC RIG, LLC,
JOHN A. BODNAR, M.D.,
JAMES KENNEDYE, M.D.,
AMY METIVA, and SCOTT COMBS,

    Defendants.
_____/

## ORDER ON JURY INSTRUCTIONS

This Order memorializes certain oral rulings and provides further detail and explanation of decisions the Court has made concerning the jury instructions in this case.

## Background

Plaintiff Brian Moreau, then 18 years of age and a citizen of France, was a professional motocross rider who sustained very serious injuries at an event in Tampa, Florida. In 2019, he moved to the United States to join the Troy Lee Designs Red Bull KTM Racing Team to compete in the 250SX Class of the Supercross Championship. The first race of the 2020 Supercross Championship Series was held at Raymond James Stadium in Tampa, Florida, on February 15, 2020. Prior to the race, riders were permitted to participate in a "free practice"

session on the racetrack. During his first lap around the track, Plaintiff crashed and fell from his motorcycle headfirst onto the middle of the racetrack.

Shortly after the crash, two members of the Alpinestars Mobile Medical Unit (Defendants Amy Metiva and Scott Combs) arrived on the scene to attend to Plaintiff. Plaintiff alleges that he immediately and repeatedly informed the crewmembers that he was injured and experiencing unusual sensations, including having difficulty feeling his legs. It is alleged that no one attempted to stabilize or immobilize Plaintiff's spine, place a cervical collar on him, or ensure that his helmet was properly and carefully removed. Instead, Metiva and Combs roughly lifted Plaintiff up by grabbing his arms and carried him off the racetrack. The crewmembers proceeded to carry Plaintiff over to the side of the racetrack and toward a medical mule by lifting his legs. Around that time, a third crewmember – Defendant James Kennedye – arrived to help place Plaintiff on a medical mule and remove his helmet. Plaintiff was driven to an onsite ambulance where paramedics with Tampa Fire Rescue recognized the serious nature of Plaintiff's reported injuries and placed a cervical collar and rigid body splint on him before taking him to Tampa General Hospital. Plaintiff sustained catastrophic permanent injuries and has been rendered a paraplegic.

On June 4, 2022, Plaintiff filed the instant lawsuit, asserting various negligence claims against several defendants including the organizers and promoters of the Supercross event and medical professionals involved in the incident. On March 19, 2024, Plaintiff filed his operative third amended complaint

against Defendants Feld Motor Sports, Inc., The Medic Rig, LLC, John A. Bodnar, M.D., James Kennedye, M.D., Amy Metiva, and Scott Combs. Trial commenced on January 5, 2026.

## Analysis

Throughout the trial, the Court discussed with counsel a number of issues relating to the jury instructions. Here, the Court considers the appropriate instruction on the standard of care applicable to Plaintiff's claims against Defendants.

In the operative complaint, Plaintiff brought claims for negligence and gross negligence. The Court dismissed the negligence claims pursuant to releases that Plaintiff signed prior to participating in the Supercross event after concluding that those releases were valid and enforceable as to those claims. The Court found, however, that the releases did not bar Plaintiff's claims for gross negligence due to application of § 549.09, *F.S.* That statute provides that an operator of a closed-course motorsport facility may require event participants to sign a release that will protect owners, lessees, operators and sponsors of an event at the facility from liability for negligence. *See id.* The statute, however, excludes from the claims that can be released "gross negligence, recklessness, or willful and wanton conduct." § 549.09(1)(e), *F.S.*

Accordingly, to establish liability in this case, Plaintiff was required to establish a violation of the standard of care set forth in the statute, and the Court was required to consider how the jury should be instructed on that standard.

Unfortunately, § 549.09, *F.S.*, does not define "gross negligence," "recklessness" or "willful and wanton disregard." Not surprisingly, there are no Florida standard jury instructions for this statute.

After discussion with counsel, review of authorities submitted by the parties, and conducting its own detailed research, the Court made the decision to give a preliminary instruction to the jury on the applicable standard of care. This is somewhat unusual, but the Court was concerned that the standard of care at issue in this case, rooted in the terms specified in § 549.09, *F.S.*, would be confusing to a jury. The Court concluded – after considerable analysis – that a single overarching label "gross negligence" most accurately describes the standard of care the jury must apply. The Court further determined that "gross negligence" should be defined as proposed by Plaintiff, *see* (Doc. 358, at 35), in terms of "conscious disregard or indifference" to the life or safety of others, to which the Court added language to distinguish gross negligence from simple negligence.

Specifically, the Court instructed the jury:

> There is a distinction in the law between negligence and gross negligence. In this case, the Plaintiff is required to establish gross negligence to prevail on his claims.
>
> Negligence is the failure to use reasonable care. Reasonable care on the part of a health care provider is that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by similar and reasonably careful health care providers. Negligence on the part of a health care provider is doing something that a reasonably careful health care provider would not do under like circumstances, or failing to do something that a reasonably careful health care provider would do under

> like circumstances.
>
> Gross negligence is an act or failure to act that is so reckless or wanting in care that it constitutes a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.  Gross negligence on the part of a health care provider is an act, or failure to act, that constituted conscious disregard or indifference to the life, safety, or rights of persons exposed to such act or failure to act.  Gross negligence does not require proof that the Defendant intended to cause harm.
>
> As I said, in this case the Plaintiff is required to establish gross negligence to prevail on his claims.

The Court's instruction on gross negligence as proposed by Plaintiff is supported by a long line of Florida case law defining gross negligence in terms of "conscious disregard." *See, e.g.*, *Watson v. Kingdom of Saudi Arabia*, 159 F.4th 1234, 1257 (11th Cir. 2025) (holding that, under Florida law, gross negligence requires "an act or omission that evinces a conscious disregard of the consequences.").[1]  The instruction also tracks the definition of gross negligence in Florida's punitive damages statute (on which the Court also instructed the jury in connection with Plaintiff's punitive damages claim against Defendant Feld Motor Sports, Inc.).

During trial, Plaintiff requested that the Court give an additional instruction on "recklessness," which is one of the terms used in § 549.09, *F.S.*  Plaintiff suggested a definition of "reckless" which is, arguably, easier for him to satisfy than

---

[1] This formulation can be traced in Florida law at least back to cases decided under the "guest statute," under which automobile passengers could sue the owners or operators for injury only where caused by the latter's gross negligence or willful and wanton misconduct. *See, e.g. Glaab v. Caudill*, 236 So. 2d 180, 184 (Fla. 2d DCA 1970).

the definition of "gross negligence" provided by the Court. Plaintiff's requested definition of "reckless" was reduced to writing in a written document that was filed with the Court. (Doc. 438).

Following Plaintiff's submission, Defendants The Medic Rig, Bodnar, Kennedye, Mativa, and Combs submitted proposed definitions for "recklessness" and "willful and wanton" conduct. (Doc. 440). Defendant Feld Motor Sports, Inc. also submitted its own proposed definition of "reckless." (Doc. 441). The Court has declined to give these additional instructions. Instead, the Court is convinced that the instruction it has formulated, framed in terms of gross negligence, correctly states the applicable standard of care.

While the statute at issue here uses the terms "gross negligence," "recklessness," and "willful and wanton," it does not appear that the use of these different words, as a practical or theoretical matter, prescribes different standards. The three terms are linked by the disjunctive "or," but that word can be used to connect terms intended as synonyms. *See* Scalia & Garner, *Reading Law* § 12, pp. 116-122 (2012).[2] Whether the terms are intended as synonyms – or instead as distinct and different alternatives – might be definitely determined by their meanings if they had clear and distinct meanings in Florida law, but they do not. In fact, the Florida Supreme Court has long recognized the "difficulty in dividing

---

[2] For example, the automobile guest statute exempted from its protection injuries caused by the "'gross negligence or wilful and wanton misconduct" of the owner or operator of the vehicle. The Florida Supreme Court, after a series of conflicting opinions, finally decided that the terms "gross negligence" and "willful and wanton" as used in the automobile guest statute were synonymous. *See Cormier v. Williams*, 4 So. 2d 525, 529-30 (Fla. 1941).

negligence into degrees." Many years ago, in *Ingram v. Pettit*, 340 So. 2d 922, 924 (Fla. 1976), the Florida Supreme Court explained:

> The distinctions articulated in labeling particular conduct as 'simple negligence,' 'culpable negligence,' 'gross negligence,' and 'willful and wanton misconduct' are best viewed as statements of public policy. These semantic refinements also serve a useful purpose in advising jurors of the factors to be considered in those situations where the lines are indistinct. We would deceive ourselves, however, if we viewed these distinctions as finite legal categories and permitted the characterization alone to cloud the policies they were created to foster.

*Id.* Other courts and commentators have recognized the confusion presented by attempting to divide negligence into degrees or kinds. Judge Orfinger observed dissenting in *Lemay v. Kondrk,* 860 So. 2d 1022 (Fla. 5th DCA 2003):

> Courts have encountered great difficulty in attempting to draw clear and distinct lines between the various grades of negligence, concluding that '[p]erhaps no rule can ever be devised which will definitively separate one from the other.' *Carraway v. Revell,* 116 So. 2d 16, 19 (Fla. 1959). Different degrees of negligence are easier to demonstrate than to define. 'The same conduct, in different settings, could and does result in different degrees of liability.' *Id.*

*Id.* at 1025 (Orfinger, J., dissenting). And as one commentator observed, "attempting to distinguish the degrees of negligence is analogous to separating different hues of gray as opposed to differentiating black from white." Thomas D. Sawaya, *Florida Personal Injury and Wrongful Death Actions*, § 2.12 (2001-2002 ed.).

Echoing these observations, the final edition of *Prosser and Keeton on Torts*, published in 1984, noted that the idea of degrees of negligence "has been condemned by most writers, and, except in bailment cases, rejected at common law by most

courts, as a distinction 'vague and impracticable in [its] nature, so unfounded in principle,' that it adds only difficulty and confusion to the already nebulous and uncertain standards which must be given to the jury." D. Dobbs, Robert Keeton, & David Howen, *Prosser and Keeton on Torts* § 34 (5th ed. 1984) (footnotes omitted). The authors noted that some courts construe gross negligence to require "willful, wanton, or reckless misconduct," but that, in the end, there is "no generally accepted meaning." *Id*. (footnotes omitted).[3]

Thus, even though recklessness and willful and wanton conduct are separately listed in § 549.09, courts in various contexts have viewed them as equivalents. *See, e.g., Dyals v. Hodges,* 659 So. 2d 482, 484 (Fla. 1st DCA 1995); *Williams v. City of Minneola*, 619 So. 2d 983, 986-87 (DCA 1993). Indeed, in *Williams*, it was specifically noted that Florida courts use the terms reckless and willful or wanton "interchangeably." *Id*. at 986.

As to gross negligence, the Fifth Circuit has described that standard under Florida law as expressing a *lesser* degree of culpability than willful and wanton conduct. *See Boyce v. Pi Kappa Alpha Holding Corp.*, 476 F.2d 447, 451-52 (5th Cir. 1973) (perceiving "'willful and wanton' conduct to be criminal negligence, amenable to punitive redress, whereas gross negligence as such is necessarily something

---

[3] The treatise notes that courts have equated gross negligence with willfulness and recklessness "on the ground that this must necessarily have been the intent of the legislature." *Id*. The treatise cites an Oregon case on this point "for a complete discussion." *Id*. (citing *Williamson v. McKenna*, 354 P.2d 56 (Ore. 1960)). Interestingly, the Oregon court's opinion extensively discusses Florida case law interpreting the automobile guest statute as illustrating "[t]he struggle to find a workable definition in the interpretation of statutes of this character[.]" *Williamson*, 354 P.2d at 60.

less").[4] On the other hand, the Florida Supreme Court – after a series of conflicting opinions – held that the terms "gross negligence" and "willful and wanton" as used in the automobile guest statute were synonymous. *See Cormier v. Williams*, 4 So. 2d 525, 529-30 (Fla. 1941).[5]

It therefore appears to the Court that, at a minimum, the three key terms in this case – gross negligence (defined as involving conscious disregard), recklessness, and wanton and willful conduct – are arguably interchangeable. But if the legislature intended the terms have different meanings, then it is almost certainly the case that "recklessness" and "wanton and willful conduct" were intended to indicate higher degrees of culpability than gross negligence. But it is equally clear from the disjunctive "or" that a plaintiff may prevail by meeting any one of the three standards, including gross negligence, and is not required to meet any higher standards. An instruction or instructions on additional and arguably higher standards therefore would be superfluous to a determination of liability and would only serve to confuse the jury.

As for the specific language Plaintiff proposes, it defines "recklessness" as occurring "when a person acts or fails to act in the face of an unjustifiably high risk

---

[4] *Boyce* considered the meaning of willful and wanton negligence for purposes of the Florida rule that a finding of such conduct on the part of the defendant would preclude the defense of comparative negligence. *See Boyce*, 476 F.2d at 448 n.1

[5] Subsequently, in *Carraway v. Revell*, 116 So. 2d 16 (Fla. 1959), while not expressly abandoning the proposition that gross negligence and willful and wanton conduct as used in the guest statute were synonymous, the Florida Supreme Court held that the degree of negligence required to exceed the protection of the guest statute (gross negligence) did not necessarily equate to the type of "willful and wanton" conduct that would support the imposition of punitive damages or a conviction for manslaughter.

of harm that is either known or so obvious that it should be known." *See* (Doc. 438). This instruction is not drawn directly from language in Florida case law or statute but from discussions in United States Supreme Court cases in contexts different from that presented here, and the Court believes the instruction's reference to "unjustifiably" high risk renders the instruction too nebulous to be helpful in a case involving negligence.[6]

It appears Plaintiff has offered the instruction because he believes it describes a lesser degree of culpability than gross negligence. However, as noted, to the extent the terms gross negligence, recklessness, and willful and wanton conduct are distinguishable, they likely represent *escalating* degrees of fault, with gross negligence being the lowest. The Court therefore rejects Plaintiff's proposed additional instruction on recklessness.

Defendants The Medic Rig, Bodnar, Kennedye, Mativa, and Combs, on the other hand, appear to believe that "recklessness" and "wanton and willful" conduct constitute much more culpable conduct and requested an instruction on these concepts based on the Florida Standard Jury Instructions for criminal cases (specifically, vehicular homicide and reckless exposure causing an overdose or serious bodily injury) to define these terms. *See* (Doc. 440). Defendants believe that "reckless" should be defined as a "willful *or* wanton disregard for the safety of persons or property, with "willful" meaning intentional, knowing, or purposeful, and

---

[6] Plaintiff also cites a Second Restatement provision and the definition of "reckless disregard" expressly provided in a different statute, § 768.13, *F.S.* But those formulations differ in substantial ways from the language proposed by Plaintiff.

"wanton" referring to conduct done with "a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done . . ." Defendants would define "willful *and* wanton" conduct as conduct that is "both willful and wanton."

The Court rejects this instruction because it attempts to inject concepts drawn from the criminal context into the civil realm where they may or may not be applicable. Further, to the extent it prescribes a standard higher than the gross negligence standard in the Court's instruction, it is unnecessary because Plaintiff need only meet the gross negligence standard to prevail.

Feld Motor Sports, in contrast, requested that an instruction be given on "recklessness" in terms of "conduct that the person knew or should have known created an unreasonable risk of injury so as to affect the life or health of another, and such risk was substantially greater than that which is necessary to make the conduct negligent." This language is drawn from a different statute, Florida's "Good Samaritan Act," which immunizes from liability health care providers who render emergency aid under certain circumstances, unless the provider acts with "reckless disregard." To the extent this definition would provide a lower threshold for the Plaintiff to meet, the Court rejects it because it appears clear that "recklessness" is intended, if anything, to reflect a higher standard than gross negligence. To the extent the proposed definition provides a higher threshold, it is superfluous because Plaintiff can prevail by establishing gross negligence.

In sum, while § 549.09(1)(e), *F.S.*, does not explicitly define gross negligence,

recklessness, or willful and wanton conduct, the definition of gross negligence given by the Court as part of the preliminary instructions and included in the final instruction fully captures the crux of the statute – that to prevail on his claims, Plaintiff must prove substantially more than negligence but something less than intentional misconduct.  The Court has therefore instructed the jury as it previously instructed the jury as to gross negligence, and it will omit definitions for recklessness and willful and wanton conduct which seem here to be merely abstract distinctions without differences.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 15th of January, 2026.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE